No. 24-_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

ATLAS DATA PRIVACY CORPORATION, *et al.*,

*Plaintiffs-Respondents*,

v.

BABEL STREET, INC.,

*Defendant-Petitioner*.

Appeal from the District of New Jersey (Bartle III, H.)
No. 1:24-cv-10596

## BABEL STREET, INC.'S PETITION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. § 1453(c)

David A. Luttinger, Jr.
Email: dluttinger@cov.com
Jordan S. Joachim
Email: jjoachim@cov.com
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: + 1 (212) 841-1000

Kathryn E. Cahoy*
Email: kcahoy@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700

Marianne Spencer
Email: mspencer@cov.com
COVINGTON & BURLING LLP
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: + 1 (202) 662-6000

*Application for admission pending
*Attorneys for Defendant Babel Street, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned counsel for Defendant-Petitioner Babel Street, Inc. certifies that as of this date, Babel's parent company is PT Parent, Inc.  No publicly held company owns more than 10% of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................ i

INTRODUCTION ................................................................................. 2

STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL........................ 4

BACKGROUND ................................................................................. 5

QUESTIONS PRESENTED.................................................................. 7

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................ 7

RELIEF SOUGHT ............................................................................... 8

REASONS FOR GRANTING REVIEW .................................................... 8

    I.    Babel Requests This Court Grant Review of the Ruling That
        This Case Is Not a Mass Action Under CAFA. ................................... 9

        A.    The Ruling Presents Important CAFA-Related Questions........ 9

        B.    The District Court Erred in Its Application of the CAFA
              Mass Action Provision............................................................. 10

    II.    Babel Requests This Court Grant Review of the Ruling That the
        Requirements for Diversity Jurisdiction Are Not Met in This
        Case. ............................................................................................... 14

        A.    The Ruling Presents an Important Issue of First
              Impression.............................................................................. 14

        B.    The District Court Erred in Its Traditional Diversity
              Jurisdiction Analysis. ............................................................. 14

    III.    Other Factors Support Granting Review of Both Issues.................... 19

        A.    The Issue Is Consequential, Likely to Recur, and Will
              Evade Review. ........................................................................ 19

        B.    Plaintiffs Will Suffer No Prejudice from Granting
              Review. ................................................................................... 19

CONCLUSION ................................................................................................ 20

CERTIFICATION OF COMPLIANCE ................................................................ 22

CERTIFICATE OF SERVICE ............................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P,*
719 F.3d 270 (3d Cir. 2013) ...................................................................4

*Attorneys Trust v. Videotape Computer Prod., Inc*.,
93 F.3d 593 (9th Cir. 1996) ...........................................................*passim*

*BP America, Inc. v. Oklahoma ex rel. Edmondson*,
613 F.3d 1029 (10th Cir. 2010) ...................................................8, 19

*BP P.L.C. v. Mayor & City Council of Baltimore*,
141 S.Ct. 1532 (2021) .................................................................5

*Broselow v. Fisher*,
319 F.3d 605 (3d Cir. 2003) .................................................................12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .................................................................9

*Grassi v. Ciba-Geigy, Ltd*.,
894 F.2d 181 (5th Cir. 1990) ...........................................................*passim*

*Mississippi ex. rel Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014) ...........................................................*passim*

*Kramer v. Caribbean Mills, Inc.*,
394 U.S. 823 (1969).................................................................16, 17

*Pennsylvania v. Porter*,
659 F.2d 306 (3d Cir. 1981) .................................................................12

*Robert D. Mabe, Inc. v. OptumRX*,
43 F.4th 307 (3d Cir. 2022) ...........................................3, 9, 10, 11

*Rowland v. Bissell Homecare, Inc.*,
73 F.4th 177 (3d Cir. 2023) .................................................................5

*Sprint Comm's Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008).................................................................*passim*

*Waite v. City of Santa Cruz*,
  184 U.S. 302 (1902)............................................................................15

**Statutes**

28 U.S.C. § 1332.................................................................*passim*

28 U.S.C. § 1359.........................................................................16

28 U.S.C. § 1447...........................................................................5

28 U.S.C. § 1453.................................................................*passim*

N.J. Stat. § 47:1B-1....................................................................3

Defendant Babel Street, Inc. ("Babel") seeks permission to appeal the December 10, 2024 order[1] of the United States District Court for the District of New Jersey ("District Court") remanding the case to New Jersey state court.[2] Babel removed this case as a "mass action" pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11)(B)(i) and under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Babel files this Petition pursuant to 28 U.S.C. § 1453(c)(1) and Federal Rule of Appellate Procedure 5.

The Remand Order relies on and incorporates by reference the reasons for remand stated in the District Court's November 20, 2024 Memorandum Accompanying Order Granting Remand ("Remand Memorandum" or "Mem."), which was entered in 40 related actions, including *Atlas Data Privacy Corp. v. CarCo Grp. Inc.,* Civil Action No. 24-4077 (D.N.J. filed Nov. 20, 2024) ("*Atlas v. Carco*"), ECF No. 76.[3] Two petitions for leave to appeal in connection with the Remand Memorandum are currently pending before this Court ("Pending Petitions"). The Pending Petitions were filed on behalf of 39 defendants in the

---

[1] *See* **Addendum 1** ("Remand Order").

[2] The Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania was designated to oversee this action and the related Daniel's Law cases. *See* Designation of District Judge, Civil Action No. 1:24-cv-10596 ("*Atlas v. Babel*"), ECF No. 3; *see also Atlas Data Privacy Corp. v. CarCo Grp. Inc.*, Civil Action No. 1:24-cv-04077-HB, ECF No. 9.

[3] *See* **Addendum 2**.

related actions ("Related Actions").    *See Atlas Data Privacy Corp., et al. v. Blackbaud Inc., et al.*, No. 24-8044 (filed Dec. 2, 2024) (hereinafter "CAFA Mass Action Petition");[4] *Atlas Data Privacy Corp., et al. v. Whitepages, Inc., et al.,* No. 24-8045 (filed Dec. 2, 2024) (hereinafter "Diversity Jurisdiction Petition").[5]

## INTRODUCTION

On November 20, 2024, the District Court remanded 39 cases filed by Plaintiff-Respondent Atlas Privacy Data Corp. ("Atlas") to New Jersey Superior Court.[6]  On December 2, 2024, the defendants in those Related Actions filed with this Court the two Pending Petitions.[7]  The Pending Petitions sought review of the District Court's rulings that (1) Atlas' purported mass assignment is not a "mass action" under CAFA and (2) the citizenship of assignee Atlas should not be disregarded in a traditional diversity jurisdiction analysis because it is a true party in interest.  On December 10, 2024, the District Court remanded this case "for the reasons stated in the court's November 20, 2024 Memorandum and Order in *Atlas Data Privacy Corp. v. CarCo Grp. Inc.*, Civil Action No. 24-4077 (D.N.J. filed Nov. 20, 2024)."  Remand Order, p. 1.

---

[4] *See* **Addendum 3.**

[5] *See* **Addendum 4.**

[6] *See* **Addendum 2.**

[7] *See* **Addendum 3; Addendum 4**.

Babel seeks the Court's review in this case to address the same two important issues raised in the Pending Petitions.  *First*, Babel requests that the Court clarify whether actions proposing to aggregate and jointly try the claims of thousands of persons by assigning them *en masse* to a single assignee constitute a mass action subject to federal jurisdiction under the CAFA.  *See* CAFA Mass Action Petition, pp. 1–2.  Atlas, the corporate assignee plaintiff, allegedly obtained assignments of claims under New Jersey's Daniel's Law from more than 19,000 Covered Persons[8] and filed lawsuits in multiple New Jersey state courts on their behalf, including the present case.  The assignments do not change the fact that this is a collective action of more than 19,000 individual claims, which should proceed in federal court under CAFA.  *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 323 (3d Cir. 2022) (advising that CAFA "is best read as ensuring that qualifying mass actions . . . are not being kept from the federal courts").  The District Court declined to apply *Mabe*'s reasoning here.  Instead, it relied on an inapposite case, *Mississippi ex. rel Hood v. AU Optronics Corp.,* 571 U.S. 161 (2014), that considered only whether a *parens patriae* action brought by the State of Mississippi qualified as a "mass action" under CAFA.

*Second,* this case and the Pending Petitions raise an important issue of first impression in this Circuit:  which test courts should apply in determining whether to

---

[8] N.J. Stat. § 47:1B-1, otherwise known as "Daniel's Law."

disregard the citizenship of an assignee in a diversity jurisdiction analysis. *See Diversity Jurisdiction Petition*, pp. 8–9. Here, the District Court erroneously relied on a case evaluating Article III standing to develop a two-part test, even though Babel (and the other defendants) did not challenge whether Atlas had adequately pleaded standing. *See id.*, pp. 9–12; *Sprint Comm's Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008). The Ninth and Fifth Circuits have set forth alternative tests supporting the conclusion that the more than 19,000 Covered Persons—whose safety is the entire point of Daniel's Law—are the real parties in interest. Under those well-reasoned tests, Atlas's citizenship should be disregarded in assessing diversity jurisdiction. *See Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F.3d 593, 599 (9th Cir. 1996); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990).

Babel requests that the Court accept this appeal for the reasons stated in the CAFA Mass Action Petition and the Diversity Jurisdiction Petition and consolidate it with the Related Actions pursuant to Federal Rules of Appellate Procedure 3(b).

## STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL

Under 28 U.S.C. § 1453(c)(1), this Court may "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." This provision also permits the Court to hear appeals over orders granting or denying motions to remand "mass actions,"

because CAFA defines mass actions to be class actions under the statute.  28 U.S.C. § 1332(d)(11); *see Abraham v. St. Croix Renaissance Grp., L.L.L.P*, 719 F.3d 270, 275 (3d Cir. 2013).  The District Court entered the Remand Order on December 10, 2024.  *See* Remand Order, ECF No. 17.  This Petition is timely.

Furthermore, Section 1453(c)(1) does not limit the appeal to the CAFA analysis in the order.  Rather, the reasoning of the entire order is subject to appeal, including (in this case) the diversity analysis in the Remand Order.  28 U.S.C. § 1453(c)(1) (Court may "accept an appeal from an *order*" (emphasis added)); *see* Diversity Jurisdiction Petition, pp. 3–5; *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S.Ct. 1532, 1536 (2021) (considering similar language in 28 U.S.C. § 1447(d) and holding the statutory text extended appellate review to entire remand order); *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 185 (3d Cir. 2023) (considering traditional diversity arguments in the same opinion that held no CAFA jurisdiction).  Accordingly, the Court's appellate jurisdiction extends to the entire Remand Order that is subject to appeal under Section 1453(c)(1).

## BACKGROUND

During the December 2023 holiday season and the 2024 New Year, Atlas, the alleged assignee of more than 19,000 New Jersey former and current state employees ("Covered Persons"[9]) simultaneously sent thousands of purported take-down

---

[9] *See supra* note 8.

requests under Daniel's Law to more than 140 businesses.  Atlas thereafter began filing nearly identical complaints in the Superior Court of New Jersey, claiming that the defendants failed to adequately address the requests within the 10-business-day statutory period.  *See* CAFA Mass Action Petition, pp. 3–4; *see also* Diversity Jurisdiction Petition, p. 6.  The Complaints asserted that more than 19,000 Covered Persons assigned their claims to Atlas to recover, among other things, liquidated damages of $1,000 per violation, attorneys' fees and costs, and injunctive relief to remove "protected information wherever disclosed."  CAFA Mass Action Petition, pp. 3-4.  Despite the alleged assignments, the Covered Persons retained a 65% interest in any monetary recovery and 100% interest in any injunctive relief.  *Id.*  The first wave of defendants in those cases removed the actions to federal court from March 19, 2024, to April 19, 2024, and were subsequently remanded to state court on November 20, 2024.

Atlas filed this near-identical lawsuit against Babel on October 18, 2024.  Babel timely removed the case on November 19, 2024, one day before the remand order was issued in the Related Actions.  On December 10, 2024, the District Court entered an order remanding this case "for the reasons stated in the court's November 20, 2024 Memorandum and Order in *Atlas Data Privacy Corp. v. CarCo Grp. Inc.*, Civil Action No. 24-4077 (D.N.J. filed Nov. 20, 2024)."  Remand Order, p. 1.

## QUESTIONS PRESENTED

1.     Whether the Atlas' lawsuit against Babel, which proposes to aggregate and collectively prosecute the Daniel's Law claims of more than 19,000 identified persons through assignment *en masse* to a single corporate assignee, was properly removed under CAFA.

2.     Whether the District Court erred in applying *Sprint* (a constitutional Article III standing decision) instead of *Attorneys Trust* and *Grassi* (statutory diversity jurisdiction decisions) to the question of whether the citizenship of a non-diverse assignee should be disregarded in analyzing diversity jurisdiction.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are two joint petitions for review related to this case that are pending before this Court.  *See Atlas Data Privacy Corp., et al. v. Blackbaud Inc., et al.*, No. 24-8044 (Filed Dec. 2, 2024); *Atlas Data Privacy Corp., et al. v. Whitepages, Inc., et al.,* No. 24-8045 (Filed Dec. 2, 2024).  The Pending Petitions seek review of the District Court's November 20, 2024 Memorandum and Order in *Atlas Data Privacy Corp. v. CarCo Grp. Inc.*, Civil Action No. 24-4077 (D.N.J. filed Nov. 20, 2024), which is the same basis on which the District Court remanded this case.  *See supra* pp. 1-2, 4.  The Pending Petitions raise the same issues for review raised by Babel, and this Petition incorporates by reference the arguments in those Pending Petitions.

**RELIEF SOUGHT**

Defendant-Petitioner Babel respectfully requests that the Court grant leave to appeal and either (1) allow Babel to file an appeal of the Remand Order on the basis of CAFA mass action jurisdiction and diversity jurisdiction and consolidate that appeal with the appeal sought in the Pending Petitions, and/or (2) reverse the Remand Order and instruct the District Court to retain jurisdiction.

**REASONS FOR GRANTING REVIEW**

In evaluating an appeal of a remand order under CAFA, including other issues invoked in the same order, Courts of Appeal consider the following nonexclusive list of factors: (1) "the presence of an important CAFA-related question;" (2) whether the question is "unsettled;" (3) whether the question appears to be either incorrectly decided or fairly debatable; (4) the question's importance to the case; (5) "whether the question is likely to evade effective review if left for consideration only after final judgment;" (6) its likelihood of recurrence; (7) whether the decision is sufficiently final for review; and (8) whether "the probable harm to the applicant should an immediate appeal be refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained." *BP America, Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010).  Each of these factors supports granting this Petition.

I.     **Babel Requests This Court Grant Review of the Ruling That This Case Is Not a Mass Action Under CAFA.**

Babel seeks this Court's review of the District Court's ruling that the jurisdictional requirements were not met under CAFA because the issue presents an important CAFA-related question and was decided incorrectly. *See* CAFA Mass Action Petition, pp. 6–7. In support of this argument, Babel expressly adopts by reference the arguments made in pages 6–20 in the CAFA Mass Action Petition.[10]

A.     **The Ruling Presents Important CAFA-Related Questions.**

Congress enacted CAFA to "relax" the federal jurisdiction requirements, meaning "CAFA's 'provisions should be read broadly, with a strong preference'" that qualifying cases "be heard in a federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14, p. 43 (2005)). CAFA explicitly expanded federal jurisdiction to include "mass action[s]." 28 U.S.C. §1332(d)(11). A mass action occurs when the "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* at § 1332(d)(11)(B)(i). CAFA included mass actions within the scope of federal court jurisdiction as a "backstop"

---

[10] Babel adopts the arguments in the Pending Petitions already before this Court in the interest of judicial economy. If the Court grants review of the CAFA Mass Action Petition and/or Diversity Jurisdiction Petition, Babel respectfully requests that this Petition also be granted and the appeal be consolidated with the appeal in the Related Actions. *Supra* at 1–2, 4, 7–8.

to prevent plaintiffs from artfully avoiding class action status and CAFA jurisdiction via the mass joinder of individual claims. *See* CAFA Mass Action Petition, pp. 6–7; *see also Hood*, 571 U.S. at 173; *Robert D. Mabe, Inc.*, 43 F.4th at 318.

This Petition presents an issue of first impression—whether CAFA mass action jurisdiction exists where individual claims are assigned *en masse* to a private entity for litigation purposes. *See* CAFA Mass Action Petition, pp. 6–7. If the Remand Order is left unreviewed, a wide swath of collective actions filed in state court could simply rely on mass assignments to a corporate litigation vehicle or funder like Atlas to escape federal jurisdiction. This is exactly the kind of loophole that Congress closed through the CAFA mass action provision, which is intended to ensure that actions that "utilize large-scale joinder or other consolidation mechanisms . . ." could be heard in federal court. *Robert D. Mabe, Inc.*, 43 F.4th at 319.

### B.    The District Court Erred in Its Application of the CAFA Mass Action Provision.

The District Court erroneously ruled that "[s]ince there are not a hundred named plaintiffs in any of the complaints, defendants' argument that subject matter jurisdiction exists because these lawsuits are mass actions under [CAFA] is without merit." Mem., p. 39. This finding that Atlas' lawsuit—which bundles the claims of more than 19,000 identifiable persons into a single case—was not a mass action is incorrect for four reasons. *See* CAFA Mass Action Petition, pp. 7–18.

*First,* this Court's precedent supports that the litigation-by-mass-assignment device used by Atlas is mass joinder by another name. *See id.* at 8–11 (citing *Robert D. Mabe, Inc.*, 43 F.4th at 319). It is undisputed that the Complaint in this action was filed by Atlas to aggregate and prosecute in a single lawsuit the allegedly assigned, individual monetary relief claims of more than 19,000 identifiable persons. *See, e.g.*, Memorandum of Law in Support of Plaintiffs' Consolidated Motion to Remand ("Remand Motion"), p. 33, *Atlas v. Carco*, ECF No. 23 (claiming that the Covered Persons intentionally "assigned their litigation rights to Atlas for the purpose of collectively prosecuting and enforcing Daniel's Law").

These litigation-by-mass-assignment tactics are "collective actions that utilize large scale joinder or other consolidation mechanisms" to aggregate claims, so they fall squarely within this Court's definition of a CAFA "mass action." *See Robert D. Mabe, Inc.*, 43 F.4th at 319; *Sprint*, 554 U.S. at 291 (analogizing mass assignment to multiparty joinder under Federal Rule of Civil Procedure 20(a)). The District Court erred when it failed to even cite *Robert D. Mabe, Inc.* or to analyze whether this case qualifies as a mass action under this standard. *See* CAFA Mass Action Petition, pp. 9–11. It also failed to consider whether this case qualified as mass action based on key Supreme Court authority. *See id.* As the Supreme Court has explained, mass assignment of claims to a single assignee or "aggregator" is but one of many different types of aggregation, akin to a class action or other types of joinder

or consolidation.  *Sprint*, 554 U.S. at 291.  This type of aggregation of individual claims thus should be treated as a mass action under CAFA.

*Second*, the District Court decision erroneously relied on *Hood*, a decision that does not apply to mass assignments of private claims.  *See* CAFA Mass Action Petition, pp. 11–15.  In *Hood*, Mississippi "as the sole plaintiff" and asserting its *parens patriae* authority, brought "a claim for restitution based on injuries suffered by the State's citizens" **on behalf of the State**.  571 U.S. at 164.  *Hood* had no reason to consider whether the State "as the sole plaintiff" was actually bringing the "claims of more than 100 persons" as CAFA requires.  Indeed, a State cannot bring a *parens patriae* action to vindicate the purely private interests and claims of its citizens. Mem., p. 39; *see, e.g.*, *Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003).

Unlike in *Hood*, Atlas is proposing to jointly try thousands of claims on behalf of identifiable persons.  Each of those individuals could have asserted those claims in their own separate actions prior to the alleged assignments.  And they will directly receive the lion's share of any recovery from the action being pursued.  As recognized by courts in the Third Circuit, actions filed by assignees for collection purposes are readily distinguishable from *parens patriae* actions.  *See* CAFA Mass Action Petition, pp. 14–15 (collecting cases); *see also Pennsylvania v. Porter*, 659 F.2d 306, 317 n.15 (3d Cir. 1981) (distinguishing "collection agent" suits from *parens patriae* suits in which the state is the real party in interest).  Hence, Atlas is

asserting separate, individual claims on behalf of private parties within the mass action provision's meaning of "monetary relief claims of 100 or more persons [that] are proposed to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i).

*Third*, the District Court failed to meaningfully engage with the reasoning in *Hood*. *See* CAFA Mass Action Petition, pp. 15–16. The Court's concerns in *Hood*—that it was not clear that there were more than "100 or more unnamed persons who are real parties in interest," that the claims of the unnamed individuals could not be identified or aggregated for trial, and that determining individual amounts in controversy would be an "administrative nightmare"—are not present here. *Id.*; *Hood*, 571 U.S. at 168–69. Atlas has alleged there are more than 19,000 assignors with a concrete interest in this litigation. Based on Atlas' own allegations, Atlas should be able to readily identify each of the alleged assignors and their claims.

*Fourth*, the Remand Order erroneously concludes that Atlas' strategy not to identify each assignor by name in the case caption to the Complaint transforms this mass action into an individual one. Mem., p. 39; *see also* CAFA Mass Action Petition, pp. 16–18. Atlas is in fact a "named plaintiff" in the Complaint more than 19,000 times over, and only has standing to sue (if at all) in its capacity as the assignee for each individual assignor. In other words, assuming effective assignments, Atlas steps into the shoes of each assignor and therefore asserts "monetary relief claims of 100 or more" named plaintiffs.

13

## II.    Babel Requests This Court Grant Review of the Ruling That the Requirements for Diversity Jurisdiction Are Not Met in This Case.

Babel further seeks this Court's review of the District Court's ruling that the requirements for diversity are not met in this case, which concerns an important issue of first impression in this Circuit that was incorrectly decided. *See* Diversity Jurisdiction Petition, p. 8. In support of this argument, Babel expressly adopts by reference the arguments made in pages 8–18 in the Diversity Jurisdiction Petition.

### A.    The Ruling Presents an Important Issue of First Impression.

The question of what test applies to diversity jurisdiction in the assignment context raises an issue of first impression in this Circuit. That question requires addressing whether an assignee is a true party in interest for purposes of assessing diversity of citizenship. While other Circuits have articulated standards for assessing this question, *see Attorneys Trust*, 93 F.3d at 599; *Grassi*, 894 F.2d at 186, the Third Circuit has not. The absence of a clear governing standard already has required the parties and the District Court to spend significant time on this issue and ultimately resulted in the District Court crafting a new test not used by other courts. *See* Diversity Jurisdiction Petition, p. 8. Granting leave to appeal the Order would give the Court the opportunity to clarify this question here and for other future cases. *Id.*

### B.    The District Court Erred in Its Traditional Diversity Jurisdiction Analysis.

The District Court's ruling that Atlas was a true party in interest for purposes of analyzing diversity of citizenship relied on a newly created two-part test: (1) Does

the assignee have Article III standing under *Sprint*? and (2) Is there evidence of collusion between the assignee and the assignor to avoid federal jurisdiction? Mem., pp. 13–25. After deciding the answer to the first question was yes and the answer to the second question was no, the District Court concluded that the citizenship of the assignee—*i.e.* Atlas—should be considered in the diversity analysis. *Id.* This erroneous determination relied on a flawed test the District Court created from inapposite case law. *See* Diversity Jurisdiction Petition, pp. 9–16.

*First,* the District Court's test was based solely on an ***Article III standing*** case that is unrelated to diversity jurisdiction or the question of real party in interest for the purposes of evaluating diversity. *See* Diversity Jurisdiction Petition, pp. 9–11; *Sprint*, 554 U.S. at 285. In *Sprint*, the Supreme Court evaluated whether the plaintiff assignees had Article III standing to assert claims in federal court, ultimately concluding that the assignees had standing. *Id.* The case did not involve diversity jurisdiction under 28 U.S.C. § 1332(a) and is irrelevant to statutory diversity jurisdiction. *Id.*

While the District Court noted that *Sprint* "relied on *Waite v. City of Santa Cruz*, 184 U.S. 302 (1902), one of its own precedents and a diversity case," that too does not answer the relevant inquiry here. Mem., pp. 16-17. Although *Waite* was a diversity case, the *Sprint* court merely relied on *Waite* for the proposition that an assignee historically had Article III standing to bring in its own name claims in

federal court. *Sprint*, 554 U.S. at 283. This reference to *Waite* thus does not provide grounds for making Article III standing under *Sprint* a threshold inquiry in a test for statutory diversity jurisdiction, particularly given the squarely-on-point diversity jurisdictional decisions in *Attorneys Trust* and *Grassi*.

*Second,* the District Court erred in concluding that the citizenship of an assignee with Article III standing should be disregarded only if there was "collusion." Mem., p. 20; *see* Diversity Jurisdiction Petition, pp. 12–13. The District Court relied on two authorities for this conclusion: 28 U.S.C. § 1359 and *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969). But neither of these authorities address a situation where a party uses an assignment to avoid federal jurisdiction: Section 1359 addresses collusive joinder to ***invoke*** (rather than avoid) jurisdiction, and *Kramer* simply interpreted that statute. Indeed, the District Court acknowledged that the situation here is "the reverse of what the Supreme Court dealt with in *Kramer*" (Mem., p. 20), but nonetheless applied the *Kramer* standard to this factually and procedurally distinct case.

Even if the *Kramer* standard did apply here (which it does not), the District Court's reasoning failed to track with *Kramer* in key respects, including by claiming Atlas' assignments to be absolute despite recognizing that the assignors here retain an interest in the subject matter in the form of 65 percent of any recovery. *Kramer*, 394 U.S. at 828 n.9 (clarifying that complete assignments are those "where the

16

transfer of a claim is absolute, with the transferor retaining no interest in the subject matter"). Moreover, although *Kramer* specifically calls out the fact that the assignee filed his complaint "soon" after the assignment, 394 U.S. at 824, the District Court summarily dismissed the idea that "the short timeframe between the assignment of claims and the filing of the lawsuits" could be problematic. Mem., p. 24.

*Third*, the District Court erred in declining to follow the persuasive reasoning of directly-on-point cases from the Ninth and Fifth Circuits to determine the real party in interest whose citizenship should be considered. *See* Diversity Jurisdiction Petition, pp. 13–16. The District Court accepted Plaintiffs' invitation to focus almost exclusively on collusive motive. Mem., p. 19. But federal courts examining diversity jurisdiction look at "all of the facts and circumstances," *Attorneys Trust*, 93 F.3d at 600, including the substantive characteristics of an assignment.

For example, the Fifth Circuit's decision in *Grassi* identified six features of an assignment that are relevant to determining diversity jurisdiction. 894 F.2d at 186.[11] Although *Grassi* found that, regarding the specific plaintiffs-assignors in question, their "overriding motive" was to avoid federal jurisdiction, *id.*, the court

---

[11] These factors included: (i) the comparative size of the interest assigned, (ii) whether the assignee held any interest in the litigation before the assignment, (iii) whether the assignor and assignee are represented by the same attorneys, (iv) the timing of the assignment and whether it occurred shortly before the litigation commenced, (v) whether the assignment represents what is essentially a contingent fee arrangement for collection work, and (vi) whether there is a strong likelihood of prejudice against the defendant. *Id.*

did not hold (or otherwise state) that an assignor's subjective motivation is the *sole* criterion for determining the existence of diversity jurisdiction. Instead, *Grassi* considered all the facts and circumstances in determining whether it was "improper" to consider the assignment for purposes of diversity jurisdiction. *Id.*

Following *Grassi*, the Ninth Circuit used a similar multifactor approach to determine whether an assignee's citizenship should be disregarded for purposes of determining diversity jurisdiction. *See Attorneys Trust*, 93 F.3d at 593, 597. In doing so, the court observed that every single case it could find involving "an assignment for collection (however framed or disguised)" revealed the assignors, not the collector-assignees, to be the real parties in interest.[12] And the Ninth Circuit noted that "[w]hile the courts are interested in motive because it can shed a great deal of light on otherwise ambiguous circumstances[,] the main focus is usually upon the reality of the transaction itself." *Id.*

Instead of applying the persuasive multi-factor analysis above to the diversity jurisdiction assessment, the District Court briefly described the findings in *Grassi*, but did not apply the factors. Mem., p. 21. Similarly, the District Court summarily dispatched with *Attorneys Trust* in a footnote, saying it involved "unusual"

---

[12] The court identified as relevant to assessing diversity jurisdiction: (i) whether the assignee had a prior interest in the claim, (ii) whether the assignment was timed to coincide with commencement of litigation, (iii) whether any consideration given by the assignee, (iv) whether the assignment partial or complete, and (v) whether the parties were represented by the same counsel. *Id*. at 599.

circumstances and "predates *Sprint*," again giving the irrelevant Article III standing inquiry dispositive weight. Mem., p. 22 n.7. Babel requests that this Court take up this case to clarify the important question of whether the multifactor tests set forth in *Attorneys Trust* and *Grassi* also govern in the Third Circuit.

## III. Other Factors Support Granting Review of Both Issues.

### A. The Issue Is Consequential, Likely to Recur, and Will Evade Review.

The Remand Order deprives Babel of its statutory right to litigate in federal court. The loss of that right is undeniably "consequential to [this] . . . particular case." *BP Am.*, 613 F.3d at 1034. In light of the District Court's ruling, it is likely that additional large groups of plaintiffs who wish to avoid federal court jurisdiction will file actions that rely on an automated mass assignment device to evade CAFA mass action jurisdiction. And Atlas itself is likely to evade federal jurisdiction in this manner in future filed cases: indeed, the District Court's remand of this case following the remand of the Related Actions is a case in point. Additionally, if the Petition is denied, the Remand Order would "evade effective review." *Id.* Without an appeal to review the Remand Order, this action and the Related Actions will proceed in state courts and the question of federal jurisdiction will become moot.

### B. Plaintiffs Will Suffer No Prejudice from Granting Review.

Plaintiffs will suffer no prejudice if the Petition is granted. Approximately 36 Daniel's Law cases remain in federal court where all pending deadlines are stayed.

*See* December 12, 2024 Order, *Atlas Data Privacy Corp. et al v. We Inform, LLC et al,* Civil Action No. 24-4037 (D.N.J. filed Dec. 12, 2024), ECF No. 39.  Given the stay and the expedited timeframe to decide this appeal if review is granted, the risk of delay in this case is remote.  Further, Plaintiffs themselves have acknowledged the lack of prejudice as they "have no preference between federal court or state court;" they would "readily accept [the federal court's] jurisdiction over" the actions, and "welcome the opportunity to litigate" their claims in an "efficient[]," "coordinate[d]" manner in federal court.  *See, e.g.*, Remand Motion, pp. 15–16, 25, *Atlas v. Carco*, ECF No. 23.

In contrast, Babel and the defendants in the Related Actions face irreparable harm if their statutory right to federal jurisdiction is denied without review.  *See* 28 U.S.C. § 1453(c)(2).  And remanding these cases across several counties in New Jersey will result in waste of judicial resources and potentially inconsistent procedural and substantive rulings.  As Babel and the defendants in the Related Actions respectfully submit, the cases could simply proceed as coordinated mass actions in federal court.

## CONCLUSION

For the foregoing reasons, Babel requests that this Court grant the Petition for Permission to Appeal the Remand Order.

Dated:    December 20, 2024                    Respectfully submitted,

                                                */s/ Jordan S. Joachim*
                                                David A. Luttinger, Jr.
                                                dluttinger@cov.com
                                                Jordan S. Joachim
                                                Email: jjoachim@cov.com
                                                COVINGTON & BURLING LLP
                                                The New York Times Building
                                                620 Eighth Avenue
                                                New York, New York 10018
                                                Telephone: + 1 (212) 841-1000

                                                Kathryn E. Cahoy*
                                                Email: kcahoy@cov.com
                                                COVINGTON & BURLING LLP
                                                3000 El Camino Real
                                                5 Palo Alto Square, 10th Floor
                                                Palo Alto, CA 94306-2112
                                                Telephone: + 1 (650) 632-4700

                                                Marianne Spencer
                                                Email: mspencer@cov.com
                                                COVINGTON & BURLING LLP
                                                One City Center 850 Tenth Street NW
                                                Washington DC 20001-4956
                                                Telephone: + 1 (202) 662-6000

                                                *Application for admission pending

                                                *Attorneys for Defendant Babel Street,
                                                Inc.*

## CERTIFICATION OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 5(c)(1) because this document contains 4,906 words, excluding the parts of the document exempted under the Federal Rules.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar.

4. I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that a virus detection program, Microsoft Defender Antivirus, 1.421.890.0 (last update 12/20/24) was run on the electronic file containing this document and no virus was detected.

*/s/  Jordan S. Joachim*
*Attorney for Defendant Babel Street, Inc.*

Dated: December 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 20, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

/s/  *Jordan S. Joachim*
*Attorney for Defendant Babel Street, Inc.*

Dated: December 20, 2024

# Addendum 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY           :          CIVIL ACTION
CORPORATION, et al.          :
                             :
        v.                   :
                             :
BABEL STREET, INC., et al.   :          NO. 24-10596

ORDER

AND NOW, this 10th day of December 2024, after a status conference with counsel, it is hereby ORDERED that the above action is remanded to the Superior Court of New Jersey, Essex County for the reasons stated in the court's November 20, 2024 Memorandum and Order in Atlas Data Privacy Corp. v. CarCo Grp. Inc. Civil Action No. 24-4077 (D.N.J. filed Nov. 20, 2024) (ECF 76, 77).

BY THE COURT:


/s/ Harvey Bartle III
                                                    J.

# Addendum 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| BLACKBAUD, INC., et al. | : | NO. 24-3993 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| WHITEPAGES, INC., et al. | : | NO. 24-3998 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| HIYA, INC., et al. | : | NO. 24-4000 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., et al. | : | NO. 24-4073 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CARCO GROUP INC., et al. | : | NO. 24-4077 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| TWILIO INC., et al. | : | NO. 24-4095 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| 6SENSE INSIGHTS, INC., et al. | : | NO. 24-4104 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LIGHTBOX PARENT, L.P., et al. | : | NO. 24-4105 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SEARCH QUARRY, LLC, et al. | : | NO. 24-4106 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ACXIOM, LLC, et al. | : | NO. 24-4107 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| ENFORMION, LLC, et al. | : | NO. 24-4110 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| COSTAR GROUP, INC., et al. | : | NO. 24-4111 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| ORACLE INTERNATIONAL CORPORATION, et al. | : | NO. 24-4112 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| RED VIOLET, INC., et al. | : | NO. 24-4113 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| RE/MAX, LLC, et al. | : | NO. 24-4114 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| EPSILON DATA MANAGEMENT, LLC, et al. | : | NO. 24-4168 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| PEOPLE DATA LABS, INC., et al. | : | NO. 24-4171 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CLARITAS, LLC, et al. | : | NO. 24-4175 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| DATA AXLE, INC., et al. | : | NO. 24-4181 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| REMINE INC., et al. | : | NO. 24-4182 |

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :
LUSHA SYSTEMS, INC, et al.    :          NO. 24-4184
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :
TELTECH SYSTEMS, INC.,        :          NO. 24-4217
et al.                        :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :
PEOPLECONNECT, INC., et al.   :          NO. 24-4227
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :
CORELOGIC, INC., et al.       :          NO. 24-4230
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :
BLACK KNIGHT TECHNOLOGIES,    :          NO. 24-4233
LLC, et al.                   :
_____
```

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
THOMSON REUTERS CORPORATION,    :          NO. 24-4269
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
CHOREOGRAPH LLC, et al.         :          NO. 24-4271
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
TRANSUNION, LLC., et al.        :          NO. 24-4288
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
EQUIFAX INC., et al.            :          NO. 24-4298
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          V.                    :
                                :
SPOKEO, INC, et al.             :          NO. 24-4299
```
_____

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| TELNYX LLC, et al. | : | NO. 24-4354 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| MYHERITAGE, LTD., et al. | : | NO. 24-4392 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| WILAND, INC., et al. | : | NO. 24-4442 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| ATDATA, LLC, et al. | : | NO. 24-4447 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| PRECISELY HOLDINGS, LLC, et al. | : | NO. 24-4571 |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| OUTSIDE INTERACTIVE, INC. | : | NO. 24-4696 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| VALASSIS DIGITAL CORP., et al. | : | NO. 24-4770 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| THE LIFETIME VALUE CO. LLC, et al. | : | NO. 24-4850 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| FIRST AMERICAN FINANCIAL CORPORATION, et al. | : | NO. 24-5334 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al. | : | NO. 24-6160 |

<u>MEMORANDUM</u>

Bartle, J.                                    November  20, 2024

          Plaintiffs  in  these  forty  actions  allege  violations  of

a  New  Jersey  statute  known  as  Daniel's  Law.[1]

          The  actions  were  originally  filed  in  the  Superior

Court  in  a  number  of  different  counties  in  New  Jersey.   The

defendants  thereafter  removed  them  to  the  United  States  District

for  the  District  of  New  Jersey  under  28  U.S.C.  §§  1441  and  1446

on  the  ground  that  subject  matter  jurisdiction  exists  either

under  28  U.S.C.  §  1332(a)  as  a  result  of  complete  diversity  of

citizenship  or  under  the  Class  Action  Fairness  Act  ("CAFA"),  28

U.S.C.  §  1332(d).   Defendants  assert  that  plaintiffs  have

collusively  attempted  to  defeat  federal  jurisdiction.   In  two  of

the  cases,  the  defendants  maintain  that  plaintiffs' joinder  of

non-diverse  defendants  was  fraudulent.   Before  the  court  is  the

consolidated  motion  of  the  plaintiffs  to  remand  to  the  state

court  under  28  U.S.C.  §  1447(c)  on  the  ground  that  this  court

lacks  subject  matter  jurisdiction.[2]

---

1.    Daniel's  Law  as  amended  is  codified  as  follows:  N.J.  Stat.
Ann.  §§  2C:20-31.1,  17:46B-1.1,  19:31-18:1,  46:26A-12,  47:1-17,
47:1A-1.1,  47:1A-5,  47:1B-1,  47:1B-2,  47:1B-3,  47:1B-4,  56:8-
166.1,  56:8-166.3.

2.    All  judges  in  the  District  of  New  Jersey  have  recused.   The
Chief  Judge  of  the  United  States  Court  of  Appeals  for  the  Third
Circuit  reassigned  these  and  all  related  actions  to  the
undersigned  pursuant  to  28  U.S.C.  §  292(b).

Daniel's Law provides that New Jersey judges, prosecutors, law enforcement officers, and their immediate families ("covered persons") may request that persons and businesses ("entities") not disclose or make available their home addresses or unlisted telephone numbers.  See, e.g., N.J. Stat. Ann. § 56:8-166.1(d).  These entities are in violation of Daniel's Law if they fail to take down this information within ten business days after receiving a written takedown request. N.J. Stat. Ann. § 56:8-166.1(a).  Daniel's Law provides a private right of action for damages and injunctive relief not only for covered persons but also for their assignees.  N.J. Stat. Ann. § 56:8-166.1(b)-(c).  Under Daniel's Law, "'assignee' means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for" Daniel's Law violations.  N.J. Stat. Ann. § 56:8-166.1(d).

Plaintiffs in all of the actions are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.  Atlas, a Delaware corporation with its principal place of business in New Jersey, has filed suit as the assignee of the Daniel's Law claims of over 19,000 New Jersey covered persons.  The named individual plaintiffs, all current or former law enforcement officers, are

also citizens of New Jersey.  They have brought their own claims for violations of Daniel's Law.  In each of these forty cases, there is a named defendant which, like Atlas, is a citizen of Delaware.

Upon the filing of the motions to remand, the court authorized limited discovery on the issue of subject matter jurisdiction.  E.g., Order, Atlas Data Privacy Corp. v. Blackbaud, Inc., Civil Action No. 24-3993, (D.N.J. July 24, 2024), ECF No. 53.

I

Atlas provides a range of services for persons covered under Daniel's Law who sign up for Atlas's platform ("users"). Before a Daniel's Law claim ever arises, Atlas monitors the internet for data brokers who are potentially disclosing the users' home addresses and unlisted telephone numbers.  Atlas then identifies those data brokers for its users.  Additionally, Atlas provides each user with an individual e-mail address, from which the user may request that the data brokers remove his or her personal information.  To do so, users may send either the form e-mail that Atlas provides or their own personalized e-mail.  Atlas then schedules the delivery dates of the takedown notices.  After takedown notices are sent, Atlas continues to monitor the recipients to see if they have complied with the requests.

Upon signing up for Atlas's platform, users agree to Atlas's terms of service ("the terms"). In so doing, users agree that "upon written notice from Atlas," the users assign their "right to bring civil enforcement actions for violations of [their] rights under" Daniel's Law. The terms further state that, upon receipt of this written notice, a user is "deemed . . . to have irrevocably assigned to [Atlas] all of [the user's] rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of [the user's] rights under" Daniel's law, and "following such assignment, [Atlas] will have the exclusive right to bring such civil enforcement actions . . . ."

Atlas has discretion whether to take an assignment. Atlas may choose to send an assignment confirmation and litigate the Daniel's Law claim itself, or it may choose not to send a confirmation, in which case the users may litigate their own claims. In either case, the terms provide that Atlas will keep 35% of any recovery from the action with the user receiving the remaining 65%. Users also pay a subscription fee, whether or not a Daniel's Law claim arises.

In early February 2024, following an alleged failure of the defendants to comply with users' takedown requests, Atlas sent assignment confirmations to over 19,000 of its users.

Shortly thereafter, it filed lawsuits on these assigned claims
in the state court.

                            II

        Plaintiffs first contend that remand is required
because complete diversity of citizenship has not been satisfied
under 28 U.S.C. § 1332(a).  The statute requires that the
citizenship of each plaintiff must be different from the
citizenship of each defendant.[3]  Exxon Mobil Corp. v. Allapattah
Servs., Inc., 545 U.S. 546, 553-54 (2005); see also Strawbridge
v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806).  A corporation is
deemed a citizen of both its state of incorporation and the
state where it has its principal place of business.  28 U.S.C.
§ 1332(c).  A limited liability company ("LLC") takes on the
citizenship of each of its members.  See Zambelli Fireworks Mfg.
Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

        It is undisputed that Atlas is a citizen of Delaware,
as is at least one defendant in all these cases.  Thus, at first
glance, it appears that complete diversity is absent under
§ 1332(a).

        The defendants, as the party asserting jurisdiction,
bear the burden of establishing that federal jurisdiction
exists.  Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392,

---

3.   Defendants do not dispute that plaintiffs have satisfied
the required amounts in controversy under § 1332(a).

396 (3d Cir. 2004).  All doubts must be resolved in favor of remand.  Id. at 403.

The defendants first maintain that diversity jurisdiction is lacking because Atlas as an assignee is not a real party in interest and accordingly its citizenship should be disregarded.  The real parties in interest, defendants contend, are the users as assignors.  If defendants are correct, there will be complete diversity since the assignors as well as the individual named plaintiffs are all citizens of New Jersey while no defendant is a citizen of this state.

Rule 17(a) of the Federal Rules of Civil Procedure requires an action to be prosecuted in the name of the real party in interest.  Fed. R. Civ. P. 17(a).  The citizenship of the real party in interest, rather than that of mere nominal parties, governs whether diversity jurisdiction exists.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980).  As explained in Cranpark, Inc. v. Rogers Grp., Inc., "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law."  821 F.3d 723, 730 (6th Cir. 2016) (quoting Certain Interested Underwriters at Lloyd's London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994); see also Katzovicz v. HIH Logistics, Inc., No. 21-4535, 2021 WL 3038816, at *2 (D.N.J. July 19, 2021).

The plaintiffs rely on the Supreme Court's decision in
Sprint Communications Co., L.P. v. APCC Services Inc., 554 U.S.
269 (2008) to support their position that this court should look
to the citizenship of Atlas as the real party in interest.  In
Sprint, roughly 1,400 payphone operators assigned the entirety
of their small claims against long-distance communications
carriers to "aggregators," which then brought suit in their own
names under the federal Communications Act of 1934 to collect
what was due.  Sprint, 554 U.S. at 271-72.  In the assignments,
the operators transferred to the aggregators the legal title to
their claims.  Id. at 272.  In a separate agreement, the
aggregators promised to remit all proceeds recovered to the
assignor-operators, which would in turn pay a service fee to the
aggregators.  Id.  The Court observed:

> Because litigation is expensive, because the
> evidentiary demands of a single suit are often great,
> and because the resulting monetary recovery is often
> small, many payphone operators assign their . . .
> claims to billing and collection firms called
> 'aggregators' so that, in effect, these aggregators
> can bring suit on their behalf.

Id. at 271-72.

The defendants there argued that only the assignors
had standing to sue.  Id. at 274.  The Supreme Court disagreed.
The Court reiterated the well-established standard for standing:
(1) there must be an injury in fact, that is a concrete and
particularized invasion of a legally protected interest; (2)

there must be causation, that is a fairly traceable causation between the injury in fact and the conduct of defendant; and (3) it is likely that plaintiff's injury will be remedied by the relief plaintiff seeks.  Id. at 273.  The Court held that the aggregators, as the absolute assignees of the claims, had standing under these criteria and could bring suit in the federal court in their own names.  Id. at 285.

It makes no difference, the Court noted, what the assignees do with the money after a victory in court or after settlement.  Id. at 279-81.  For purposes of standing, it does not matter whether the assignees remit the money to the operators, donate it to charity, or build a new corporate headquarters.  Even if the assignees return all of the money to the assignors, the assignees are no different than trustees, guardians, executors, or bankruptcy receivers who seek relief not for themselves but for others.  See id. at 287-88.

The defendants here attempt to distinguish Sprint on the ground that it was a federal question case and that the Supreme Court ruled only on the issue of standing.  The specific question, defendants argue, is whether there is diversity jurisdiction and whether Atlas is a real party in interest.

The Supreme Court in deciding the issue of standing in Sprint relied on Waite v. City of Santa Cruz, 184 U.S. 302 (1902), one of its own precedents and a diversity case.  That

case explained that assignments do not defeat jurisdiction "if the only objection to the jurisdiction of the Circuit Court is that the . . . [assignee] was invested with legal title to the bonds and coupons simply for purposes of collection."[4]  Sprint, 554 U.S. at 283 (quoting Waite, 184 U.S. at 325).

The Supreme Court in Sprint also surveyed the history of state court cases allowing assignees to sue in their own names.  It stated: "During [the 19th] century American law at the state level became less formalistic through its merger of law and equity, through statutes more generously permitting an assignor to pass legal title to an assignee, and through the adoption of rules that permitted any 'real party in interest' to bring suit."  Id. at 279 (emphasis added).  The Court took the trouble to list in an Appendix those state cases which allow assignees to sue.  See id. at 292-93.  It pointed out that some specifically referred to the assignee as a real party in interest.  See, e.g., Allen v. Brown, 44 N.Y. 228, 231, 234 (1870); Jackson v. Hamm, 23 P. 88, 88-89 (Colo. 1890); McDaniel v. Pressler, 29 P. 209, 210 (Wash. 1892); Cox's Ex'rs v.

---

4.  The Supreme Court in Waite ultimately held there was no subject matter jurisdiction because the amount in controversy had not been satisfied by the individual assignments.  184 U.S. at 328-29.  All parties agree that the requisite amounts in controversy in the pending cases here have been met under 28 U.S.C. § 1332(a).

Crockett & Co., 22 S.E. 840, 843 (Va. 1895); Chase v. Dodge, 86

N.W. 548, 549 (Wis. 1901).  The Supreme Court found this history

and these precedents among others to be "well nigh conclusive."

Sprint, 554 U.S at 285 (quoting Vt. Agency of Nat. Res. v.

United States ex. rel. Stevens, 529 U.S. 705, 777-78 (2000).[5]

The Supreme Court treated standing to sue and the real

party in interest as synonymous, at least in the present

context.  See id. at 279-85.  As in Sprint, Atlas has an

absolute assignment of the rights of 19,000 of Atlas's users.

As in Sprint, the assignments of Daniel's Law claims will

facilitate the vindication of the rights originally possessed by

the assignors.  Under the terms of service and upon receipt of

Atlas's assignment confirmations, Atlas was "irrevocably

assigned" the users' rights to "bring a claim []and seek damages

[or] other legal remedies" and has "the exclusive right to bring

. . . civil enforcement actions."  While Atlas intends to return

to the assignors much but not all of what it collects, it does

not matter for jurisdictional purposes what Atlas does with the

money once it is collected.

Atlas, as the assignee, is the real party in interest

and has standing to sue.  Its citizenship, not that of the

---

5.  The Court noted at the end of its opinion in Sprint that
none of the parties had alleged that the assignments were made
in bad faith.  The Court also noted that the assignments were
made "for ordinary business purposes."  554 U.S. at 292.

assignors, is determinative.  Because Atlas is a citizen of
Delaware, complete diversity of citizenship under § 1332(a) is
lacking in all these cases absent proof of collusion to destroy
diversity or proof of fraudulent joinder.

III

Defendants argue that even if Atlas is a real party in
interest, the assignments and the joinder of Atlas as a
plaintiff were collusive.  If so, diversity of citizenship
exists under 28 U.S.C. § 1332(a).

As background, the court begins with 28 U.S.C. § 1359,
which provides that "[a] district court shall not have
jurisdiction of a civil action in which any party, by assignment
or otherwise, has been improperly or collusively made or joined
to invoke the jurisdiction of such court."  The Supreme Court in
Kramer v. Caribbean Mills, Ltd., 394 U.S. 823 (1969) faced the
question whether an assignment was collusive under § 1359.  The
inquiry is a factual one.  In Kramer, a single Panamanian
corporation assigned its contract claim against a Haitian
corporation to a Texas attorney.  394 U.S. at 824.  The
attorney, who had a "total lack of previous connection with the
matter," paid only $1 as consideration for the assignment and
agreed to remit 95% of any recovery back to the Panamanian
corporation.  Id. at 824, 827.  Without the assignment, there

would be no diversity jurisdiction since both corporations were
foreign entities.  See 28 U.S.C. § 1332(a).

The issue of collusion, the Court explained, is a
matter of federal law as collusion affects subject matter
jurisdiction.  The legality of the assignment under state law is
not a relevant consideration for this purpose.  Kramer, 394 U.S.
at 829.  The Court found that the assignment was improperly or
collusively made within the meaning of § 1359 and as a result,
diversity jurisdiction was not made out.  Id. at 828, 830.  It
grounded its decision on the assignee's lack of prior connection
to the matter, his lack of substantial interest in the
litigation, and his candid admission that the assignment was "in
substantial part motivated by a desire" to create diversity
jurisdiction.  Id. at 827-28.

Here, the situation is the reverse of what the Supreme
Court dealt with in Kramer.  The defendants contend that Atlas
was collusively joined not to get into federal court but to stay
out of federal court.  No statute has been cited which deals
with efforts to avoid federal jurisdiction.  Nonetheless, taking
their cue from § 1359 and Kramer, courts have treated diversity-
destroying assignments and diversity-creating assignments
similarly for jurisdictional purposes.  See, e.g., Grassi v.
Ciba-Geigy, Ltd., 894 F.2d 181, 186 (5th Cir. 1990); Att'ys
Trust v. Videotape Comput. Prods., Inc., 93 F.3d 593, 597-98

(9th Cir. 1996); <u>Gentle v. Lamb-Weston, Inc.</u>, 302 F. Supp. 161, 164-65 (D. Me. 1969).

The Fifth Circuit in <u>Grassi v. Ciba-Geigy, Ltd.</u>, for example, held that a plaintiff was collusively joined to avoid federal jurisdiction. 894 F.2d at 186. There, a Texas family had filed a collection action in state court against a Swiss corporation. <u>Id.</u> at 182. On the same day, the family also assigned 2% of its interest in the claim to a Costa-Rican corporation, which had previously had no involvement in the matter. <u>Id.</u> The Costa Rican corporation provided only "investigative and collection work" as consideration for the assignment, and the family controlled the litigation throughout. <u>Id.</u> Although the addition of the Costa Rican corporation would destroy complete diversity,[6] the Swiss corporation nevertheless removed the case to federal court on the ground that the joinder of the Costa Rican corporation was collusive. <u>Id.</u> The Court of Appeals agreed. It found that the "overriding motive" behind the assignment was a desire to prevent federal diversity jurisdiction and accordingly refused to remand the action to state court. <u>Id.</u> at 186. As evidence for its finding, the court pointed to the assignee's lack of prior connection to the

---

6. In the Fifth Circuit, "there is no diversity where there are foreign parties on both sides" absent collusion. <u>Grassi</u>, 894 F.2d at 182.

matter, the lack of meaningful consideration, its minimal 2%
interest in the litigation, and the family-assignor's control of
the litigation.  Id.[7]

      As noted, whether a party is collusively joined either
to evoke or destroy federal diversity jurisdiction is a question
of fact for the court.  While the cases consider various factors
as an aid in making this decision, the court must ultimately
decide based on the particular facts before it the underlying
motive or purpose for the joinder or the assignments.  In sum,
the court must ascertain what was really going on.

      The facts and circumstances in the pending cases are
quite different from those in any other case called to the
court's attention.  At the outset, the New Jersey Legislature
authorized the assignment of claims to aid in the enforcement of
Daniel's Law.  As counsel readily admitted at oral argument, it
is highly unlikely that even a single member of the General
Assembly or the Senate of New Jersey had in mind the avoidance
of federal diversity jurisdiction when the votes were cast to

---

7.    Defendants urge the court to consider Attorneys Trust v.
Videotape Computer Products, Inc. because that case lists motive
as only one factor in assessing diversity-destroying
assignments.  93 F.3d 593, 597 (9th Cir. 1996).  That case
involved unusual circumstances, in which the assignees brought
suit in federal court in the first instance and then challenged
jurisdiction only after an adverse judgment was entered.  Id. at
594.  In any event, Attorneys Trust predates Sprint, and it is
not controlling here.

approve assignments.  Nor is there any evidence that Atlas or
its users in making the assignments had in mind a desire to gain
an advantage by having the assigned claims tried in the Superior
Court of New Jersey rather than in the United States District
Court for the District of New Jersey.

Defendants argue that Atlas and the Union representing
police officers in New Jersey colluded to avoid federal
diversity jurisdiction.  While there is evidence that the New
Jersey State Policemen's Benevolent Association representing
some 33,000 active law enforcement officers did work with Atlas
to create assignments from its members, there is no evidence
that the question of federal subject matter jurisdiction played
any role.

In addition, the assignments here are not being made
with respect to a single action or to a limited number of
actions where the assignee has a small monetary interest in the
outcome.  The assignments to Atlas are absolute.  Atlas controls
the litigation.  It has a significant stake in the outcome and
will retain for itself 35% of what it collects.  Furthermore,
there are thousands of assignments and dozens of defendants.
Although Atlas is a citizen of Delaware and New Jersey, it
cannot avoid removal to federal court of any of its many
lawsuits where the defendants are citizens of other states.  In
fact, this court has before it approximately three dozen other

actions originally filed by Atlas as assignee under Daniel's Law in the state court where the defendants are not citizens of Delaware or New Jersey and thus complete diversity exists. They have been removed and no remand motions are pending. It is not reasonable to infer that Atlas or its users were engaged in collusive assignments or joinder when there are so many diverse defendants which possess information protected under Daniel's Law.

Defendants in support of their collusion argument point to the short timeframe between the assignment of claims and the filing of the lawsuits. This factor is of no consequence here. The amendment to Daniel's Law allowing assignments was enacted on July 20, 2023. See 2023 N.J. Laws ch. 113. Atlas and covered persons promptly took advantage of the amendment as was their right once alleged violations of Daniel's Law had occurred. Atlas obtained absolute assignments and stood fully in the shoes of the assignors. In return for consideration, the assignors no longer had any claims under Daniel's Law. Atlas succeeded to the assignors' rights to bring civil actions. See N.J. Stat. Ann. § 56:8-166.1(d). Atlas, as any claimant would, then filed lawsuits sooner rather than later. It was the decision of Atlas, not that of the assignors. That Atlas and its users moved swiftly to effect the assignments

and Atlas then speedily sued does not create an inference that collusion to avoid federal jurisdiction was afoot.

There are sound legal and business reasons unrelated to federal diversity jurisdiction for the assignments in question and for the joinder of Atlas as a plaintiff.  The court finds there was good faith and no collusion or improper motive or purpose.  Accordingly, defendants have not established the existence of diversity of citizenship under 28 U.S.C. § 1332(a) based on collusion of Atlas, its assignors, or anyone else.

IV

Defendants in two of these forty actions filed notices of removal from the Superior Court of New Jersey on the additional ground that plaintiffs fraudulently joined non-diverse defendants whose presence would destroy complete diversity of citizenship between plaintiffs and the remaining defendants.

The first action is Atlas Data Privacy Corp. v. Thomson Reuters Corp., Civil Action No. 24-4269 (D.N.J. filed Mar. 27, 2024).  There the named defendants are Thomson Reuters Corporation, Thomson Reuters Holdings Inc. ("Holdings"), Thomas Reuters Canada Limited, and Thomson Reuters Applications Inc. ("Applications").  Plaintiff Atlas, a corporation, is a citizen of both Delaware and New Jersey.  The defendants Thomson Reuters Corporation and Thomson Reuters Canada Limited have citizenship

which is diverse from all named plaintiffs.  However, Holdings is a citizen of Delaware and New York, and Applications is a citizen of Delaware and Minnesota.  The citizenship of these two defendants destroys subject matter jurisdiction under 28 U.S.C. § 1332(a) unless they are improperly joined.

The complaint describes Holdings and Applications in the same way as entities which disclose or redisclose on the internet or otherwise make available the home addresses and/or unpublished home telephone numbers of covered persons.  See Compl. ¶¶ 39, 40.  The complaint thereafter alleges that "Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include: thomsonreuters.com."  See Compl. ¶ 42.

Accompanying the notice of removal was a Declaration of Heather O'Hagan, the "Head of Tax, Canada & LatAm at Thomson Reuters."  She makes the declaration on the "personal knowledge of Thomson Reuters Corporation, and its subsidiaries, as well as [her] review of Thomson Reuters business records and the Complaint in this case."  In her declaration, she simply states that the website "thomsonreuters.com" is "not owned by or registered to [Holdings] or [Applications]."

The second action is <u>Atlas Data Privacy Corp. v.</u>
<u>MyHeritage Ltd.</u>, Civil Action No. 24-4392 (D.N.J. filed Mar. 28,
2024).  There the named defendants are MyHeritage Ltd. and
MyHeritage (USA), Inc.  MyHeritage Ltd. is incorporated and has
its principal place of business in Israel.  MyHeritage (USA),
like plaintiff Atlas, is incorporated in Delaware.  If
MyHeritage (USA) is a proper defendant, complete diversity is
absent.  The complaint avers identical claims against both
defendants.  Each is characterized as "an entity that discloses
or re-discloses on the Internet or otherwise makes available the
home addresses and/or unpublished home telephone numbers of
covered persons."  <u>See</u> Compl. ¶¶ 36, 37.  The complaint further
alleges: "Defendants offer and engage in the disclosure of data
and information through one or more websites or applications, or
otherwise in New Jersey, and to businesses and individuals who
operate or reside in New Jersey.  Those websites include:
myheritage.com."  <u>See</u> Compl. ¶ 39.

          In the <u>MyHeritage</u> action, Michael Stangel, the General
Manager for MyHeritage (USA), filed a declaration based on his
personal knowledge and his review and knowledge of the business
records of MyHeritage (USA).  The declaration states that
MyHeritage (USA) does not "own, control, or otherwise operate
www.myheritage.com" and does not have access to its e-mail
inbox.  It does not have a role in deciding what information is

available on www.myheritage.com and cannot remove any
information on that website.  It does not have access to or
otherwise interact with www.myheritage.com.  MyHeritage (USA)
has its own website, www.geni.com, which is not referenced in
the complaint.

Our Court of Appeals in Batoff v. State Farm Insurance
Co., has explained that joinder is fraudulent "where there is no
reasonable basis in fact or colorable ground supporting the
claim against the joined defendant, or no real intention in good
faith to prosecute the action against the defendant[] or seek a
joint judgment" 977 F.2d 848, 851 (3d Cir. 1992)(quoting Boyer
v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).  The
court must not treat the issue of fraudulent joinder as it would
a motion to dismiss for failure to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure.  Whether a
plaintiff's claim against a defendant lacks merit as a matter of
law is not the relevant consideration.  Instead, the issue is
whether the claim is "wholly insubstantial and frivolous."
Batoff, 977 F.2d at 852.  The heavy burden of persuasion rests
on the party asserting fraudulent joinder.  Id. at 851.

The court must accept all well-pleaded facts as true.
Id. at 851-52.  Nonetheless, it may venture outside the four
corners of the pleading, not to decide the case on the merits,
but to determine if fraudulent joinder exists.  In Abels v.

State Farm Fire & Casualty Co., our Court of Appeals explained
that a court "must look beyond the face of the complaint for
indicia of fraudulent joinder."  770 F.2d 26, 29 (1985).
Likewise, in Boyer v. Snap-On Tools Corp., the Court cited with
approval Smoot v. Chicago, Rock Island & Pacific Railroad Co.,
378 F.2d 879 (10th Cir. 1967).  Boyer, 913 F.2d at 112.  In
Smoot, the court looked beyond the complaint and accepted an
affidavit of a non-diverse defendant alleged to have been a
railroad employee culpable for a fatal accident at a railroad
crossing.  378 F.2d at 882.  The affidavit declared he had
discontinued his employment with the railroad fifteen months
before the accident.  Id. at 881.  Smoot held that he had been
fraudulently joined.  Id. at 882.

More recently, our Court of Appeals in In Re Briscoe
reaffirmed the principle that a court may look beyond the
pleading to decide the issue of fraudulent joinder.  448 F.3d
201, 219 (3d Cir. 2006).  There the specific issue was whether
the statute of limitations had run.  The court opined, "we see
no reason to preclude a district court from a limited
consideration of reliable evidence that the defendant may
proffer to support the removal."  Id. at 220.

In the Reuters action, the declaration is quite
narrow.  It merely states that the website thomsonreuters.com is
not "owned or registered" to Holdings or Applications.  This is

a far cry from total disassociation from that website.  The
party asserting fraudulent joinder, as noted above, has the
burden of proof.  After review of the allegations in the
complaint and the relevant facts presented outside the
complaint, defendants Holdings and Applications have not met
their burden.  Their position that they were fraudulently joined
in Civil Action No. 24-4269 fails.  Thus, subject matter
jurisdiction under § 1332(a) is lacking as Holdings and
Applications, like Atlas, are citizens of Delaware.

      The situation is far different in <u>MyHeritage</u>.  In
contrast to the declaration in <u>Reuters</u>, the declaration in
<u>MyHeritage</u> is all-encompassing.  It states that MyHeritage (USA)
does not own, control, or otherwise operate www.myheritage.com,
the website referenced in the complaint.  MyHeritage (USA) has
no role in deciding what information is available on that
website and has no ability to remove information.  Plaintiffs
had the opportunity to take relevant discovery on subject matter
jurisdiction pursuant to court order but did not do so on the
issue of fraudulent joinder.  <u>See</u> Order, <u>Atlas Data Privacy
Corp. v. MyHeritage LTD</u>, Civil Action No. 24-4392 (D.N.J. July
24, 2024), ECF No. 34.  The declaration stands uncontested.

      The undisputed facts before the court establish that
plaintiffs have no colorable claim against MyHeritage (USA).
The claim is wholly unsubstantiated and frivolous.  MyHeritage

(USA) has no involvement whatsoever with the website in issue. It is a total stranger to any alleged violation of Daniel's Law. The situation here is quite similar to that in <u>Smoot</u>, where the non-diverse defendant was no longer employed by the railroad at the time of the accident and therefore could not possibly have been found liable.

MyHeritage (USA) has established that it was fraudulently joined and will be dismissed. There is complete diversity under 28 U.S.C. § 1332(a) in Civil Action No. 24-4392.

V

Defendants urge that the jurisdictional requirements have been met for a class action under the Class Action Fairness Act, ("CAFA") 28 U.S.C. § 1332(d)(1)-(10). In contrast to § 1332(a) but consistent with Article III of the Constitution, CAFA requires only minimal diversity. <u>See</u> 28 U.S.C. § 1332(d)(2); <u>State Farm Fire & Cas. Co. v. Tashire</u>, 386 U.S. 523, 531 (1967). This element is satisfied, as it is here, if any member of the class is a citizen of a state different from any defendant. For CAFA class action status, there must also be a total amount in controversy in excess of $5,000,000. No party raises a challenge on this basis.

The only contested issue is whether these actions meet the definition of a "class action" under § 1332(d)(1)(B). Under this subsection, "the term 'class action' means any civil action

filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Defendants contend that these actions are "class actions in disguise" or "alternatively that they were filed under Daniel's Law which is similar to Rule 23 in every relevant respect."

     First, these are not class actions in disguise.  It is pellucid that none of them was brought either explicitly, implicitly, or obliquely under Rule 4:32-1 of the New Jersey Rules of Court, which contains the requirements for maintaining a class action.  The New Jersey Rule is in all material respect similar to Rule 23.  Nowhere do the plaintiffs in the words of the Rule or otherwise purport to "sue or be sued as representative parties on behalf of" any other persons.  See N.J. Ct. R. 4:32-1(a).  Plaintiffs are acting on behalf of themselves.  As noted, the assignments that Atlas has obtained from its users are absolute.  Atlas was "irrevocably assigned" the users' rights "to bring a claim []and seek damages [or] other legal remedies" and has "the exclusive right to bring such civil enforcement actions."  Under Daniel's Law, an assignee is a person or entity who has been assigned the covered person's right to bring a civil action.  See N.J. Stat. Ann. § 56:18-166.1(d).  As explained in Sprint, what Atlas as the assignee

does with what it may collect is of no concern to the court in these actions.  Sprint, 554 U.S. at 279-81.  In a class action, of course, it is of great concern what happens to what the class representative obtains on behalf of the class.  The court in such actions must review the adequacy of any settlement and take steps to ensure the proper distribution of any judgment or settlement.  These actions as pleaded here bear no resemblance to a class action under Rule 4:32-1 of the New Jersey Rules of Court.

Defendants argue in the alternative that Daniel's Law is a statute similar to Rule 23.  This argument seems a little like trying to fit a round peg into a square hole.  To begin, there is no representative party provision.  Under Daniel's Law, covered persons or assignees sue in their own names and not on behalf of anyone else.  Daniel's Law treats an absolute assignee such as Atlas as a real party in interest.  The claims of Atlas belong to Atlas and Atlas alone.  Assignees are not acting on behalf of the assignors.

Moreover, Daniel's Law contains no numerosity threshold.  This is a sine qua non for class actions of all stripes.  Daniel's Law clearly permits a lawsuit by a single covered person or by an assignee of a single covered person.

The court need not make a detailed comparison between Daniel's Law and the other characteristics for a class action

such as commonality, typically, adequacy, and notice.  In short, Daniel's Law contains no such provisions.  Defendants' entire argument rests on the premise that the assignments were partial and consequently Atlas is representing the interests of assignors in these lawsuits.  This is simply incorrect.  As explained previously, these assignments are absolute and Atlas succeeds absolutely to the rights of the covered persons to bring suit.

Our Court of Appeals addressed the class action provision of CAFA in Erie Insurance Exchange v. Erie Indemnity Co., 722 F.3d 154 (3d Cir. 2013) and Erie Insurance Exchange by Stephenson v. Erie Indemnity Co., 68 F.4th 815 (3d Cir. 2023) ("Erie Insurance I" and "Erie Insurance II").  An unincorporated insurance exchange brought suit in its own name for breach of fiduciary duty, purporting to seek relief "on behalf of its members."  Erie Insurance I, 722 F.3d at 157.  The exchange brought its suit pursuant to two Pennsylvania procedural rules, both of which addressed primarily whether the exchange could bring its suit under its own name or under the name of its members.  Erie Insurance II, 68 F.4th at 818; see also Pa. R.R. Civ. P. 2152, 2177.

The court rejected the defendant's position that the case was "in substance a class action insofar as [the exchange was] a stand-in for a class of" its members because the state

procedural rules under which the actions were brought

"contain[ed] none of the defining characteristics of Rule 23."

Erie Insurance I, 722 F.3d at 158-59.  The court noted that the

rules contained no class certification mechanisms as in Rule

23(c)(1), no numerosity or commonality requirements as in Rule

23(a)-(b), no provisions addressing notice that must be given to

"class members" as in Rule 23(c)(2), or any provisions for

opting out or appointing a class representative.  Id. at 159.

        The circumstances here are similar to the

circumstances in both Erie cases.  Again, these forty actions

bear no similarity to class actions under CAFA.

        Accordingly, this court does not have subject matter

jurisdiction under the class action provisions of CAFA, 28

U.S.C. § 1332(d)(1)-(10).

                              VI

        Finally, defendants assert that subject matter

jurisdiction exists, regardless of the citizenship of Atlas,

under the "mass action" provisions of the Class Action Fairness

Act, 28 U.S.C. § 1332(d)(11).  As with a CAFA class action, only

minimal diversity is required.  Jurisdiction exists if any

plaintiff has different citizenship from any defendant.  It is

undisputed that minimal diversity is satisfied in all pending

cases.

A mass action is a civil action "in which monetary
relief claims of 100 or more persons are proposed to be tried
jointly on the ground that plaintiffs' claims involve common
questions of law or fact. . . ."  28 U.S.C. § 1332(d)(11)(B)(i).
The aggregate amount in controversy must be at least $5,000,000,
and the claims of each plaintiff must exceed $75,000 exclusive
of interest and costs.  Id.  The parties are in accord that the
requisite amounts in controversy have been satisfied.  Instead,
plaintiffs contend that mass action status fails because there
are not 100 named plaintiffs in any of the complaints.  Only
Atlas and the six individuals are listed.

The plaintiffs cite the decision of the Supreme Court
in Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161
(2014) as controlling.  In Hood, the State of Mississippi
brought an action in the state court in which it claimed that
defendants, manufacturers and sellers of liquid crystal display
panels, had formed a cartel to restrict competition and raise
prices.  571 U.S. at 166.  The State, the only named plaintiff,
sought restitution and injunctive relief on behalf of itself and
its citizens based on injuries they all suffered as purchasers.
Id.  The citizens who were harmed were not named in the
complaint.

The defendants removed the action to the federal court
on the ground that it was either a class action or mass action

under CAFA.  Id. at 166.  The Supreme Court had before it the question whether a mass action included lawsuits "brought by fewer than 100 named plaintiffs."  Id. 168-69.  The Court held unanimously that a mass action cannot exist with fewer than 100 named plaintiffs even if there were 100 or more unnamed persons who were real parties in interest as beneficiaries.  Id. at 175. The Court reached its conclusion based solely on its construction of CAFA.  It reasoned that CAFA explicitly requires "100 or more persons" in a mass action, not "100 or more named or unnamed real parties in interest."  Id. at 169.  The Supreme Court read "100 or more persons" to mean 100 or more plaintiffs. See id. at 176.  A plaintiff is a party who brings a civil suit. Id. at 162.

The Court referenced that CAFA provides that the term "class members" means "the persons (named and unnamed) who fall within the definition of the proposed or certified class."  Id. at 169; see also 28 U.S.C. § 1332(d)(1)(D).  In contrast, there is no reference to unnamed persons in a mass action.  The Court observed that if Congress had wanted to include unnamed persons in the calculus, it knows how to say so.  Hood, 571 U.S. at 169. The Court also rejected a real party in interest analysis. While relevant in other contexts, it is not germane to deciding whether a lawsuit constitutes a mass action.  Id. at 174, 176.

The defendants here emphasize that <u>Hood</u> was a <u>parens patriae</u> action where it was not possible to determine the identity of the citizens of Mississippi who were harmed.  They argue that the pending cases under Daniel's Law are different because the 19,000 unnamed covered persons are actually known. Defendants point to a part of the Supreme Court's opinion which discusses how difficult it would be in that case to identify "a majority of plaintiffs" to meet the requirements for the transfer of the action to another court under § 1332(d)(11)(C)(i) if they were not named in the complaint. <u>See</u> <u>id.</u> at 173.  This problem, defendants contend, does not exist here.  While the Supreme Court does talk about the problem of applying the transfer provision if unknown citizens of Mississippi are deemed plaintiffs, its discussion of this subject is not critical to its holding.  It simply refers to this difficulty as <u>reinforcing</u> – not as essential to – its construction of the mass action provision of CAFA.  <u>See</u> <u>id.</u>

Even if the 19,000 unnamed covered persons are real parties in interest, this fact does not satisfy the criteria for a mass action under CAFA.  Nor is the difference between a <u>parens patriae</u> action in <u>Hood</u> and the claims here relevant. There is nothing in CAFA providing that the number of named plaintiffs may vary depending on the nature of the underlying claims.  The defendants urge this court to construe CAFA

broadly.  No policy concern or rule of construction, however,
can undermine the text of the statute as construed by the
Supreme Court.  See Erie Ins. Exch. by Stephenson v. Erie Indem.
Co., 68 F.4th 815, 821 (3d Cir. 2023).  The fact that Congress
loosened the complete diversity requirement for class actions
and mass actions does not mean that other requirements imposed
by Congress should be ignored.

         In sum, Hood holds that CAFA requires at least 100
named plaintiffs for any mass action, not simply 100 or more
persons who are real parties in interest.  The Supreme Court
could not have been clearer.  Since there are not a hundred
named plaintiffs in any of the complaints, defendants' argument
that subject matter jurisdiction exists because these lawsuits
are mass actions under 28 U.S.C. § 1332(d)(11) is without merit.

                                VII

         The plaintiffs' motions to remand these actions will
be granted except for Atlas Data Privacy Corp. v. MyHeritage
Ltd., Civil Action No. 24-4392, as to which the motion to remand
will be denied.  The defendant MyHeritage (USA) Ltd. in that
action will be dismissed because it is fraudulently joined.

         The court concludes that: (1) Atlas is a real party in
interest; (2) the assignments to and joinder of Atlas are not
collusive; (3) there is no fraudulent joinder except as noted
above; (4) complete diversity of citizenship is lacking under 28

U.S.C. § 1332(a) except for the one action noted above; and (5)

subject matter jurisdiction is absent under the class action and

mass action provisions of the Class Action Fairness Act, 28

U.S.C. § 1332(d).


                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                      J.

# Addendum 3

**URRCASE NO. _____**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-03993-HB |
| v. | |
| BLACKBAUD, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-3998-HB |
| v. | |
| WHITEPAGES, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civil Action No. 24-4000-HB |
| v. | |
| HIYA, INC., et al., | |
| Defendants-Petitioners. | |

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

COMMERCIAL REAL ESTATE
EXCHANGE, INC., et al.,

      Defendants-Petitioners.

Civil Action No. 24-04073-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

CARCO GROUP, et al.,

      Defendants-Petitioners.

Civil Action No. 24-04077-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

6SENSE INSIGHTS, INC., et al.,

      Defendants-Petitioners.

Civil Action No. 24-04104-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

      Plaintiffs-Respondents,

v.

LIGHTBOX PARENT, L.P., et al.,

      Defendants-Petitioners.

Civil Action No. 24-04105-HB

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

SEARCH QUARRY, LLC, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04106-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

ACXIOM, LLC, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04017-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

ENFORMION, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04110-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

COSTAR GROUP, INC., et al.,

        Defendants-Petitioners.

Civil Action No. 24-04111-HB

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

ORACLE INTERNATIONAL
CORPORATION, et al.,

       Defendants-Petitioners.

Civil Action No. 24-04112-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

RED VIOLET, INC., et al.,

       Defendants-Petitioners.

Civil Action No. 24-04113-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

       Plaintiffs-Respondents,

v.

RE/MAX, LLC, et al.,

       Defendants-Petitioners.

Civil Action No. 24-04114-HB

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|       Plaintiffs-Respondents, | Civil Action No. 24-04168-HB |
| v. | |
| EPSILON DATA MANAGEMENT, LLC, et al., | |
|       Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|       Plaintiffs-Respondents, | Civil Action No. 24-04181-HB |
| v. | |
| DATA AXLE, INC., et al., | |
|       Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|       Plaintiffs-Respondents, | Civil Action No. 24-04182-HB |
| v. | |
| REMINE, INC., et al., | |
|       Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|       Plaintiffs-Respondents, | Civil Action No. 24-04217-HB |
| v. | |
| TELTECH SYSTEMS, INC., et al., | |
|       Defendants-Petitioners. | |

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

PEOPLECONNECT, INC., et al.,

        Defendants-Petitioners.

Civil Action No. 24-04227-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

CORELOGIC, INC., et al.,

        Defendants-Petitioners.

Civil Action No. 24-04230-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

BLACK KNIGHT TECHNOLOGIES, LLC,
et al.,

        Defendants-Petitioners.

Civil Action No. 24-04233-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

CHOREOGRAPH LLC, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04271-HB

| ATLAS DATA PRIVACY CORPORATION, et al., | Civil Action No. 24-04288-HB |
|---|---|
| Plaintiffs-Respondents, | |
| v. | |
| TRANSUNION, LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | Civil Action No. 24-04299-HB |
| Plaintiffs-Respondents, | |
| v. | |
| SPOKEO, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | Civil Action No. 24-04354-HB |
| Plaintiffs-Respondents, | |
| v. | |
| TELNYX LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | Civil Action No. 24-04442-HB |
| Plaintiffs-Respondents, | |
| v. | |
| WILAND, INC., et al., | |
| Defendants-Petitioners. | |

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

ATDATA, LLC, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04447-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

PRECISELY HOLDINGS, LLC, et al.,

        Defendants-Petitioners.

Civil Action No. 24-04571-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

OUTSIDE INTERACTIVE, INC., et al.,

        Defendants-Petitioners.

Civil Action No. 24-04696-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

        Plaintiffs-Respondents,

v.

VALASSIS DIGITAL CORP., et al.,

        Defendants-Petitioners.

Civil Action No. 24-04770-HB

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civ. Action No. 24-04850-HB |
| v. | |
| THE LIFETIME VALUE CO. LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civ. Action No. 24-05334-HB |
| v. | |
| FIRST AMERICAN FINANCIAL CORPORATION, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | Civ. Action No. 24-06160-HB |
| v. | |
| LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al., | |
| Defendants-Petitioners. | |

On Appeal from the United States District Court
For the District Court of New Jersey, Camden Division
The Honorable Harvey Bartle III

District Court Nos. 1:24-cv-03993(HB); 1:24-cv-03998(HB); 1:24-cv-04000(HB);

1:24-cv-04073(HB); 1:24-cv-04077(HB); 1:24-cv-04104(HB);
1:24-cv-04105(HB); 1:24-cv-04106(HB); 1:24-cv-04107(HB);
1:24-cv-04110(HB); 1:24-cv-04111(HB); 1:24-cv-04112(HB);
1:24-cv-04113(HB); 1:24-cv-04114(HB); 1:24-cv-04168(HB);
1:24-cv-04181(HB); 1:24-cv-04182(HB); 1:24-cv-04217(HB);
1:24-cv-04227(HB); 1:24-cv-04230(HB); 1:24-cv-04233(HB);
1:24-cv-04271(HB); 1:24-cv-04288(HB); 1:24-cv-04299(HB);
1:24-cv-04354(HB); 1:24-cv-04442(HB); 1:24-cv-04447(HB);
1:24-cv-04571(HB); 1:24-cv-04676(HB); 1:24-cv-04770(HB);
1:24-cv-04850(HB); 1:24-cv-05334(HB); and 1:24-cv-06160(HB).

---

**JOINT PETITION FOR PERMISSION TO APPEAL
UNDER 28 U.S.C. § 1453(c)**

---

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227

*Attorneys for Petitioners-Defendants
Acxiom LLC (1:24-cv-04107), AtData
LLC (1:24-cv-04447), CoreLogic, Inc.
(1:24-cv-04230), Enformion, LLC,
Enformion Holdco Inc. (1:24-cv-
04110), Red Violet, Inc. (1:24-cv-
04113), and Remine Inc. (1:24-cv-
04182)*

Stephen M. Turner
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078

-and-

Kristen C. Rodriguez, Esq. (admission
pending)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020

*Attorneys for Petitioner-Defendant
Wiland, Inc. (1:24-cv-04442)*

Ryan A. Savercool
MCCARTER & ENGLISH LLP
Four Gateway Center
00 Mulberry Street
Newark, New Jersey 07102

-and-

Jon M. Talotta (admission pending)
HOGAN LOVELLS US LLP
8350 Broad Street (Boro Tower)
Tysons, VA 22102

David M. Cheifetz (admission pending)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

*Attorneys for Petitioners-Defendants The
Lifetime Value Co. LLC, BeenVerified,
LLC, NeighborWho LLC,The NumberGuru,
LLC; PeopleLooker LLC, PeopleSmart
LLC, Ownerly, LLC (1:24-cv-04850)*

Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078

-and-

Bety Javidzad, Esq. (pro hac vice)
DENTONS US LLP
601 South Figueroa Street, Suite 2500

*Attorneys for Petitioner-Defendant
Commercial Real Estate Exchange, Inc.
(1:24-cv-04073)*

Timothy M. Jabbour
George Z. Twill
TRESSLER LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960

Gregory C. Scaglione (admission pending)
Timothy Hutchinson (admission pending)
KOLEY JESSEN P.C., L.L.P.
1125 S. 103rd St., Suite 800
Omaha, NE 68124

*Attorneys for Petitioner-Defendant Data Axle, Inc. (1:24-cv-04181)*

Ross A. Lewin
FAEGRE DRINKER BIDDLE & REATH LLP
05 College Road East
Princeton, New Jersey 08542

-and -

Kevin DeMaio
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Drive
Florham Park, New Jersey 07932

-and-

Rachel Niewoehner
Katherine Sobiech
CROKE FAIRCHILD DUARTE & BERES
191 N. Wacker Dr., Floor 31
Chicago, IL 60606

*Attorneys for Petitioners-Defendants Epsilon Data Management, LLC, Conversant LLC and Citrus Ad International, Inc. (1:24-cv-04168)*

Michael D. Margulies
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932

*Attorneys for Petitioners-Defendants Teltech Systems Inc. and Epic Applications, LLC (1:24-cv-04217)*

Samantha L. Southall
BUCHANAN INGERSOLL & ROONEY
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for Petitioners-Defendants Trans Union, LLC, Neustar, Inc., and TransUnion Risk and Alternative Data Solutions, Inc. (1:24-cv-04288)*

Michael T. Hensley
CARLTON FIELDS
Jorkeell Echeverria 180 Park Avenue,
Suite 106
Florham Park, New Jersey 07932

Sarah F. Hutchins (admission pending)
Corri A. Hopkins (admission pending)
PARKER POE ADAMS &
BERNSTEIN LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

*Attorneys for Petitioner-Defendant*
*Blackbaud, Inc. (1:24-cv-03993)*

Lauri A. Mazzuchetti
Whitney M Smith
Aaron J. Gold
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054

*Attorneys for Petitioner-Defendant*
*RE/MAX, LLC (1:24-cv-04114)*

Alan Schoenfeld
Marissa M. Wenzel (admission
pending)
Todd Clayton (admission pending)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

-and-

Christopher Davies (admission
pending)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

*Attorneys for Petitioner-Defendant*
*Choreograph LLC (1:24-cv-04271-HB)*

A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068

*Attorneys for Petitioner-Defendant*
*LexisNexis Risk Data Management, LLC*
*and RELX, Inc. (1:24-cv-06160)*

Scott S. Christie (ID: 37901989)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

-and-

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019

*Attorneys for Petitioners-Defendants
Black Knight Technologies, LLC and
Black Knight, Inc. (1:24-cv-04233)*

Scott S. Christie
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

*Attorneys for Petitioner-Defendant Telnyx
LLC (1:24-cv-04354)*

Serrin Turner
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020

*Attorneys for Petitioners-Defendants
CoStar Group, Inc. and CoStar Realty
Information, Inc. (1:24-cv-04111) and
Petitioners-Defendants LightBox
Parent, L.P. and LightBox Holdings,
L.P. (1:24-cv-04105)*

Robert C. Collins
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611

*Attorneys for Petitioners-Defendants
Oracle International, Corporation, Oracle
America, Incorporated, and Oracle
Corporation (1:24-cv-04112) and
Petitioners-Defendants PeopleConnect,
Inc., PeopleConnect Holdings, Inc.,
Intelius, LLC, and PeopleConnect
Intermediate, LLC (1:24-cv-04227)*

Alexandra S. Jacobs
John Papianou
MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002

-and-

Rebecca E. Kuehn (admission pending)
Robert D. Tilley (admission pending)
Jason F. Esteves (admission pending)
HUDSON COOK LLP
1909 K Street, NW, 4th Floor
Washington, DC 20006

*Attorneys for Petitioner-Defendant
First American Financial Corporation
(1:24-cv-05334)*

Myriah V. Jaworski (admission
pending)
Chirag H. Patel (admission pending)
Steven Richman, Esq.
CLARK HILL PLC
210 Carnegie Center, Suite 102
Princeton, NJ 08540

*Attorneys for Defendant 6sense
Insights, Inc. (1:24-cv-04104) and
Search Quarry LLC (1:24-cv-04106)*

Daniel C. Green
Jean A. Occhiogrosso
VEDDER PRICE P.C
1633 Broadway, 31st Floor
New York, New York 10019

-and-

Blaine C. Kimrey (admission pending)
222 N. LaSalle Street
Chicago, IL 60601

*Attorneys for Petitioners-Defendants
Whitepages, Inc. (1:24-cv-03998) and
Hiya, Inc. (1:24-cv-04000)*

Camille Joanne Rosca
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street New York, NY
10019-6142

*Attorneys for Petitioner-Defendant Outside
Interactive, Inc. (1:24-cv-04696)*

Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102

-and-

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006

-and-

John Nadolenco*
Daniel D. Queen*
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071

-and-

Benjamin D. Bright*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020

*admissions pending

*Attorneys for Petitioner-Defendant
Spokeo, Inc. )1:24-cv-04299)*

William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426

-and-

Matthew D. Brown (admission pending)
Bethany C. Lobo (admission pending)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111

*Attorneys for Petitioners-Defendants
Precisely Holdings, LLC, Precisely
Software Inc., and Precisely Software Ltd.
(1:24-cv-04571)*

William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426

-and-

Matthew D. Brown (admission
pending)
Bethany C. Lobo (admission pending)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111

*Attorneys for Petitioners-Defendants
Valassis Digital Corp. and Valassis
Communications, Inc. (1:24-cv-04770)*

Kenneth D. Friedman
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036

-and-

Kareem A. Salem (admission pending)
Brandon Reilly (admission pending)
662 Encinitas Blvd., Suite 216
Encinitas, CA 92024

*Attorneys for Petitioner-Defendant
Vericast Corp. (1:23-cv-04770)*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................1

STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL.......................2

PROCEDURAL AND FACTUAL BACKGROUND ............................................3

QUESTION PRESENTED ....................................................4

RELIEF SOUGHT ................................................5

REASONS FOR GRANTING REVIEW ................................5

    A.    This Case Presents Important CAFA-Related Questions ...................6

    B.    The DNJ Erred in its Application of the CAFA Mass Action
        Provision...........................................................7

        1.    A Mass Assignment is Equivalent to Mass Joinder...................8

        2.    Misplaced Reliance on *Hood* ...................................11

        3.    Misapplication of *Hood* ........................................15

        4.    The DNJ's Order Undermines Congressional Intent...............16

    C.    The Issue is Consequential, Likely to Recur, and Will Evade
        Review...........................................................19

    D.    Plaintiffs Will Suffer No Prejudice from Granting Review...............19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. St. Croix Renaissance Grp.,*
  L.L.L.P, 719 F.3d 270 (3d Cir. 2013)...................................................3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
  458 U.S. 592 (1982)...................................................................12

*Atlas Data Privacy Corp. v. Spokeo, Inc.,*
  No. 1:24-cv-04299-HB ECF No. 1-3 ...................................................3

*Birkins v. Seaboard Serv.,*
  96 F. Supp. 245 (D.N.J. 1950)....................................................11, 14

*BP America, Inc. v. Oklahoma ex rel. Edmondson,*
  613 F.3d 1029 (10th Cir. 2010)..................................................6, 19

*Broselow v. Fisher,*
  319 F.3d 605 (3d Cir. 2003) ......................................................13, 14

*College of Dental Surgeons of Puerto Rico v. Connecticut General*
  *Life Insurance Co.,*
  585 F.3d 33 (1st Cir. 2009).........................................................19

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
  574 U.S. 81 (2014)...............................................................6, 18

*Frederico v. Home Depot,*
  507 F.3d 188 (3d Cir. 2007) ...........................................................5

*Gallagher v. Johnson & Johnson Consumer Companies, Inc.,*
  169 F. Supp. 3d 598 (D.N.J. 2016)....................................................12

*Mississippi ex. rel Hood v. AU Optronics Corp.,*
  571 U.S. 161 (2014)..............................................................passim

*Kaufman v. Allstate New Jersey Ins. Co.,*
  561 F.3d 144 (3d Cir. 2009) ...........................................................7

i

*Kramer v. Caribbean Mills, Inc.*,
    394 U.S. 823 (1969)....................................................................13

*Leflar v. Target Corp.*,
    57 F.4th 600 (8th Cir. 2023) .......................................................8

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015) ......................................................12

*Pennsylvania v. Harbour Portfolio Cap., LLC*,
    No. 18-989, 2018 U.S. Dist. LEXIS 194566 (W.D. Pa. Nov. 15,
    2018) ..................................................................................14, 16

*Pennsylvania v. Porter*,
    659 F.2d 306 (3d Cir. 1981) ......................................................14

*Ramirez v. Vintage Pharms., LLC*,
    852 F.3d 324 (3d Cir. 2017) .....................................................5, 8

*Robert D. Mabe, Inc. v. OptumRX*,
    43 F.4th 307 (3d Cir. 2022) ..............................................*passim*

*Sprint Comm's Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008)..........................................................9, 10, 18

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)..............................................................17, 18

*Suber v. Kontinental Koaches, Inc.*,
    104 F.3d 578 (3d Cir. 1997) ......................................................10

*United States v. Fontaine*,
    697 F.3d 221, 57 V.I. 914 (3d Cir. 2012) ..................................18

*Vermont Agency of Nat. Res. V. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000)....................................................................17

*Waite v. Santa Cruz*,
    184 U.S. 302 (1902)......................................................10, 11, 18

*Wecker v. National Enameling & Stamping Co.*,
    204 U. S. 176 (1907)..................................................................16

ii

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
   No. 15-6480, 2020 U.S. Dist. LEXIS 158687 (E.D. Pa. Sep. 1,
   2020) ............................................................................................................13

*Zahn v. Int'l Paper Co.*,
   414 U.S. 291 (1973) .......................................................................................10

**Statutes**

28 U.S.C. § 1332(11)(B) ..............................................................................1, 6

28 U.S.C. § 1453(c) .................................................................................1, 2, 20

**Other Authorities**

Wright & Miller, 5A Fed Prac. & Proc. Civ. § 1321 (4th ed.) ................................17

**Certification of Compliance**

**Addendum 1** – List of Petitioners-Defendants

**Exhibit A** – Order dated November 20, 2024
**Exhibit B** – Memorandum dated November 20, 2024

Pursuant to 28 U.S.C. § 1453(c)(1) and Federal Rule of Appellate Procedure 5, Defendants-Petitioners ("Defendants")[1] seek leave to appeal the November 20, 2024 order ("Remand Order") of the United States District Court for the District of New Jersey ("DNJ"),[2] which remanded 39 cases to the Superior Court of New Jersey that Defendants had removed, in part, as mass actions under the Class Action Fairness Act, 28 U.S.C. §1332(d)(11)(B)(i) ("CAFA Mass Action Provision").

## INTRODUCTION

This case involves an issue of first impression – whether actions proposing to aggregate and jointly try the claims of thousands of persons by way of a mass assignment to a single assignee are subject to federal jurisdiction under the CAFA Mass Action Provision. Atlas Data Privacy Corporation ("Atlas"), the corporate assignee plaintiff in the cases subject to the Remand Order (the "CAFA Mass Actions"), allegedly obtained assignments of claims from more than 19,000 "Covered Persons"[3] under New Jersey's Daniel's Law and then, purportedly as

---

[1] *See* **Addendum 1**.

[2] The Third Circuit designated the Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania to oversee the Daniel's Law cases. Designation of District Judge, Civil Action No. 1:24-cv-04077-HB ("*Atlas v. Carco*"), ECF No. 9. Unless otherwise noted, all citations to "ECF" relate to the docket in *Atlas v. Carco*.

[3] Under Daniel's Law a "Covered Person" includes a New Jersey judge, prosecutor, or law enforcement officer and their immediate family members who live in the same household. Mem. at 10, ECF No. 76.

assignee of each of these persons,[4] filed lawsuits in multiple New Jersey state courts seeking monetary and injunctive relief on their behalf.

The DNJ, relying on the Supreme Court holding in *Mississippi ex. rel Hood v. AU Optronics Corp.,* 571 U.S. 161 (2014), a *parens patriae* action brought by the Mississippi attorney general on behalf of a state and is factually distinct and legally inapposite, found that Atlas's use of mass assignments can evade CAFA mass action jurisdiction because "there are not a hundred named plaintiffs in any of the complaints." Memorandum Accompanying Order Granting Remand ("Mem."), ECF No. 76, at 39. This decision was erroneous. This Court, in *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 323 (3d Cir. 2022), recognized that Congress intended collective actions, like the actions here, to be in federal court under CAFA. This Court should intervene to correct the DNJ's error and prevent Plaintiffs from exploiting a new and unintended CAFA loophole.

### STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL

Under 28 U.S.C. §1453(c)(1), this Court may "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not

---

[4] Atlas did not specifically name the thousands of covered persons in the complaints, but it made clear that it was suing "as the assignee of the claims of approximately 19,251 individuals" and seeking monetary relief on each claim. *See* ECF No. 1, Carco Compl. at ¶26, Prayer ¶¶ B, C.

more than 10 days after entry of the order."[5] The DNJ entered the Remand Order on

November 20, 2024. *See, e.g.,* Remand Order ECF No. 77. This Petition is timely.

## PROCEDURAL AND FACTUAL BACKGROUND

Atlas provides services to Covered Persons who register for Atlas's platform.

Mem. at 10, ECF No. 76. These services include enforcement actions Atlas pursues

on behalf of Covered Persons through use of mass assignments. ECF No. 23, Ex. A.

During the December 2023 holiday season and the 2024 New Year, Atlas

simultaneously sent thousands of purported take-down requests under Daniel's Law

to more than 140 businesses. *See, e.g., id.* ¶52; *Compl.* ¶50, *Atlas Data Privacy Corp.*

*v. Spokeo, Inc.*, No. 1:24-cv-04299-HB ECF No. 1-3. Thereafter, several individual

police officers and Atlas (as the alleged assignee of approximately 19,000 persons)

("Plaintiffs") began filing nearly identical complaints in the Superior Court of New

Jersey (the "Complaints"), claiming Defendants failed to adequately address the

requests within the 10-business-day statutory period. *Id.* ¶59-60. The Complaints

alleged that 19,000 Covered Persons assigned their claims to Atlas to recover, among

other things, liquidated damages of $1,000 per violation, attorneys' fees and costs,

and injunctive relief to remove "protected information wherever disclosed." *See,*

---

[5] This provision also permits the Court to hear appeals over orders granting or denying motions to remand "mass actions," because CAFA defines mass actions to be class actions under the statute. *See Abraham v. St. Croix Renaissance Grp.*, L.L.L.P, 719 F.3d 270, 275 (3d Cir. 2013).

*e.g.,* Compl., ¶26, and WHEREFORE CLAUSE, ECF No. 1-1. Despite the alleged assignments, the Covered Persons retained a 65% interest in any monetary recovery and 100% interest in any injunctive relief. Mem. 12; ECF No. 23, Ex. A.

Defendants removed 75 of the actions to the DNJ based on, among other grounds, CAFA mass action jurisdiction because the Complaints proposed to jointly try the monetary relief claims of more than 100 persons. *See, e.g.,* Notice of Removal ¶8, ECF No. 1. On May 3, 2024, Plaintiffs filed a Consolidated Motion for Remand ("Remand Motion"). Plaintiffs argued CAFA mass action jurisdiction did not exist because there are not 100 named plaintiffs in any of the Complaints, as allegedly required by *Hood. See, e.g.,* Mem. at 36, ECF No. 76.

On September 9, 2024, Defendants opposed the Remand Motion. *See id.*, ECF No. 55. On October 22, 2024, the DNJ heard oral argument, (ECF No. 69), and on November 20, 2024, the DNJ granted the Remand Motion. *See, id.*, ECF No. 77. In its decision, the DNJ concluded, in part, that CAFA mass action jurisdiction did not exist because the CAFA Mass Actions do not involve 100 named plaintiffs. *See, e.g.*, Mem. at 39*,* ECF No. 76.

## QUESTION PRESENTED

Whether the CAFA Mass Actions, which propose to aggregate and collectively prosecute the Daniel's Law claims of nearly 19,000 identified persons

through the use of a mass assignment mechanism used by a single corporate assignee, were properly removed under CAFA.

## RELIEF SOUGHT

Defendants ask this Court to grant leave to appeal and either (a) allow Defendants to file an appeal of the Remand Order related to CAFA mass action jurisdiction, and/or (b) reverse the Remand Order and instruct the DNJ to retain jurisdiction of the CAFA Mass Actions.[6]

## REASONS FOR GRANTING REVIEW

In evaluating an appeal of a remand order under CAFA, Circuit Courts of Appeal consider the following nonexclusive list of factors: (1) "the presence of an important CAFA-related question;" (2) whether the question is "unsettled;" (3) whether the question appears to be either incorrectly decided or fairly debatable; (4) the question's importance to the case; (5) "whether the question is likely to evade effective review if left for consideration only after final judgment;" (6) its likelihood of recurrence; (7) whether the decision is sufficiently final for review; and (8) whether "the probable harm to the applicant should an immediate appeal be refused [outweighs] the probable harm to the other parties should an immediate

---

[6] This Court would apply plenary review to issues of subject matter jurisdiction, including the determination of whether to properly regard a case as a mass action under CAFA. *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 328 (3d Cir. 2017), citing *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

appeal be entertained." *BP America, Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010). Each of these factors supports granting this Motion.

### A.    This Case Presents Important CAFA-Related Questions

Congress enacted CAFA to "relax" the federal jurisdiction requirements, meaning "CAFA's 'provisions should be read broadly, with a strong preference'" that qualifying cases "be heard in a federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (quoting S. Rep. No. 109-14, p. 43 (2005)); *see also Robert D. Mabe, Inc.*, 43 F.4th at 323 (advising that CAFA "is best read as ensuring that qualifying mass actions . . . are not being kept from the federal courts"). CAFA explicitly expanded federal jurisdiction to include "mass action[s]": 28 U.S.C. §1332(d)(11), defined as "any civil action . . . in which *monetary relief claims of 100 or more persons are proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact" and did so as a "backstop" to prevent plaintiffs from artfully avoiding class action status by using the mass joinder of individual claims. *See id.* (emphasis added); *Hood*, 571 U.S. at 173; *see also Robert D. Mabe, Inc.*, 43 F.4th at 318.

This Motion presents an issue of first impression – whether CAFA mass action jurisdiction exists where individual claims are assigned *en masse* to a private entity for litigation purposes. *See BP America, Inc.*, 613 F.3d at 1035 (accepting an appeal that "raises the important and unsettled legal questions whether CAFA's mass

6

action provision applies" to suits filed by a particular type of plaintiff); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009) (granting leave to appeal important CAFA issue of first impression).

If the Remand Order is left unreviewed and undisturbed, a wide swath of collective actions filed in state court, like the actions here, which resemble class actions and otherwise would be subject to CAFA's relaxed jurisdictional rules, may now escape federal jurisdiction simply by relying on mass assignments to a corporate litigation vehicle like Atlas. But that is just the sort of loophole that Congress wanted to close through the CAFA Mass Action Provision, which is intended to ensure that actions that "utilize large-scale joinder or other consolidation mechanisms . . ." could be heard in federal court. *Robert D. Mabe, Inc.*, 43 F.4th at 319.

## B. The DNJ Erred in its Application of the CAFA Mass Action Provision

The DNJ erroneously held that "[s]ince there are not a hundred named plaintiffs in any of the complaints, defendants' argument that subject matter jurisdiction exists because these lawsuits are mass actions under [CAFA] is without merit." Mem. at 39. The DNJ overlooked relevant Supreme Court and Third Circuit caselaw that supports federal jurisdiction here and misapplied distinguishable Supreme Court precedent (*Hood*) that addressed a different question presented. [7]

---

[7] The DNJ also employed the wrong legal standard for CAFA removals. It noted that "[a]ll doubts must be resolved in favor of remand," *see* Mem. at 14, but

1.    <u>A Mass Assignment is Equivalent to Mass Joinder</u>

The litigation-by-mass-assignment device used by Atlas is mass joinder by another name. It is undisputed that each Complaint was filed by Atlas to aggregate and prosecute in a single lawsuit the allegedly assigned, individual monetary relief claims of approximately 19,000 identifiable persons. *See, e.g.*, Remand Motion at 33, ECF No. 23 (claiming that the Covered Persons intentionally "assigned their litigation rights to Atlas for the purpose of collectively prosecuting and enforcing Daniel's Law"); *id.* at Ex. A, Service Terms (agreeing to give Atlas "discretion [to] determine that an efficient method of prosecuting [Covered Person Daniel's Law claims] is through civil litigation *whereby individual claims are aggregated and prosecuted* by Atlas") (emphasis added).[8] These litigations litigation-by-mass-assignment are precisely the kind of "collective actions that utilize large scale joinder or other consolidation mechanisms" to aggregate claims, which this Court explained

_____

this is incorrect. No anti-removal presumption applies to removal under CAFA. *See Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023).

[8] Although Atlas could have filed separate lawsuits on behalf of each alleged Covered Person assignee, because it chose to proceed a single Complaint against each Defendant to "collectively prosecute" or "aggregate" approximately 19,000 assigned claims, this Court must presume Atlas and the Covered Persons assignees are seeking to try such claims jointly and subjecting themselves to CAFA jurisdiction. *See Ramirez*, 852 F.3d at 330 (reversing a district court remand order, finding CAFA jurisdiction proper, and noting that "[w]here a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial").

is the hallmark of a CAFA "mass action." *See Robert D. Mabe, Inc.*, 43 F.4th at 319. The DNJ's decision does not even mention *Robert D. Mabe, Inc.,* and it fails to address whether the litigations by mass assignment employed by Atlas amount to "collective actions that utilize large scale joinder or other consolidation mechanisms." *See id.* In fact, the DNJ failed to consider almost all of Defendants' arguments for why these actions are, in fact, civil actions proposing to jointly try the monetary relief claims of "100 or more persons." Instead, it focused solely on *Hood* to the exclusion not only of *Robert D. Mabe, Inc.*, but also other key Supreme Court authority. This was error.

While *Hood* did not consider whether mass assignment litigation qualifies as a mass joinder action under CAFA, other Supreme Court precedent suggests it does qualify as a mass action. For example, in *Sprint Comm's Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008), the Court explained that a mass assignment of claims to a single assignee is "one of several methods for bringing about ***aggregation of claims***, *i.e.*, they are but one of several methods by which ***multiple similarly situated parties*** get similar claims resolved at one time and in one federal forum," and it specifically analogized mass assignment to Federal Rule of Civil Procedure 20(a) which permits joinder of multiple parties. *See id.* at 291 (emphasis added). Indeed, even if *Hood*'s holding equating persons to plaintiffs were applicable here (which it is not), the Court noted that in the CAFA Mass Action Provision, "Congress used

the terms 'persons' and 'plaintiffs' just as they are used in Federal Rule of Civil Procedure 20, governing party joinder . . . as 'individuals who are proposing to join as plaintiffs in a single action.'" *Hood*, 571 U.S. at 169–70. And that is just what the CAFA Mass Actions propose to do by way of mass assignments, which the *Sprint* Court analogized to multiparty joinder under Rule 20. *Sprint*, 554 U.S. at 291. Because the Supreme Court recognizes that litigation-by-mass-assignment is tantamount to multi-party litigation through joinder, both are covered by CAFA.

Similarly, in *Waite v. Santa Cruz*, 184 U.S. 302, 324 (1902), the Supreme Court treated for jurisdictional purposes a ***single*** mass assignee, like Atlas, pursuing collection of numerous individual claims, as ***multiple*** plaintiffs jointly pursuing their own claims. In *Waite*, a single plaintiff sued to collect on several municipal bonds and coupons whose "legal title" had been assigned to him "for collection only." 184 U.S. 302, 324 (1902). The Court held that federal courts could not hear the suit because the amount-in-controversy requirement would not have been satisfied if the bondholders and coupon holders had sued individually. *See id.* at 328–29.[9]

---

[9] Thus, in the mass assignment context, the Supreme Court applied the well-settled rule that *multiple* plaintiffs may not aggregate separate and independent claims for jurisdictional purposes, *see e.g.*, *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 292 (1973), rather than the other well-settled rule that a *single* plaintiff typically may aggregate as many independent claims as they wish to meet the amount-in-controversy requirement, *see, e.g.*, *Suber v. Kontinental Koaches, Inc.*, 104 F.3d 578, 588 (3d Cir. 1997).

*Waite* and its progeny recognize that individual assignors' claims, when transferred to an assignee like Atlas for collection purposes, still maintain independent jurisdictional significance. While this line of cases prevents plaintiffs from *manufacturing* federal jurisdiction by using mass assignments, the same logic should apply to prevent plaintiffs, like Atlas, from *destroying* federal jurisdiction. Indeed, just like in *Waite* and other cases where, to prevent plaintiffs from evading a jurisdictional statute, the courts considered whether each individual assignor could meet the amount in controversy independently, the DNJ should have considered the citizenship and claims of each individual assignor in assessing diversity of citizenship as if each were a separate, named plaintiff. *See Waite*, 184 U.S. at 302; *Birkins v. Seaboard Serv.*, 96 F. Supp. 245, 250 (D.N.J. 1950).

2.      Misplaced Reliance on *Hood*

In entering the Remand Order, the DNJ relied solely on the Supreme Court's holding in *Hood*, a decision which is not applicable to mass assignments of private claims. Instead, in *Hood*, the State of Mississippi "as the sole plaintiff" and exercising its *parens patriae* authority, brought "*a claim* for restitution based on injuries suffered by the State's citizens" relating to alleged antitrust violations. *Hood*, 571 U.S. at 164 (emphasis added). This distinguishing fact is critical because

in a *parens patriae* action, an attorney general must possess and assert a quasi-sovereign interest and a claim **on behalf of the State** apart from the interests or claims of any particular private parties. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600, 600–02 (1982); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 365 (3d Cir. 2015) ("[t]he focus in a *parens patriae* action is on the State, independent of the benefits that might accrue to any particular individual.")(internal quotations and citations omitted). *Hood*, therefore, is not applicable to a case brought by a purported mass assignee, like Atlas, which possesses no independent interests of its own, but instead seeks to aggregate claims **on behalf of thousands of separate, identifiable people**.[10]

To be sure, *Hood* held that the *parens patriae* action brought by Mississippi did not qualify as a mass action under CAFA because "a 'mass action' must involve monetary claims brought by 100 or more persons who propose to try those claims jointly as named plaintiffs." *Hood*, 571 U.S. at 164. But in *Hood*, the Court arrived at this result by reasoning, in a *parens patriae* context, that CAFA's "100 or more persons" language did not contemplate "unspecified individuals who have no actual

---

[10] The District of New Jersey has confined *Hood* to the *parens patriae* context. *See, e.g., Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 607 (D.N.J. 2016) ("[*Hood*] decide[d] whether a suit filed **by a State** as the sole plaintiff nevertheless falls within the meaning of 'mass action' because it sought restitution for injuries suffered by the State's citizens.") (emphasis added).

participation in the suit," and instead covered "the parties who are proposing to join their claims in a single trial." *Id.* at 169. Thus, *Hood*'s holding was premised on the State asserting a claim in its own sovereign interest and not on behalf of unnamed real parties in interest who the courts could not identify. *Id.* at 170–72. And, because a State cannot bring a *parens patriae* action to vindicate the purely private interests and the claims of its citizens, *see, e.g., Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003), *Hood* had no reason to consider whether the State "as the sole plaintiff" was actually bringing the "claims of more than 100 persons" as CAFA requires. Thus, the DNJ's conclusion that "the Supreme Court could not have been clearer" [Mem. at 39], ignores the distinguishable context supporting *Hood*'s holding.

Unlike in *Hood*, Atlas is proposing to jointly try thousands of claims in each action on behalf of identifiable persons who could have asserted those claims in their own separate actions prior to the alleged assignments, and who will directly receive the lion's share of any recovery from the actions being pursued. *See* Mem. at 12 (acknowledging 65% of recovery goes to the assignees and 35% goes to Atlas). Put differently, in bringing each action, Atlas, for CAFA mass action purposes, now "steps into the shoes" of each Covered Person, *see Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2020 U.S. Dist. LEXIS 158687, at *39 (E.D. Pa. Sep. 1, 2020), and acts as a *de facto* collection agent to recover individual claims for monetary relief on their behalf. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S.

823, 829 (1969) (concluding with "little doubt that the assignment was for purposes of collection" where assignor retained substantial interest in recovery); *see also Birkins*, 96 F. Supp. at 248–50 (finding plaintiff who obtained ownership of bonds "for the purpose of retaining counsel, instituting suit and delivering . . . the proceeds of any judgment which might be obtained less costs of the litigation. . . . to be nothing more than an assignee for the purpose of collection only").

As recognized by courts in the Third Circuit, actions filed by assignees for collection are readily distinguishable from *parens patriae* actions. *See Pennsylvania v. Harbour Portfolio Cap., LLC*, No. 18-989, 2018 U.S. Dist. LEXIS 194566, *4 (W.D. Pa. Nov. 15, 2018) (explaining that a "paradigmatic counterexample" to a *parens patriae* action "would be a suit in which the state proceeds as a mere collection agent of private parties"); *see also Broselow*, 319 F.3d at 609 (holding that the language of the complaint "demonstrated that [the Commonwealth] did not proceed 'under an assignment' from Medicaid recipients," but in a *parens patriae* capacity that is "apart from the interests of particular private parties that affects a sufficiently substantial segment of its residents") (internal quotations and citations omitted); *Pennsylvania v. Porter*, 659 F.2d 306, 317 n.15 (3d Cir. 1981) (distinguishing "collection agent" suits from *parens patriae* suits in which the state is the real party in interest). Thus, because Atlas brings the actions to collect on behalf of thousands of identified persons, unlike the State in *Hood* acting as *parens*

*patriae*, Atlas is asserting separate, individual claims on behalf of private parties within the mass action provision's meaning of "monetary relief claims of 100 or more persons [that] are proposed to be tried jointly." 28 U.S.C. § 1332(11)(B).

### 3.   Misapplication of *Hood*

Moreover, the DNJ failed to examine much of the Supreme Court's reasoning, which further demonstrates that *Hood* is inapplicable here. Indeed, none of the specific rationales outlined in *Hood* apply here. First, *Hood* rejected the "theory that there may be 100 or more unnamed persons who are real parties in interest as beneficiaries to any of the plaintiffs' claims" because it was concerned that CAFA does not refer to "100 or more named or unnamed real parties in interest." 571 U.S. at 168–69. But that is not the jurisdictional argument Defendants make here. Defendants contend that, in each Complaint, Atlas is the alleged assignee who steps into the shoes of more than 100 persons – approximately 19,000 identifiable Covered Persons – to aggregate and prosecute their monetary relief claims just like in any typical mass action. That is quite different from the real party in interest argument offered in *Hood*, which the Supreme Court determined, at most, showed a hypothetical, attenuated beneficial interest that millions of unknown and unidentified Mississippi citizens might have in the state's own *parens patriae* claim.

Second, *Hood* explained that "it is difficult to imagine how the claims of one set of unnamed individuals could be proposed for joint trial on the ground that the

claims of some completely different group of named plaintiffs share common questions." *Id.* at 170. Not so here, where there are approximately 19,000 identifiable Covered Persons whose claims Atlas proposes to aggregate for trial.

Third, the "unwieldy inquiries" and "administrative nightmares" which concerned the Court in *Hood* are not present here because, unlike the alleged "unnamed real parties in interest" in *Hood* whose individual amounts-in-controversy were difficult to determine, or who would be difficult to identify for purposes of any proposed transfer motion, all of the Covered Persons are specific, known persons (nor is the amount in controversy contested or any transfer motion contemplated).

Finally, *Hood* recognized the Supreme Court has historically rejected the use of assignments to create or destroy diversity because courts could "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Id.* at 175 (citing *Wecker v. National Enameling & Stamping Co.*, 204 U. S. 176, 185-186 (1907)). Thus, because the Supreme Court was cognizant that assignments might be used to circumvent federal jurisdiction, its rejection of CAFA's application to *parens patriae* actions should not be read as a rejection of CAFA's application to mass assignment litigation, a paradigmatic counterexample it did not consider or address in *Hood*. *See id*; *Harbour Portfolio Cap., LLC*, at *4.

4.    The DNJ's Order Undermines Congressional Intent

The DNJ's Order also erroneously exalts form over substance by concluding that Atlas's strategy not to identify each assignor by name in the caption to the Complaints somehow means Atlas is proposing to try fewer than 100 persons' monetary claims in each case. These efforts have been rejected. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 588 (2013) (rejecting effort to "exalt form over substance," which would "run directly counter to CAFA's primary objective"); Wright & Miller, 5A Fed Prac. & Proc. Civ. § 1321 (4th ed.) ("[T]he caption is not determinative as to the identity of the parties to the action . . . ."). Atlas is a "named plaintiff" in each Complaint 19,000 times over, and only has standing to sue (if at all) in its capacity as the assignee for each individual assignor. *See Vermont Agency of Nat. Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."). In other words, Atlas is actually "Atlas, as assignee of Assignor No. 1," "Atlas, as assignee of Assignor No. 2," and so on, through "Atlas, as assignee of Assignor No. 19,251." Thus, even under *Hood*'s restrictive limitation of the phrase "claims of 100 or more persons" to "100 or more [named plaintiffs]," the Complaints still assert "monetary relief claims of 100 or more" named plaintiffs.

Finally, the DNJ appeared reluctant to "undermine the text of [CAFA] as construed by the Supreme Court" by reference to broader policy concerns advanced by CAFA. Mem. at 39. But the Court's extension of the Supreme Court's textual

17

analysis in *Hood* to these vastly different factual circumstances would lead to the unfair and absurd result that actions asserting the alleged monetary relief claims of more than 100 identified persons may evade federal jurisdiction simply by pursuing those claims through a corporate litigation vehicle. This is a result that the Supreme Court could not have intended in light of CAFA jurisprudence recognizing Congressional intent to broaden federal jurisdiction over large collective actions,[11] prior decisions analogizing mass assignment litigation to multi-party joinder litigation,[12] and longstanding treatment of mass assignees as multiple plaintiffs for jurisdictional purposes,[13] and one which this Court has cautioned against when interpreting CAFA. *See Robert D. Mabe, Inc.*, 43 F.4th at 320 ("on occasion plain and unambiguous language ends up stating what was ***not*** Congress's intent" and "[i]n these instances 'we are obligated to construe statutes sensibly and avoid constructions which yield absurd or unjust results'") (quoting *United States v. Fontaine*, 697 F.3d 221, 227, 57 V.I. 914 (3d Cir. 2012)).

---

[11] *Knowles*, 568 U.S. at 595; *Dart Cherokee*, 574 U.S. at 84.

[12] *Sprint*, 554 U.S. at 291.

[13] *Waite*, 184 U.S. at 334.

### C.    The Issue is Consequential, Likely to Recur, and Will Evade Review

The Remand Order deprives Defendants of their statutory right to litigate in federal court under the CAFA Mass Action Provision. The loss of that right is undeniably "consequential to [this] . . . particular case."[14] In light of the DNJ's ruling, it is likely that additional large groups of plaintiffs who may wish to avoid federal court jurisdiction under CAFA will now file actions that rely on an automated mass assignment device to evade CAFA mass action jurisdiction. Indeed, Atlas itself may very well continue to evade federal jurisdiction in this manner in future filed cases. Additionally, if the Motion is denied, the Remand Order "would evade effective review." Without an appeal to review the Remand Order, these actions will proceed in state courts and the question of federal jurisdiction will become moot. Finally, the record in these actions is "sufficiently final" to review as the DNJ terminated the actions. ECF No. 78.

### D.    Plaintiffs Will Suffer No Prejudice from Granting Review

Plaintiffs will suffer no prejudice if the Motion is granted. Approximately 36 Daniel's Law cases remain in federal court where all pending deadlines are stayed. *See* August 15, 2024 Order at ¶6, ECF No. 49. Given the stay and the expedited

---

[14] *BP America*, 613 F.3d at 1034 (quoting *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Insurance Co.*, 585 F.3d 33 (1st Cir. 2009)).

timeframe to decide the appeal, the risk of delay in the cases is remote. Further, Plaintiffs themselves have acknowledged no prejudice as they "have no preference between federal court or state court," and would "readily accept [the federal court's] jurisdiction over" the actions, and "welcome the opportunity to litigate" their claims in an "efficient[]," "coordinate[d]" manner in federal court. *See, e.g.*, Remand Motion at 15–16, 25, ECF No. 23.

In stark contrast, the Remand Defendants face irreparable harm if their statutory right to federal jurisdiction is denied without review. *See* 28 U.S.C. § 1453(c)(2). Further, remanding these cases across several counties in New Jersey will result in waste of judicial resources and expenses and potentially inconsistent procedural and substantive rulings – a particularly unwarranted result if, in fact, as Defendants respectfully submit, the cases could simply proceed forthwith as coordinated mass actions in federal court.

## CONCLUSION

For the foregoing reasons, the Court should grant the Petition for leave to appeal the Remand Order.

Dated: December 2, 2024

**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*
Myriah V. Jaworski (admission pending)
Chirag H. Patel (admission pending)
Steven Richman, Esq.
210 Carnegie Center, Suite 102
Princeton, NJ 08540 (609) 785-2911
Email: mjaworski@clarkhill.com
cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for Petitioner-Defendant 6sense Insights, Inc.*

**TROUTMAN PEPPER HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendant Acxiom LLC*

**TROUTMAN PEPPER HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz

21

Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email:      angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendant AtData
LLC*

**MCCARTER & ENGLISH LLP**

*/s/ Christopher A. Rojao*
Christoper A. Rojao
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
crojao@mccarter.com
rsavercool@mccarter.com

-and-

Jon M. Talotta (admission pending)
McCarter & English LLP
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com

-and-

**HOGAN LOVELLS**
David M. Cheifetz (admission pending)
Elizabeth C. Milburn (admission pending)
390 Madison Avenue

22

New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

*Attorneys for Petitioner-Defendants in 1:24-cv-4850-HB, The Lifetime Value Co. LLC, BeenVerified, LLC, NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC*

**CARLTON FIELDS**

*/s/ Michael T. Hensley*
Michael T. Hensley
Jorkeell Echeverria
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel: 973.828.2613 Fax: 212.430.5501
MHensley@carltonfields.com
JEcheverria@carltonfields.com

 -and-

**PARKER POE ADAMS & BERNSTEIN LLP**
Sarah F. Hutchins (admission pending)
Corri A. Hopkins (admission pending)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Petitioner-Defendant Blackbaud, Inc.*

23

**McCARTER & ENGLISH, LLP**

*/s/ Scott S. Christie*
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com
 -and-

Curtis B. Leitner
**McCARTER & ENGLISH, LLP**
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for Petitioner-Defendants Black Knight Technologies, LLC and Black Knight, Inc.*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Alan Schoenfeld*
Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel (admission pending)
Todd Clayton (admission pending)
-and-

**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street

New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

 -and-

Christopher Davies (admission pending)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for Petitioner-Defendant
Choreograph LLC*


**DENTONS US LLP**

*/s/ Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

-and-

Kristen C. Rodriguez, Esq. (admission
pending)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280

Email: kristen.rodriguez@dentons.com

*Attorneys for Petitioner-Defendant
Commercial Real Estate Exchange*

**TROUTMAN PEPPER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email:       angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendant
CoreLogic, Inc.*

**LATHAM & WATKINS LLP**

*/s/ Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (admission pending)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:       kevin.mcdonough@lw.com
serrin.turner@lw.com

-and-

26

Bradley M. Baglien (admission pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Petitioner-Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

-and-

Gregory C. Scaglione (admission pending)
Timothy Hutchinson (admission pending)
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for Petitioner-Defendant Data Axle, Inc.*

**TROUTMAN PEPPER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email:       angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendants
Enformion, LLC and Enformion Holdco,
Inc.*

**FAEGRE DRINKER BIDDLE &
REATH LLP**
*/s/ Ross A. Lewin*
Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542

-and-

Kevin DeMaio
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

-and-

**Croke Fairchild Duarte & Beres**
Rachel Niewoehner (admission pending)
Katherine Sobiech (admission pending)
191 N. Wacker Dr., Floor 31
Chicago, IL 60606
rniewoehner@crokefairchild.com
ksobiech@crokefairchild.com

*Attorneys for Petitioner-Defendants Epsilon Data Management, LLC, Conversant LLC, Citrus Ad International, Inc.*

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

*/s/ Alexandra S. Jacobs*
Alexandra S. Jacobs
John Papianou
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
856.488.7746
ajacobs@mmwr.com
jpapianou@mmwr.com

-and-

**HUDSON COOK LLP**
Rebecca E. Kuehn (admission pending)
Robert D. Tilley (admission pending)
Jason F. Esteves (admission pending)
1909 K Street, NW, 4th Floor
Washington, DC 20006
202.327.9710 / 202.327.9711
rkuehn@hudco.com
rtilley@hudco.com
jesteves@hudco.com

*Attorneys for Petitioner-Defendant First
American Financial Corporation*

**VEDDER PRICE P.C.**

*/s/ Daniel C. Green*
dgreen@vedderprice.com
Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
1633 Broadway, 31st Floor
New York, New Yorsk 10019
T: +1 212 407 7700
F: +1 212 407 7799

*/s/ Blaine C . Kimrey*
Blaine C. Kimrey (admission pending)
bkimrey@vedderprice.com
Bryan K. Clark (admission pending)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

*Attorneys for Petitioner-Defendant Hiya,
Inc.*

**LATHAM & WATKINS LLP**

*/s/ Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (admission pending)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020

30

Telephone: (212) 906-1200
Email:     kevin.mcdonough@lw.com
serrin.turner@lw.com

-and-

Jennifer C. Archie (admission pending)
Bradley M. Baglien (admission pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email:     jennifer.archie@lw.com
bradley.baglien@lw.com

-and-

Robert C. Collins (admission pending)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Petitioner-Defendants
PeopleConnect, Inc., PeopleConnect
Holdings, Inc., Intelius, LLC,
PeopleConnect Intermediate, LLC*

**LOWENSTEIN SANDLER LLP**

*/s/ A. Matthew Boxer*
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068

31

973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for Petitioner-Defendants*
*LexisNexis Risk Data Management, LLC*
*and RELX Inc.*


**LATHAM & WATKINS LLP**

*/s/ Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (admission pending)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:      kevin.mcdonough@lw.com
serrin.turner@lw.com

-and-

Jennifer C. Archie (admission pending)
Bradley M. Baglien (admission pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email:      jennifer.archie@lw.com
bradley.baglien@lw.com

-and-

Robert C. Collins (admission pending)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611

32

Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Petitioner-Defendants*
*LightBox Parent, L.P. and LightBox*
*Holdings, L.P.*

## LATHAM & WATKINS LLP

*/s/ Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
Serrin Turner (admission pending)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:        kevin.mcdonough@lw.com
serrin.turner@lw.com

-and-

Jennifer C. Archie (admission pending)
Bradley M. Baglien (admission pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email:        jennifer.archie@lw.com
bradley.baglien@lw.com

-and-

Robert C. Collins (admission pending)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

33

*Attorneys for Petitioner-Defendants Oracle International Corporation, Oracle America, Incorporated, and Oracle Corporation*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Camille Joanne Rosca*
Camille Joanne Rosca
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Email: crosca@orrick.com

*Attorneys for Petitioner-Defendant Outside Interactive, Inc.*

**SAUL EWING LLP**

*/s/ William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com

-and-

**COOLEY LLP**
Matthew D. Brown (admission pending)

Bethany C. Lobo (admission pending)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for Petitioner-Defendants*
*Precisely Holdings, LLC, Precisely Software*
*Inc., and Precisely Software Ltd.*

**KELLEY DRYE & WARREN LLP**

*/s/ Lauri A. Mazzuchetti*

Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold
KELLEY DRYE & WARREN LLC
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Attorneys for Petitioner-Defendant*
*RE/MAX, LLC*

**TROUTMAN PEPPER**
**HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400

35

301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email:      angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendant Red Violet, Inc.*


**TROUTMAN PEPPER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email:      angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendant Remine Inc.*


**CLARK HILL PLC**

*/s/ Myriah V. Jaworski*
Myriah V. Jaworski (admission pending)
Chirag H. Patel (admission pending)
Steven Richman, Esq.
210 Carnegie Center, Suite 102
Princeton, NJ 08540 (609) 785-2911
Email:  mjaworski@clarkhill.com

cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for Petitioner-Defendant Search Quarry LLC*

**SILLS CUMMIS & GROSS P.C.**

*/s/ Joshua N. Howley*
Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco*
Daniel D. Queen*
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com
*admission pending

*Attorneys for Petitioner-Defendant Spokeo, Inc.*

**CARLTON FIELDS, P.A.**

/s/ *Michael D. Margulies*
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com

*Attorneys for Petitioner-Defendants Teltech Systems Inc. and Epic Applications, LLC*

**Buchanan Ingersoll & Rooney**

 */s/s Samantha L. Southall*
 Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for Petitioners-Defendants Trans Union, LLC, Neustar, Inc. and TransUnion Risk and Alternative Data Solutions, Inc.*

**McCARTER & ENGLISH, LLP**

/s/ *Scott S. Christie*.
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

*Attorneys for Petitioner-Defendant Telnyx
LLC*

**SAUL EWING LLP**

*/s/ William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

-and-

**COOLEY LLP**
Matthew D. Brown (admission pending)
Bethany C. Lobo (admission pending)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for Petitioner-Defendants Valassis
Digital Corp. and Valassis Communications,
Inc.*

**MANATT, PHELPS & PHILLIPS, LLP**
*/s/ Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square

New York, New York 10036
(212) 790-4500
kfriedman@manatt.com

Kareem A. Salem (admission pending)
Brandon Reilly (admission pending)
662 Encinitas Blvd., Suite 216
Encinitas, CA 92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

*Attorneys for Petitioner-Defendant Vericast Corp.*

**VEDDER PRICE P.C.**

*/s/ Daniel C. Green*
Daniel C. Green
Jean A. Occhiogrosso
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799
dgreen@vedderprice.com
jocchiogrosso@vedderprice.com

-and-

Blaine C. Kimrey (admission pending)
Bryan K. Clark (admission pending)
Vedder Price P.C.
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005
bkimrey@vedderprice.com
bclark@vedderprice.com

*Attorneys for Petitioner-Defendant Whitepages, Inc.*

**DENTONS US LLP**

*/s/ Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

-and-

Kristen C. Rodriguez, Esq. (admission pending)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280
Email: kristen.rodriguez@dentons.com

*Attorneys for Petitioner-Defendant Wiland, Inc.*

**TROUTMAN PEPPER HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
TROUTMAN PEPPER HAMILTON SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227

Telephone: (609) 951-4125
Email:    angelo.stio@troutman.com
melissa.chuderwicz@troutman.com
stephanie.jonaitis@troutman.com

*Attorneys for Petitioner-Defendants Carco Group, Inc., Intellicorp Records, Inc.*

# CERTIFICATE OF COMPLIANCE

1.  This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because this petition contains 4900 words, excluding the part of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(a)(7)(B)(iii).

2.  This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.  I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar of this.

4.  I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and that electronic versions of the brief filed on ECF were virus checked using Windows Defender Advanced Threat Protection Antivirus, Version 1.421.581.0 (last update 12/2/2024 at 6:47AM EST) and no virus was detected.

Dated: December 2, 2024                    /s/ Angelo A. Stio III

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 2, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

Dated:  December 2, 2024                              /s/ Angelo A. Stio

# Addendum 4

CASE NO. _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*WHITEPAGES, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*HIYA, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ACXIOM, LLC, ET AL.*

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

COMMERCIAL REAL ESTATE EXCHANGE, INC., ET AL.

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

CARCO GROUP, INC., ET AL.

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

6SENSE INSIGHTS, INC., ET AL.

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

SEARCH QUARRY, LLC, ET AL.

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

ENFORMION, LLC, ET AL.

*Defendants-Appellants.*

ATLAS DATA PRIVACY CORPORATION, ET AL.,

*Plaintiffs-Appellees*

*v.*

COSTAR GROUP, INC., ET AL.

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ORACLE INTERNATIONAL CORPORATION, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*RED VIOLET, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*RE/MAX, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*EPSILON DATA MANAGEMENT, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CLARITAS, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*DATA AXLE, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*REMINE INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*LUSHA SYSTEMS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TELTECH SYSTEMS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*PEOPLECONNECT, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CORELOGIC, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*BLACK KNIGHT TECHNOLOGIES, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*CHOREOGRAPH, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TRANSUNION, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*EQUIFAX, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*SPOKEO, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*TELNYX, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*WILAND, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*ATDATA, LLC, ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*OUTSIDE INTERACTIVE, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*VALASSIS COMMUNICATIONS, INC., ET AL.*

*Defendants-Appellants.*

*ATLAS DATA PRIVACY CORPORATION, ET AL.,*

*Plaintiffs-Appellees*

*v.*

*LEXISNEXIS RISK DATA MANAGEMENT, LLC, ET AL.*

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of New Jersey

## PETITION FOR PERMISSION TO APPEAL

| | |
|---|---|
| VEDDER PRICE P.C. | TROUTMAN PEPPER |
| Daniel C. Green | HAMILTON SANDERS LLP |
| dgreen@vedderprice.com | Angelo A. Stio III |
| Jean A. Occhiogrosso | Melissa A. Chuderewicz |
| jocchiogrosso@vedderprice.com | Stephanie L. Jonaitis |
| 1633 Broadway, 31st Floor | Suite 400, 301 Carnegie Center |
| New York, New York 10019 | Princeton, NJ 08540-6227 |
| T: 1 212 407 7700, F: 1 212 407 7799 | Telephone: (609) 951-4125 |
| | Email: Angelo.Stio@troutman.com |
| Blaine C. Kimrey | Melissa.Chuderewicz@ |
| bkimrey@vedderprice.com | troutman.com |
| Bryan K. Clark | Stephanie.Jonaitis@troutman.com |
| bclark@vedderprice.com | |
| Vedder Price P.C. | *Attorneys for defendants Acxiom LLC,* |
| 222 N. LaSalle Street | *AtData LLC, Carco Group, Inc.,* |
| Chicago, IL 60601 | *CoreLogic, Inc., Enformion, LLC,* |
| T:1 312 609 7500, 1 312 407 5005 | *Enformion Holdco, Inc., Intellicorp* |
| | *Records, Inc., Remine Inc. and Red* |
| *Attorneys for defendants Whitepages,* | *Violet, Inc.* |
| *Inc. and Hiya, Inc.* | |

WILMER CUTLER PICKERING
HALE AND DOOR LLP
Alan Schoenfeld (New Jersey Bar
No. 285532018)
Marissa M. Wenzel
Todd Clayton
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for defendant Choreograph,
LLC*

SILLS CUMMIS & GROSS P.C.
Joshua N. Howley
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

MAYER BROWN LLP
Andrew J. Pincus
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright
Jonathan D. Stahl
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Attorneys for defendant Spokeo, Inc.*

GORDON, REES, SCULLY &
MANSUKHANI LLP
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq.
John Mills, Esq.
Bianca Evans, Esq.
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for defendants Claritas, LLC
and Lusha Systems, Inc.*

TRESSLER LLP
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione
Timothy Hutchinson
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for defendant Data Axle,
Inc.*

BUCHANAN INGERSOLL &
ROONEY P.C.
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for defendants Trans Union,
LLC, Neustar, Inc., and TransUnion
Risk and Alternative Data Solutions,
Inc.*

FAEGRE DRINKER BIDDLE &
REATH LLP
Ross A. Lewin
105 College Road East
Princeton, New Jersey 08542
Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

Rachel B. Niewoehner
Katherine A.G. Sobiech
Croke Fairchild Duarte & Beres
191 N. Wacker Dr., Floor 31
Chicago, IL 60606
rniewoehner@crokefairchild.com
ksobiech@crokefairchild.com

*Attorneys for defendants Epsilon Data
Management, LLC, Conversant LLC,
and Citrus Ad International, Inc.*

McCARTER & ENGLISH, LLP
Scott S. Christie (New Jersey Bar
No. 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for defendants Black
Knight Technologies, LLC, Black
Knight, Inc., and Telnyx LLC*

KING & SPALDING LLP
Thomas J. Scrivo
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre
John C. Toro
Charles G. Spalding, Jr.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Attorneys for defendants Equifax, Inc. and Kount, Inc.*

DENTONS US LLP
Stephen M. Turner, Esq.
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Bety Javidzad, Esq.
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

Kristen C. Rodriguez, Esq.
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280

*Attorneys for defendants Commercial Real Estate Exchange, Inc. and Wiland, Inc.*

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti
Whitney M Smith
Aaron J. Gold
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054

CARLTON FIELDS, P.A.
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com

*Attorneys for defendants Teltech Systems Inc. and Epic Applications, LLC*

SAUL EWING LLP
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
One Riverfront Plaza
1037 Raymond Blvd.

Tel: (973) 503-5900
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Attorneys for defendants RE/MAX, LLC*

Newark, NJ 07102
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

Matthew D. Brown
Bethany C. Lobo
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for defendants Valassis Digital Corp. and Valassis Communications, Inc.*

LOWENSTEIN SANDLER LLP
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for defendants LexisNexis Risk Data Management, LLC and RELX Inc.*

CLARK HILL PLC
Myriah V. Jaworski
Chirag H. Patel
Steven Richman
210 Carnegie Center, Suite 102
Princeton, NJ 08540
(609) 785-2911
mjaworski@clarkhill.com
cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for defendants 6sense Insights, Inc. and Search Quarry, LLC*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
Camille Joanne Rosca
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
crosca@orrick.com

*Attorneys for defendant Outside
Interactive, Inc.*

LATHAM & WATKINS LLP
Robert C. Collins
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for defendants Oracle
International Corporation, Oracle
America, Incorporated, Oracle
Corporation, PeopleConnect, Inc.,
PeopleConnect Holdings, Inc., Intelius,
LLC, and PeopleConnect Intermediate,
LLC*

LATHAM & WATKINS LLP
Serrin Turner
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: serrin.turner@lw.com

*Attorneys for defendants CoStar
Group, Inc. and CoStar Realty
Information, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

Introduction ...............................................................................................1

Statutory Authority Granting Leave to Appeal.....................................3

Background ................................................................................................6

Question Presented by This Petition .....................................................6

Relief Sought by This Petition ...............................................................7

Reasons for Granting Review ................................................................7

    A.    This Case Presents an Important Issue of First Impression .................8

    B.    The District Court Erred in Applying *Sprint* to the Diversity of Citizenship Analysis.........................................9

    C.    The District Court Erred in Focusing on Section 1359 and *Kramer* ..............................................12

    D.    The District Court Should Have Applied the Multifactor Tests From *Attorneys Trust* and *Grassi* .........................................13

    E.    The Issue is Consequential, Likely to Recur, and Will Evade Review ..............................................17

    F.    Plaintiffs Will Suffer No Prejudice from Granting Review.............17

Conclusion ...............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attorneys Trust v. Videotape Computer Prod., Inc.*,
  93 F. 3d 593 (9th Cir. 1996) ........................................................*passim*

*BP America, Inc. v. Oklahoma, ex rel. Edmondson*,
  613 F.3d 1029 (10th Cir. 2010) ....................................................7, 17

*BP P.L.C. v. Mayor & City Council of Baltimore*,
  593 U.S. 230, 141 S.Ct. 1532 (2021)....................................................4

*Branson Label, Inc. v. City of Branson, Mo.*,
  793 F. 3d 910 (8th Cir. 2015) ...........................................................8

*Brill v. Countrywide Home Loans, Inc.*,
  427 F.3d 446 (7th Cir. 2005) ............................................................4

*Coffey v. Freeport McMoran Copper & Gold*,
  581 F.3d 1240 (10th Cir. 2009) ...........................................................5

*Grassi v. Ciba-Geigy, Ltd.*,
  894 F.2d 181 (5th Cir. 1990) .........................................................*passim*

*Kramer v. Caribbean Mills, Ltd.*,
  394 U.S. 823 (1969)...................................................................12, 13

*Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*,
  749 F. 3d 1202 (10th Cir. 2014) .........................................................8

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) .............................................................5

*Rowland v. Bissell Homecare, Inc.*,
  73 F.4th 177 (3d Cir. 2023) .............................................................5

*Sprint Comm's Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008).................................................................*passim*

*Waite v. City of Santa Cruz,*
   184 U.S. 302 (1902)...................................................................................10, 11

**Statutes**

28 U.S.C. § 1332............................................................................................*passim*

28 U.S.C. § 1359.......................................................................................12, 13

28 U.S.C. § 1447.............................................................................................4, 5

28 U.S.C. § 1453............................................................................................*passim*

N.J.S.A. 2C:20-31.1..........................................................................................3

N.J.S.A. 47-1A-1.............................................................................................3

N.J.S.A. 47:1B-2.............................................................................................3

N.J.S.A. 47:B-1...............................................................................................3

N.J.S.A. 56:8-166.1.........................................................................................3

**Other Authorities**

Fed. R. App. P. 5..............................................................................................1

Pursuant to 28 U.S.C. § 1453(c)(1) and Federal Rule of Appellate Procedure 5, Defendants-Petitioners ("Defendants")[1] seek permission to appeal a November 20, 2024 order of the United States District Court for the District of New Jersey ("Remand Order," attached as **Addendum 2**),[2] which remanded 39 actions removed from the Superior Court of New Jersey.

Certain Defendants that removed their cases under 28 U.S.C. § 1332(d)(11) ("CAFA Mass Action") have filed a separate Petition, seeking to appeal the Remand Order (the "CAFA Mass Action Petition"). The signatories to this Petition have removed based on, among other things, CAFA Mass Action and/or diversity jurisdiction under 28 U.S.C. § 1332(a).

## INTRODUCTION

The Court should grant this Petition to address the important issues raised in the CAFA Mass Action Petition and to resolve the unanswered question in this Circuit of what test a district court should apply in determining whether to disregard the citizenship of an assignee in the statutory diversity jurisdiction analysis. Other

---

[1] *See* **Addendum 1**.

[2] The Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania was designated and assigned to oversee the Removed Cases by United Stated Court of Appeals for the Third Circuit. Designation of District Judge to Hold a District Court within the Circuit, Civil Action No. 1:24-cv-04077-HB ("*Atlas v. Carco*"), ECF No. 9.

Circuits have laid out clear, largely overlapping multifactor tests where the assignee's citizenship might destroy diversity. *See Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F. 3d 593, 599 (9th Cir. 1996); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990). But the District Court declined to apply these tests, instead applying the Supreme Court's constitutional standing decision in *Sprint Comm's Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008), to create an unprecedented two-part test to analyze statutory diversity jurisdiction. That unprecedented two-part test focused solely on (1) whether the assignee had standing and (2) collusive motive to destroy diversity jurisdiction.

Plaintiff Atlas Data Privacy Corporation ("Atlas") purports to be the assignee (Defendants dispute the enforceability of the assignments) of the claims of approximately 19,000 Covered Persons under New Jersey's Daniel's Law. Atlas alleges that Defendants failed to comply with requests to suppress home addresses and unlisted phone numbers of these Covered Persons within the 10-day time frame under the statute.

Defendants did not challenge whether Atlas had adequately pled standing — the question addressed in *Sprint*. Rather, Defendants assert that Atlas's citizenship (alleged to be New Jersey and Delaware) should not be considered in evaluating statutory diversity jurisdiction as to Defendants also formed in Delaware. No Supreme Court authority addresses this specific question, but both the Ninth and

2

Fifth Circuits have adopted multifactor tests to determine whether it is appropriate to disregard the citizenship of a non-diverse assignee when analyzing diversity jurisdiction. Here, it is clear that when these multi-factor tests are applied, Covered Persons — whose safety is the entire point of Daniel's Law[3] — are the real parties in interest and that Atlas's citizenship should be disregarded in assessing whether diversity jurisdiction exists.

Accordingly, in addition to accepting appeal of the issues set forth in the CAFA Mass Action Petition, the Court also should accept appeal of the District Court's diversity jurisdiction determination and ultimately find that *Attorneys Trust* and *Grassi* (not *Sprint*) are the appropriate lodestars for statutory diversity of citizenship involving a non-diverse assignee.

### STATUTORY AUTHORITY GRANTING LEAVE TO APPEAL

Defendants adopt the section of the CAFA Mass Action Petition setting forth the basis for appeal under Section 1453(c)(1) as if fully set forth herein. *See* CAFA Mass Action Petition, p. 2. For those reasons, the Court has authority to grant leave to appeal.

---

[3] Daniel's Law is codified at N.J.S.A. 2C:20-31.1 (criminal provision), N.J.S.A. 47-1A-1, 47:B-1, and 47:1B-2 (public agency provisions) and N.J.S.A. 56:8-166.1 (civil provision).

3

Furthermore, Section 1453(c)(1) states that "a court of appeals may accept an **_appeal from an underlined order_** of a district court granting or denying a motion to remand a class action to the State court from which it was removed." (Emphasis added.) The statute does not limit the appeal to the CAFA analysis in the order, but rather acknowledges that when a petition is made under Section 1453(c)(1), the reasoning of the **_entire order_** is subject to appeal, including (in this case) the diversity analysis in the Remand Order.

In *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S.Ct. 1532 (2021), the Supreme Court considered similar language in 28 U.S.C. § 1447(d). That provision provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that **_an order_** remanding a case to the State court from which it was removed pursuant to section 1442 and 1443 of this title shall be reviewable by appeal or otherwise." *Id.* at 1536-37 (emphasis added.) "By allowing appellate courts to review a district court's 'order,'" Congress has allowed review of any issue fairly encompassed within the order. *Id.* at 1540.

Although this issue has not been squarely evaluated in this Circuit, other circuits have held that Section 1453(c)(1) extends appellate jurisdiction to the entirety of an order on appeal. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) (holding that an appellate court is "free to consider any

4

potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review"); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1247 (10th Cir. 2009) (holding that "[t]here is no language [in Section 1453(c)(1)] limiting the court's consideration solely to the CAFA issues in the remand order"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (holding that "because § 1453(c)(1) permits appellate review of remand orders 'notwithstanding section 1447(d),' we have the discretion to entertain the issue of whether another basis for federal jurisdiction exists that would justify the district court's denial of Nevada's motion").

In this Circuit, there is at least one case where diversity arguments were evaluated in the context of an appeal under Section 1453(c)(1). In *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177 (3d Cir. 2023), the appellant "petitioned for review of the remand orders pursuant to 28 U.S.C. § 1453(c), and we granted their petitions." *Id.* at 180. In that context, the court evaluated "traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)" on appeal. *Id.* at 185.

Accordingly, the Court's appellate jurisdiction extends to the entire Remand Order that is subject to appeal under Section 1453(c)(1), which includes the District Court's analysis of removal pursuant to CAFA and pursuant to 28 U.S.C. §1332(a).

# BACKGROUND

Atlas and the individual plaintiffs filed the original wave of Daniel's Law suits in five New Jersey counties from February 6, 2024 to February 9, 2024. The first wave of removals occurred from March 19, 2024 to April 19, 2024. The bases for removals include, among other grounds, that Atlas's citizenship should be disregarded for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a) because Atlas, for these purposes, is not a real party in interest; rather, the Covered Persons are the real parties in interest. *Atlas v. Carco*, ECF No. 53 (the "Remand Opposition"), pp. 22-31. As such, Atlas's Delaware citizenship should not destroy diversity as to Defendants that also are Delaware citizens. *Id.* In moving to remand, Atlas and the individual plaintiffs claimed that Atlas is a real party in interest whose citizenship should be material to diversity jurisdiction. *Atlas v. Carco*, ECF No. 23 (the "Remand Motion"), pp. 13-20. The District Court ultimately concluded that diversity was lacking for Defendants with corporate registrations in Delaware because (1) Atlas is incorporated in Delaware and should be treated as a real party in interest in analyzing diversity jurisdiction, and (2) there was insufficient evidence of collusive motive to destroy diversity. *See* Remand Order, pp. 13-25.

## QUESTION PRESENTED BY THIS PETITION

Did the District Court err in applying *Sprint* (a constitutional Article III standing decision) instead of *Attorneys Trust* and *Grassi* (statutory diversity

jurisdiction decisions) to the question of whether the citizenship of a non-diverse assignee should be disregarded in analyzing diversity jurisdiction?

## RELIEF SOUGHT BY THIS PETITION

Petitioners respectfully request that the Court grant leave to appeal the Remand Order, including the diversity jurisdiction decision.

## REASONS FOR GRANTING REVIEW

Defendants do not repeat the arguments from the CAFA Mass Action Petition here, but rather incorporate them by reference as if fully set forth herein and reiterate that review should be granted on that basis. *See* CAFA Mass Action Petition, pp. 5-20.

In the absence of a separate standard for determining when the Circuit Court should review diversity when coupled with a CAFA jurisdictional appeal, the Court should apply the factors set forth in *BP America, Inc. v. Oklahoma, ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010):  (1) "the presence of an important CAFA-related question," (2) whether the question is "unsettled," (3) whether the question appears to be either incorrectly decided or fairly debatable, (4) the question's importance to the case, (5) "whether the question is likely to evade effective review if left for consideration only after final judgment," (6) its likelihood of recurrence, (7) whether the decision is sufficiently final for review, and (8) whether "the probable harm to the applicant should an immediate appeal be

refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained." Each of these factors supports granting this Petition.

### A.    This Case Presents an Important Issue of First Impression.

The question of what test applies to diversity jurisdiction in the assignment context is one of first impression in this Circuit. While other Circuits have weighed in with respect to a non-diverse assignee, *see Attorneys Trust,* 93 F. 3d at 599 (9th Circuit); *Grassi,* 894 F.2d at 186 (5th Circuit),[4] the absence of a clear governing standard in the Third Circuit has already caused the parties to expend significant resources litigating this matter, only to have the District Court create its own test never utilized by any other courts. Without clarification, there likely will be ongoing confusion among the lower courts in this Circuit on this issue.

This issue is of particular importance in the context of CAFA. The Third Circuit has yet to squarely address the propriety of exercising its discretion to review non-CAFA removal grounds in connection with appeals under Section 1453. Granting leave to appeal the diversity jurisdiction issue would give the Court the opportunity to clarify that issue in this Circuit.

---

[4] *Attorneys Trust* and *Grassi* involve efforts to avoid federal jurisdiction, but other Circuit Courts have held that similar multifactor tests are appropriate in the context of assignments being used to **create** federal jurisdiction. *See Branson Label, Inc. v. City of Branson, Mo.,* 793 F. 3d 910, 916-17 and n.5 (8th Cir. 2015); *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC,* 749 F. 3d 1202, 1205-6 (10th Cir. 2014).

8

**B.    The District Court Erred in Applying *Sprint* to the Diversity of Citizenship Analysis.**

The District Court created the following two-part test: (1) Does the assignee have Article III standing under *Sprint*? and (2) Is there evidence of collusion between the assignee and the assignor to avoid federal jurisdiction?  *See* Remand Order, pp. 13-25.  After determining that the answer to the first question was yes and the answer to the second question was no, the District Court concluded that the assignee's citizenship should be considered in the diversity analysis.  *Id.*  The District Court's reasoning is flawed and finds no support in existing case law on whether an assignee's citizenship should be disregarded in assessing diversity jurisdiction.

As an initial matter, the District Court erred in building its diversity of citizenship test from *Sprint*, a Supreme Court case that had nothing to do with statutory diversity jurisdiction or the question of real party in interest for the purposes of evaluating diversity.  In *Sprint*, the Supreme Court evaluated whether the plaintiff assignees had ***Article III standing*** to assert claims in federal court.  554 U.S. at 285.  The Court ultimately determined that the assignees had standing, *id.*, but did so without reference to federal subject matter jurisdiction based on diversity jurisdiction — indeed, 28 U.S.C. § 1332 is never mentioned in the *Sprint* opinion.

Accordingly, far from being dispositive, *Sprint* is irrelevant to statutory diversity jurisdiction.[5]

The District Court attempted to build a bridge between the Article III constitutional standing decision in *Sprint* and the federal statutory diversity analysis under 28 U.S.C. § 1332(a) in this case by asserting that the Supreme Court in *Sprint* "relied on *Waite v. City of Santa Cruz*, 184 U.S. 302 (1902), one of its own precedents and a diversity case." Remand Order, pp. 16-17. But the mere fact that *Waite* — a 122-year-old opinion — was alleged to be a diversity case does not make the Article III discussion in *Sprint* relevant to the diversity jurisdiction analysis in this case. The *Sprint* court merely relied on *Waite* for the proposition (irrelevant here) that an assignee historically had ***Article III standing*** to bring in its own name claims in federal court. *Sprint*, 554 U.S. at 283. In *Waite*, the Supreme Court held that while an assignee had standing to sue, the lower court lacked diversity jurisdiction because the amount-in-controversy requirement had not been satisfied. 184 U.S. at 328-29. This is completely separate from the question of whether it is proper to consider the citizenship of the assignee for diversity purposes under 28

---

[5] Notably, although the District Court claims in the Remand Order that "plaintiffs rely on the Supreme Court's decision in *Sprint*" (Remand Order, p. 15), Plaintiffs actually mentioned *Sprint* only once in their opening brief, *see Atlas v. Carco*, ECF No. 23-1, p. 15, and not at all in their reply. *See generally Atlas v. Carco*, ECF No. 68.

U.S.C. § 1332(a). Nevertheless, while *Waite* did not consider that question, in holding that an assignee for collection purposes, like Atlas here, could not aggregate individual amounts in controversy of numerous assignors to establish diversity jurisdiction, *Waite* demonstrates a long history of case law in which courts must consider the jurisdictional relevance of each individual assignor even when a single mass assignee brings a legal action in its own name.[6] If anything, therefore, *Waite* supports Defendants' argument that, for jurisdictional purposes, the individual assignors' citizenship should govern here.

Simply put, there was no justification for the District Court to make Article III standing under *Sprint* a threshold inquiry in its test for statutory diversity jurisdiction, particularly given the squarely-on-point diversity jurisdictional decisions in *Attorneys Trust* and *Grassi*. The District Court erred in adopting *Sprint* as the lodestar on statutory diversity jurisdiction.

---

[6] *See* CAFA Mass Action Petition, pp. 9-11. This Petition and the CAFA Mass Action Petition are in accord that the Supreme Court's acknowledgment of the functional equivalence of mass assignment and mass joinder reflected in *Waite* and *Sprint* **supports** CAFA jurisdiction. Both this Petition and the CAFA Mass Action Petition are also in accord in that, as to the distinct question of citizenship for purposes of 28 U.S.C. § 1332(a) diversity jurisdiction, ***neither*** *Waite* nor *Sprint* has an ***applicable holding***.

11

### C.    The District Court Erred in Focusing on Section 1359 and *Kramer*.

Having made Article III standing a proxy for whether it is appropriate to consider an assignee's citizenship in the statutory diversity analysis, the District Court then concluded that the citizenship of an assignee with Article III standing should be disregarded only if there was "collusion."  To that end, the District Court relied on 28 U.S.C. § 1359 (which addresses collusive joinder to *invoke* jurisdiction) and *Kramer v. Caribbean Mills, Ltd*., 394 U.S. 823 (1969), a case interpreting Section 1359.

Section 1359 *does not* address a situation where a party uses an assignment to *avoid* federal jurisdiction.   Accordingly, Section 1359 is largely irrelevant.  Likewise, in *Kramer*, the collusive assignment was made to invoke jurisdiction, not avoid it.  394 U.S. at 827-28.  Although the District Court acknowledged that the situation here is "the reverse of what the Supreme Court dealt with in *Kramer*" (Remand Order, p. 20), the Court nonetheless applied the *Kramer* standard to this factually and procedurally distinct case.

Notably, even if the *Kramer* standard applies here (it shouldn't), the District Court's ruling failed to track with *Kramer* in key respects.  First, *Kramer* made clear that complete assignments are those "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter."  394 U.S. at 828.  Yet

despite recognizing that the assignors here (i.e. the Covered Persons) retain an interest in the subject matter in the form of 65 percent of any recovery (Remand Motion, p. 12), the District Court claimed that "these assignments are absolute and Atlas succeeds absolutely to the rights of the covered persons to bring suit." Remand Order, p. 34.   Second, although *Kramer* specifically calls out the fact that the assignee filed his complaint "soon" after the assignment, 394 U.S. at 824, the District Court summarily dismissed the idea that "the short timeframe between the assignment of claims and the filing of the lawsuits" could be problematic.  Remand Order, p. 24.

The District Court erred in applying *Kramer* and Section 1359.

### D.   The District Court Should Have Applied the Multifactor Tests From *Attorneys Trust* and *Grassi*.

The District Court erred in failing to follow the persuasive reasoning of directly-on-point cases from the Ninth and Fifth Circuits.   The District Court accepted Plaintiffs' invitation to focus almost exclusively on collusive motive (Remand Order, p. 19), but federal courts examining diversity jurisdiction look at "all of the facts and circumstances." *Attorneys Trust*, 93 F.3d at 600.  As the Ninth Circuit recognized, "There is no reason to give motive controlling weight in every case" because "[t]he objective fact of who really is the party in interest is the most important thing to be determined." *Id*. at 596.

In analyzing all facts and circumstances, including the substantive characteristics of an assignment, courts consider a number of non-exclusive factors to determine the real party in interest whose citizenship should be considered. The Fifth Circuit's decision in *Grassi* identified six features of the assignment that are relevant to determining diversity jurisdiction: (i) the comparative size of the interest assigned, (ii) whether the assignee held any interest in the litigation before the assignment, (iii) whether the assignor and assignee are represented by the same attorneys, (iv) the timing of the assignment and whether it occurred shortly before the litigation commenced, (v) whether the assignment represents what is essentially a contingent fee arrangement for collection work, and (vi) whether there is a strong likelihood of prejudice against the defendant. 894 F.2d at 186. Although *Grassi* found that, regarding the specific plaintiffs-assignors in question, their "overriding motive" was to avoid federal jurisdiction, *id.*, the court did not hold (or otherwise state) that an assignor's subjective motivation is the **sole** criterion for determining the existence of diversity jurisdiction. Instead, *Grassi* considered all the facts and circumstances, as part of a multifactor analysis, supporting the lower court's finding that it was "improper" to consider the assignment for purposes of diversity jurisdiction. *Id.*

Following *Grassi*, the Ninth Circuit used a similar multifactor approach to determine whether an assignee's citizenship should be disregarded for purposes of

14

determining diversity jurisdiction. *See Attorneys Trust*, 93 F.3d at 593. The court identified as relevant to assessing diversity jurisdiction: (i) whether the assignee had a prior interest in the claim, (ii) whether the assignment was timed to coincide with commencement of litigation, (iii) whether any consideration given by the assignee, (iv) whether the assignment partial or complete, and (v) whether the parties were represented by the same counsel. *Id*. at 599. The Ninth Circuit observed that every single case it could find involving "an assignment for collection (however framed or disguised)" revealed the assignors, not the collector-assignees, to be the real parties in interest. *Id*. at 597. And again, the Ninth Circuit noted that "[w]hile the courts are interested in motive because it can shed a great deal of light on otherwise ambiguous circumstances [,] the main focus is usually upon the reality of the transaction itself." *Id.*

The District Court should have applied the same multifactor analysis to the diversity jurisdiction assessment here but didn't. Instead, the District Court briefly described the findings in *Grassi*, but didn't apply the factors, and incorrectly focused almost exclusively on the subjective motivation for the assignment. Remand Order, p. 21. And the District Court summarily dispatched with *Attorneys Trust* in a footnote, saying it involved "unusual" circumstances and "predates *Sprint*." Remand Order, n. 7. But as explained above, *see* pp. 9-11, *supra*, *Sprint* addressed an assignee's Article III standing — not an assignee's status as a real party in interest

15

in the context of statutory diversity jurisdiction — and did not otherwise alter the holdings of *Attorneys Trust* or *Grassi*.

Moreover, the multifactor tests in *Attorneys Trust* and *Grassi* appeal to common sense because they are designed to determine which entities' interests will be driving the litigation. Whether before the District Court or in New Jersey state court, Defendants will challenge the validity of the assignments, and it will be the assignors (i.e. Covered Persons), not Atlas, who have much of the information relevant to that inquiry. Similarly, some Defendants will contend that some or all of these claims are subject to arbitration because of agreements between the assignors and the Defendants. Again, it will be the assignors, not Atlas, who will have to fight this battle. And if there is ever an injunction entered in these cases, it will benefit the assignors, not Atlas. Atlas is nothing more than an assignee for collection, and the District Court failed to properly analyze the *Attorneys Trust* and *Grassi* factors.

And this Court need not wade into that factual thicket on appeal. Defendants are cognizant of the 60-day limit imposed by Section 1453(c)(2). This Petition asks only for leave to appeal so the Court can determine as a matter of law whether the multifactor tests set forth in *Attorneys Trust* and *Grassi* also should govern in the Third Circuit. Thereafter, the Court can simply remand this case to the District Court with instructions to apply the multi-factor tests (if this Court determines they should in fact apply in the Third Circuit as they do in the Ninth and Fifth Circuits).

### E.    The Issue is Consequential, Likely to Recur, and Will Evade Review.

The Remand Order has the effect of depriving Defendants of their statutory right to litigate in federal court.  The loss of that right is undeniably "consequential to [this] . . . particular case."  *BP Am.*, 613 F.3d at 1034.  In light of the District Court's ruling, plaintiffs who wish to avoid federal court jurisdiction likely will now attempt to assign their claims to companies with citizenship that will destroy diversity.  Additionally, if the Petition is denied, the Remand Order "would evade effective review."  Without an appeal to review the Remand Order, these actions will proceed in multiple New Jersey state courts, and the question of federal court jurisdiction will become moot.

### F.    Plaintiffs Will Suffer No Prejudice from Granting Review.

Plaintiffs will suffer no prejudice if the Petition is granted.  Approximately 36 cases where diversity jurisdiction is not contested will remain in federal court before the District Court regardless of the outcome here.  Given the short timeframe to decide this appeal under Section 1453(c)(2), no meaningful delay to the cases will occur.  Further, Plaintiffs themselves have acknowledged that they "have no preference between federal court or state court," would "readily accept [the federal court's] jurisdiction over" the actions, and "welcome the opportunity to litigate" their claims in an "efficient[]", "coordinate[d]" manner "before" Judge Bartle, who

this Circuit chose to oversee all related cases. *See, e.g.*, Remand Motion, pp. 15-16, 25.

In stark contrast, Defendants face irreparable harm if their statutory right to federal jurisdiction is denied without review. *See* 28 U.S.C. § 1453(c)(2) (providing for expedited review). Furthermore, remanding these cases across several counties in New Jersey likely will result in waste of judicial resources and expenses, as well as inconsistent procedural and substantive rulings in less-coordinated actions.

## CONCLUSION

For the foregoing reasons, the Court should grant the Petition for Permission to Appeal.

Dated: December 2, 2024                    **VEDDER PRICE P.C.**

/s/ *Daniel C. Green*
Daniel C. Green
dgreen@vedderprice.com
Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

Blaine C. Kimrey
bkimrey@vedderprice.com
Bryan K. Clark
bclark@vedderprice.com
Vedder Price P.C.
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

*Attorneys for defendants Whitepages, Inc. and Hiya, Inc.*

Dated: December 2, 2024

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400, 301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for defendants Acxiom LLC, AtData LLC, Carco Group, Inc., CoreLogic, Inc., Enformion, LLC, Enformion Holdco, Inc., Intellicorp Records, Inc., Remine Inc. and Red Violet, Inc.*

Dated: December 2, 2024

**DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Bety Javidzad, Esq.
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

Kristen C. Rodriguez, Esq.
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280

*Attorneys for defendants Commercial Real Estate Exchange, Inc. and Wiland, Inc.*

Dated: December 2, 2024

**CLARK HILL PLC**

/s/ *Myriah V. Jaworski*
Myriah V. Jaworski
Chirag H. Patel
Steven Richman
210 Carnegie Center, Suite 102
Princeton, NJ 08540
(609) 785-2911
mjaworski@clarkhill.com
cpatel@clarkhill.com
srichman@clarkhill.com

*Attorneys for defendants 6sense Insights, Inc. and Search Quarry, LLC*

Dated: December 2, 2024

**KELLEY DRYE & WARREN LLP**

/s/ *Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney M Smith
Aaron J. Gold
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Tel: (973) 503-5900
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Attorneys for defendants RE/MAX, LLC*

Dated: December 2, 2024

**FAEGRE DRINKER BIDDLE &
REATH LLP**

/s/ *Ross A. Lewin*
Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542
Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

Rachel B. Niewoehner
Katherine A.G. Sobiech
Croke Fairchild Duarte & Beres
191 N. Wacker Dr., Floor 31
Chicago, IL 60606
rniewoehner@crokefairchild.com
ksobiech@crokefairchild.com

*Attorneys for defendants Epsilon Data
Management, LLC, Conversant LLC,
and Citrus Ad International, Inc.*

Dated: December 2, 2024

**GORDON, REES, SCULLY &
MANSUKHANI LLP**

/s/ *Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq.
John Mills, Esq.
Bianca Evans, Esq.
1 Battery Park Plaza Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505

22

dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for defendants Claritas and Lusha Systems, Inc.*

Dated: December 2, 2024                    **CARLTON FIELDS, P.A.**

/s/ *Michael D. Margulies*
Michael D. Margulies (No. 030412008)
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com

*Attorneys for defendants Teltech Systems Inc. and Epic Applications, LLC*

Dated: December 2, 2024                    **TRESSLER LLP**

/s/ *Timothy M.. Jabbour*
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione
Timothy Hutchinson
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124

23

531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for defendant Data Axle, Inc.*

Dated: December 2, 2024

**McCARTER & ENGLISH, LLP**

/s/ *Scott S. Christie*
Scott S. Christie (New Jersey Bar No. 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for defendants Black Knight Technologies, LLC, Black Knight, Inc., and Telnyx LLC*

Dated: December 2, 2024

**WILMER CUTLER PICKERING HALE AND DOOR LLP**

/s/ *Alan Schoenfeld*
Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel
Todd Clayton
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
arissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for defendant Choreograph, LLC*

Dated: December 2, 2024

**BUCHANAN INGERSOLL & ROONEY P.C.**

/s/ *Samantha L. Southall*
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19103

*Attorneys for defendants Trans Union, LLC, Neustar, Inc., and TransUnion Risk and Alternative Data Solutions, Inc.*

Dated: December 2, 2024

**KING & SPALDING LLP**

/s/ *Thomas J. Scrivo*
Thomas J. Scrivo
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre
John C. Toro
Charles G. Spalding, Jr.
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Attorneys for defendants Equifax, Inc. and Kount, Inc.*

Dated: December 2, 2024

**SILLS CUMMIS & GROSS P.C.**

*/s/ Joshua N. Howley*

Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright
Jonathan D. Stahl
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*Attorneys for defendant Spokeo, Inc.*

Dated: December 2, 2024

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Camille Joanne Rosca*
Camille Joanne Rosca
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
crosca@orrick.com

*Attorneys for defendant Outside Interactive, Inc.*

Dated: December 2, 2024

**SAUL EWING LLP**

/s/ *William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

Matthew D. Brown
Bethany C. Lobo
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
E-mail: brownmd@cooley.com
E-mail: blobo@cooley.com

*Attorneys for defendants Valassis Digital Corp. and Valassis Communications, Inc.*

Dated: December 2, 2024        **LOWENSTEIN SANDLER LLP**

/s/ *A. Matthew Boxer*
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for defendants LexisNexis Risk Data Management, LLC and RELX Inc.*

Dated: December 2, 2024        **LATHAM & WATKINS LLP**

/s/ *Serrin Turner*
Serrin Turner
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: serrin.turner@lw.com

*Attorneys for defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

Dated: December 2, 2024                    **LATHAM & WATKINS LLP**

                                           /s/ *Robert C. Collins*
                                           Robert C. Collins
                                           330 N. Wabash Ave, Suite 2800
                                           Chicago, IL 60611
                                           Telephone: (312) 876-7700
                                           Email: robert.collins@lw.com

                                           *Attorneys for defendants Oracle*
                                           *International Corporation, Oracle*
                                           *America, Incorporated, Oracle*
                                           *Corporation, PeopleConnect, Inc.,*
                                           *PeopleConnect Holdings, Inc.,*
                                           *Intelius, LLC, and PeopleConnect*
                                           *Intermediate, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted under the Federal Rules, this document contains 4,062 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.      I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar.

4.      I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and a virus detection program, Microsoft Defender Antivirus was run on the electronic file containing this motion and no virus was detected.

*/s/ Daniel C. Green*
*Attorney for Whitepages, Inc. and Hiya, Inc.*

Dated: December 2, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 2, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

*/s/ Daniel C. Green*