

**TIMOTHY M. HAGGERTY**
thaggerty@fklaw.com
973.877.6411

December 30, 2024

**VIA ECF**

Hon. Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

> Re:    Answer to Petition for Permission to Appeal, *Atlas Data Privacy Corp., et al. v. Babel Street, Inc.*, No. 24-8048 (3d Cir.)

Dear Clerk of Court:

The undersigned represents Plaintiffs-Respondents in the above-captioned matter, and writes in response to Babel Street, Inc.'s Petition for Permission to Appeal under 28 U.S.C. § 1453(c) (the "Babel Street Petition").

The Babel Street Petition seeks leave to appeal the December 10, 2024 order of the United States District Court for the District of New Jersey remanding this action to New Jersey state court (the "Remand Order"). The Remand Order relied on and incorporated by reference the reasoning set forth in the District Court's November 20, 2024 Memorandum Accompanying Order Granting Remand (the "Remand Opinion"), entered in a number of related actions. Two petitions seeking leave to appeal the Remand Opinion have been filed in the related actions. *See Atlas Data Privacy Corp., et al. v. Blackbaud Inc., et al.*, No. 24-8044 (filed Dec. 2, 2024) (the "CAFA Mass Action Petition"); *Atlas Data Privacy Corp., et al. v. Whitepages, Inc., et al.*, No. 24-8045 (filed Dec. 2, 2024) (the "Diversity Jurisdiction Petition") (together, the "Joint Petitions").

The Babel Street Petition relies on and incorporates by reference the arguments set forth in the Joint Petitions, which "raise the same issues for review raised by Babel." Babel Street Pet. at 7; *see also id.* at 9-13 (citing CAFA Mass Action Petition); *id.* at 14-17 (citing Diversity Jurisdiction Petition). The Babel Street Petition does not raise any issues or arguments not previously raised in the Joint Petitions.

Accordingly, Plaintiffs-Respondents hereby resubmit their Answer to the Joint Petitions, attached hereto as <u>Exhibit A</u>, in response to the Babel Steet Petition. *See* Ex. A, Plaintiffs-Respondents' Answer to Joint Petitions for Permission to Appeal Under 28 U.S.C. § 1453(c), ECF 48, No. 24-8044 (Dec. 12, 2024).

Hon. Clerk of Court                          - 2

Respectfully submitted,

*/s/ Timothy M. Haggerty*

Timothy M. Haggerty
Rahul Agarwal*
Sofia Syed*
*Application for admission pending

*Attorneys for Plaintiffs-Respondents*

# Exhibit A

# CASE NOS. 24-8044; 24-8045

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-03993-HB |
| BLACKBAUD, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-03998-HB |
| WHITEPAGES, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04000-HB |
| HIYA, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04073-HB |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., et al., | |
| Defendants-Petitioners. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04077-HB |
| CARCO GROUP, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04104-HB |
| 6SENSE INSIGHTS, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04105-HB |
| LIGHTBOX PARENT, L.P., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04106-HB |
| SEARCH QUARRY, LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04107-HB |
| ACXIOM, LLC, et al., | |
| Defendants-Petitioners. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04110-HB |
| ENFORMION, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04111-HB |
| COSTAR GROUP, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04112-HB |
| ORACLE INTERNATIONAL CORPORATION, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04113-HB |
| RED VIOLET, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04114-HB |
| RE/MAX, LLC, et al., | |
| Defendants-Petitioners. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>      Plaintiffs-Respondents, <br>v. <br><br>EPSILON DATA MANAGEMENT, LLC, et al., <br><br>      Defendants-Petitioners. | Civ. Action No. 24-04168-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>      Plaintiffs-Respondents, <br>v. <br><br>CLARITAS, et al., <br><br>      Defendants-Petitioners. | Civ. Action No. 24-04175-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>      Plaintiffs-Respondents, <br>v. <br><br>DATA AXLE, INC., et al., <br><br>      Defendants-Petitioners. | Civ. Action No. 24-04181-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>      Plaintiffs-Respondents, <br>v. <br><br>REMINE, INC., et al., <br><br>      Defendants-Petitioners. | Civ. Action No. 24-04182-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>      Plaintiffs-Respondents, <br>v. <br><br>LUSHA SYSTEMS, INC., et al., <br><br>      Defendants-Petitioners. | Civ. Action No. 24-04184-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs-Respondents,<br>v.<br><br>TELTECH SYSTEMS, INC., et al.,<br><br>　　　　　Defendants-Petitioners. | Civ. Action No. 24-04217-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs-Respondents,<br>v.<br><br>PEOPLECONNECT, INC., et al.,<br><br>　　　　　Defendants-Petitioners. | Civ. Action No. 24-04227-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs-Respondents,<br>v.<br><br>CORELOGIC, INC., et al.,<br><br>　　　　　Defendants-Petitioners. | Civ. Action No. 24-04230-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs-Respondents,<br>v.<br><br>BLACK KNIGHT TECHNOLOGIES, LLC, et al.,<br><br>　　　　　Defendants-Petitioners. | Civ. Action No. 24-04233-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>　　　　　Plaintiffs-Respondents,<br>v.<br><br>CHOREOGRAPH, LLC, et al.,<br><br>　　　　　Defendants-Petitioners. | Civ. Action No. 24-04271-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04288-HB |
| TRANSUNION, LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04298-HB |
| EQUIFAX, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04299-HB |
| SPOKEO, INC., et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04354-HB |
| TELNYX, LLC, et al., | |
| Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
| Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04442-HB |
| WILAND, INC., et al., | |
| Defendants-Petitioners. | |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>        Plaintiffs-Respondents, <br>v. <br><br>ATDATA, LLC, et al., <br><br>        Defendants-Petitioners. | Civ. Action No. 24-04447-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>        Plaintiffs-Respondents, <br>v. <br><br>PRECISELY HOLDINGS, LLC, et al., <br><br>        Defendants-Petitioners. | Civ. Action No. 24-04571-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>        Plaintiffs-Respondents, <br>v. <br><br>OUTSIDE INTERACTIVE, INC., et al., <br><br>        Defendants-Petitioners. | Civ. Action No. 24-04696-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br>        Plaintiffs-Respondents, <br>v. <br><br>VALASSIS DIGITAL CORP., et al., <br><br>        Defendants-Petitioners. | Civ. Action No. 24-04770-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|        Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-04850-HB |
| THE LIFETIME VALUE CO. LLC, et al., | |
|        Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|        Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-05334-HB |
| FIRST AMERICAN FINANCIAL CORPORATION, et al., | |
|        Defendants-Petitioners. | |
| ATLAS DATA PRIVACY CORPORATION, et al., | |
|        Plaintiffs-Respondents, | |
| v. | Civ. Action No. 24-06160-HB |
| LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al., | |
|        Defendants-Petitioners. | |

## PLAINTIFFS-RESPONDENTS' ANSWER TO JOINT PETITIONS FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1453(c)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Respondent Atlas Data Privacy Corporation hereby states that it does not have any parent companies and no publicly held corporation owns 10% or more of such company's stock.

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ...................................................................................1

BACKGROUND ..................................................................................2

I.    Factual Background..................................................................2

II.   Procedural History...................................................................4

STANDARD OF REVIEW.....................................................................6

ARGUMENT ........................................................................................7

I.    The CAFA Petition Does Not Merit Interlocutory Review ................7

II.   The Diversity Petition Does Not Merit Interlocutory Review...........11

     A.   The Court Would Have No Jurisdiction to Review The Diversity Petition.........................................................11

     B.   The Issue Raised By Defendants In The Diversity Petition Is Settled By Existing Precedent ....................................12

          1.  Atlas Qualifies As A Real Party In Interest For Purposes Of Assessing Diversity Jurisdiction ......................................12

          2.  Defendants' Challenges To The District Court's Ruling Regarding The Lack Of Any Collusion Is Meritless .............16

III.  The Other Factors Militate Against Review Of The Petitions............19

CERTIFICATE OF COMPLIANCE ..................................................23

CERTIFICATE OF SERVICE.............................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Pages (s)**

*Abels v. State Farm Fire & Cas. Co.*,
    770 F.2d 26 (3d Cir. 1985) ...................................................................13

*Abraham v. St. Croix Renaissance Grp., LLLP*,
    719 F.3d 270 (3d Cir. 2013) ...............................................................10

*Anderson v. Bayer Corp.*,
    610 F.3d 390 (7th Cir. 2010) ..............................................................11

*Attorneys Trust v. Videotape Computer Prods., Inc.*,
    93 F.3d 593 (9th Cir. 1996) .......................................................... 18, 20

*BP America, Inc. v. Oklahoma ex rel. Edmondson*,
    613 F.3d 1029 (10th Cir. 2010) .............................................................6

*BP P.L.C. v. Mayor & City of Baltimore*,
    141 S.Ct. 1532 (2021).........................................................................11

*College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009)..............................................................5, 6

*Cortland Street Recovery Corp. v. Hellas Telecomms.*,
    790 F.3d 411 (2d Cir. 2015) ................................................................14

*Cranpark, Inc. v. Rogers Grp., Inc.*,
    821 F.3d 723 (6th Cir. 2016) ...............................................................13

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014).......................................................................5, 6, 20

*E3 Biofuels, LLC v. Biothane, LLC*,
    781 F.3d 972 (8th Cir. 2015) .................................................. 13, 15, 16

*Eagle U.S. 2, LLC v. Abraham*,
    627 F. App'x 351 (5th Cir. 2015) ........................................................11

*Erie Insurance Exchange v. Erie Indemnity Co.*,
   722 F.3d 154 (3d Cir. 2013) ....................................................................7

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005)..............................................................................12

*Grassi v. Ciba-Geigy, Ltd.*,
   894 F.2d 181 (5th Cir. 1990) ...............................................................18

*Herzog Contracting Corp. v. McGowen Corp.*,
   976 F.2d 1062 (7th Cir. 1992) .............................................................16

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir. 1983) .............................................................15

*Kramer v. Caribbean Mills, Inc.*,
   394 U.S. 823 (1969)................................................................ 16, 17, 18

*McSparran v. Weist*,
   402 F.2d 867 (3d Cir.1968) .................................................................16

*Mississippi ex rel. Hood v. AIJ Optronics Corp.*,
   571 U.S. 161 (2014)................................................................ 7, 8, 9, 16

*Navarro Sav. Ass'n v. Lee*,
   446 U.S. 458 (1980)..............................................................................13

*Robert D. Mabe, Inc. v. OptumRX*,
   43 F.4th 307 (3d Cir. 2022) ..................................................................9

*Slater v. Republic-Vanguard Ins. Co.*,
   650 F.3d 1132 (8th Cir. 2011) ....................................................... 13, 15

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008)....................................................... 10, 13, 14, 15

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)..............................................................................9

*VFC Partners 25 LLC v. Scranton Ctr. Holdings LP*,
   541 F. App'x 206 (3d Cir. 2013) ..................................................... 14, 15

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) ........................................................................ 10, 15

*Waite v. Santa Cruz*,
  184 U.S. 302 (1902) .................................................................. 10, 13, 15

**Statutes**

28 U.S.C. § 1332(d) ..............................................................................4

28 U.S.C. § 1332(a) ................................................................ 4, 5, 11, 12

28 U.S.C. § 1332(d)(1)(B) .....................................................................7

28 U.S.C. § 1332(d)(11)(B)(i) .......................................................... 7, 10

28 U.S.C. § 1359 .................................................................................18

28 U.S.C. § 1447(c) ..............................................................................4

28 U.S.C. § 1447(d) ..............................................................................5

28 U.S.C. § 1453(c)(1) ................................................................. passim

28 U.S.C. §§ 1441 and 1446 ................................................................4

N.J. Stat. Ann. § 2C:20-31.1 ...............................................................2

N.J. Stat. Ann. § 47:1B-1 .....................................................................2

N.J. Stat. Ann. § 56:8-116.1(b)-(d) ......................................................2

N.J. Stat. Ann. § 56:8-166.1(a) ............................................................2

N.J. Stat. Ann. § 56:8-166.1(d) ............................................................2

**Other Authorities**

6A Wright & Miller § 1545, at 346-48 ................................................13

iv

## **INTRODUCTION**

Defendants' Petitions for permission to appeal the November 20, 2024 order of the United States District Court for the District of New Jersey remanding the above-captioned cases to Superior Court of New Jersey ("Remand Order") should be denied. Under the Class-Action Fairness Act ("CAFA"), this Court "may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed." 28 U.S.C. § 1453(c)(1). Pursuant to this provision, Defendants have filed two Petitions for leave to appeal. However, and as the District Court rightly determined, these cases involve neither class actions nor mass actions and both Petitions are a naked attempt by the Petitioners to vastly expand the narrow exception that CAFA created for appealing a remand order and delay these cases from proceeding on their respective merits. For the reasons discussed below, both Petitions should be denied.

Defendants' arguments regarding jurisdiction under CAFA are meritless and contrary to binding Supreme Court precedent interpreting CAFA to only provide federal jurisdiction when there are 100 or more named plaintiffs in an action. Here, there are at most nine plaintiffs in each action. There is no basis for federal jurisdiction, under CAFA or otherwise. While Plaintiffs would have no issue proceeding in federal court (as they are with 41 other matters), the lack of jurisdiction means that the District Court correctly remanded these matters back to state court.

# BACKGROUND

## I.    Factual Background

This suit arises under a provision of Daniel's Law, a New Jersey statute enacted in response to the tragic murder of Daniel Anderl, the son of District Judge Esther Salas. Under Daniel's Law, judges, prosecutors, law-enforcement officers, and their immediate family members ("covered persons") may request that persons and businesses not disclose their home addresses or unlisted telephone numbers. N.J. Stat. Ann. § 56:8-166.1(d); *see also* N.J. Stat. Ann. §§ 2C:20-31.1 and 47:1B-1. A disclosure violates the statute if it is not removed within ten business days of receipt of a written nondisclosure request from the covered person. N.J. Stat. Ann. § 56:8-166.1(a). Daniel's Law provides a private right of action for damages and injunctive relief, and further provides that these rights may be assigned to a third party. N.J. Stat. Ann. § 56:8-116.1(b)-(d).

Atlas Data Privacy Corporation ("Atlas") along with one or more of eight persons are named Plaintiffs in these actions: Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"; excluding Atlas, the "Individual Plaintiffs"). The Individual Plaintiffs are current or former law enforcement officers who are citizens of New Jersey and assert their own claims for violations of Daniel's

Law. Atlas is a Delaware corporation with its principal place of business in New Jersey and asserts claims as assignee of covered persons.

Atlas provides a platform for the assertion and enforcement of rights under Daniel's Law. When covered persons sign up to use Atlas's platform, an email address (e.g. john.doe@atlasmail.com) is created for their use. Atlas provides a list of data brokers who may be disclosing their home addresses and unlisted home telephone numbers. Atlas provides template language for nondisclosure requests. Covered persons can then choose to send nondisclosure requests to all, some, or none of the data brokers present on the list. Atlas delivers the nondisclosure requests sent by the covered persons and then monitors certain data broker recipients to determine whether they have complied with covered persons' requests and ceased disclosure of protected information.

Covered persons who sign up for Atlas's platform affirmatively agree to Atlas's terms of service. The terms provide that "upon written notice from Atlas," participants agree to assign their "right to bring civil enforcement actions for violations of [their] rights" under Daniel's Law. The terms further state that upon receipt of written notice, the participant is "deemed…to have irrevocably assigned to [Atlas] all of [the participant's] rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations" of their rights under Daniel's Law, and "following such assignment, [Atlas] will have the exclusive

right to bring such civil enforcement actions…." If Atlas obtains an assignment, the terms provide that Atlas will retain 35% of any recovery from the action, while participating covered persons recover 65% of the remaining litigation proceeds.

## II. Procedural History

Atlas filed suit as the assignee of the Daniel's Law claims of over 19,000 New Jersey covered persons in over 150 separate lawsuits in New Jersey Superior Courts, none of which have ever been consolidated. Defendants removed 79 of these suits to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 on the ground that federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(a) because of diversity of citizenship or under CAFA, 28 U.S.C. § 1332(d). In response, pursuant to 28 U.S.C. § 1447(c), Plaintiffs moved to remand 40 of the 79 removed cases, arguing that CAFA does not apply to those suits because they are neither "class actions" nor "mass actions" and that complete diversity does not exist under Section 1332(a) because Atlas and at least one Defendant in each of these cases is a citizen of Delaware. Plaintiffs produced Atlas's service terms, policies and assignment exemplars, and Atlas's CEO sat for a corporate representative deposition that spanned over seven hours.

The District Court granted the remand motion in part, ruling that no subject-matter jurisdiction existed with respect to 39 of the 40 suits Defendants removed to

federal court.[1] First, the District Court ruled that complete diversity of citizenship does not exist in these cases for purposes of Section 1332(a) because Atlas is a real party in interest, and "Atlas is a citizen of Delaware, as is at least one defendant in all these cases." ECF 72 at 13.[2] Second, the Court concluded that jurisdiction does not exist under CAFA because these cases do not constitute "class actions" or "mass actions" as defined by that statute. ECF 72 at 31-39.

Taking advantage of the fact that these cases have never been consolidated, Defendants filed *two* Petitions pursuant to 28 U.S.C. § 1453(c)(1) seeking leave to appeal the Remand Order. The first Petition (the "CAFA Petition"), docketed as Case No. 24-8044, argues that the District Court erred in holding that these suits are not "mass actions" within the meaning of CAFA. The second Petition (the "Diversity Petition"), docketed as Case No. 24-8045, argues that the District Court applied the wrong analysis in finding that Atlas was the real party in interest for purposes of diversity jurisdiction under Section 1332(a).

---

[1] In one of the forty suits Plaintiffs moved to remand, the District Court concluded that a Defendant whose presence would otherwise destroy diversity jurisdiction was improperly joined and dismissed that Defendant. ECF 72 at 31. Plaintiffs do not at this time contest this aspect of the Remand Order.  In another of the 39 remanded cases, the Defendants moved to reconsider, and the parties reached resolution of the jurisdictional arguments by stipulation and complete diversity now exists.

[2] Unless otherwise noted, all citations to "ECF" relate to the docket in Civil Action No. 1:24-cv-03993-HB ("Atlas v. Blackbaud").

## STANDARD OF REVIEW

Ordinarily, remand orders are "'not reviewable on appeal or otherwise.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 85-86 (2014) (quoting 28 U.S.C. § 1447(d)). Section 1453(c)(1) "creates an exception" that allows courts to "'accept an appeal from an order of a district court granting or denying a motion to remand a class action'" or mass action, as defined by CAFA. *id.* at 85-86 (quoting 28 U.S.C. § 1453(c)(1)). "[R]eview of a remand order is discretionary" under Section 1453(c)(1), and other Circuits have enumerated factors to guide the exercise of that discretion. *Id.* at 90 (citing *College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 39 (1st Cir. 2009) (enumerating factors)).

Courts have emphasized that "[w]hen the CAFA-related question presented in an appeal from a remand order, is 'important, unsettled, and recurrent,'" the Court should examine whether the question will "in all probability escape meaningful appellate review" absent "interlocutory appeal." *Dart Cherokee*, 574 U.S. at 90 (citing *College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 39 (1st Cir. 2009)). Courts also consider whether the question "appears to be either incorrectly decided or at least fairly debatable," "whether the question is consequential to the resolution of the particular case," whether "the probable harm to the applicant" outweighs "the probable harm to the other parties," and whether

the order is sufficiently final to enable review. *BP America, Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1034 (10th Cir. 2010) (quotation marks and citation omitted).

## **ARGUMENT**

### I.    **The CAFA Petition Does Not Merit Interlocutory Review**

The CAFA Petition seeks leave to appeal the Remand Order that these cases are not "mass actions" for purposes of CAFA. But none of these cases even arguably qualifies as a "mass action" under CAFA, so the Court should deny leave to appeal.[3] CAFA defines "mass action" to mean a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). In *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014), the Supreme Court held that this definition applies only to "suits that are brought jointly by 100 or more *named plaintiffs* who propose to try their claims

---

[3] The District Court also ruled that these cases are not "class actions in disguise" for purposes of CAFA. ECF 72 at 32-35. Defendants do not challenge this ruling in the Petitions, and with good reason. CAFA defines "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). As the District Court explained, assignee suits brought under Daniel's Law exhibit none of the hallmarks of a class action, such as numerosity and the use of a representative plaintiff. ECF 72 at 33-34; *see also Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154 (3d Cir. 2013) (suit brought by unincorporated exchange on behalf of its members did not qualify as a "class action" under CAFA).

together." 571 U.S. at 168 (emphasis added). In each of these cases, there are at most nine named Plaintiffs—Atlas and the Individual Plaintiffs. Thus, none of these cases can possibly qualify as "mass actions" under CAFA. Defendants' arguments to the contrary uniformly fail.

First, Defendants argue that *Hood* "is not applicable to a case brought by a purported mass assignee, like Atlas," because the specific question answered in *Hood* was whether a *parens patriae* suit qualifies as a "mass action." But although *Hood* did not address assignees, the Court's holding was based on the text of the statute, not principles peculiar to *parens patriae* actions. As the Court explained, CAFA uses the word "plaintiffs" with "its usual meaning—to refer to the actual named parties who bring an action." 571 U.S. at 172. And "the '100 or more persons' referred to in the statute are not unspecified individuals who have no actual participation in the suit, but instead the very 'plaintiffs' referred to later in the sentence." 571 U.S. at 169 (emphasis added); *see also id.* at 170 ("Congress meant for the '100 or more persons' and the proposed 'plaintiffs' to be one and the same."). This plain-text reading of CAFA is inescapable: there are at most only nine plaintiffs.

Second, Defendants argue that *Hood* does not apply to these cases because they were supposedly brought "on behalf of unnamed real parties in interest." CAFA Pet. 12. As discussed below, Defendants have no viable argument that Atlas is not the real party in interest here. Regardless, *Hood* expressly held that even when "there

may be 100 or more unnamed persons who are real parties in interest as beneficiaries to any of the plaintiffs' claims," a suit "brought by fewer than 100 named plaintiffs" does not qualify as a "mass action." 571 U.S. at 168-69; *see also id.* at 169 ("[T]he statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.'"); *id.* at 176 (Congress "clearly displaced a background real party in interest inquiry.").[4] This focus on named plaintiffs "leads to a straightforward, easy to administer rule" by comparison with the alternative, which would require courts to determine the citizenship of every potential real party in interest before it could assume jurisdiction. *Id.* at 744; *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("[W]hen judges must decide jurisdictional matters, simplicity is a virtue.").

Third, Defendants suggest that "litigation-by-mass-assignment" is covered by CAFA's definition of "mass action" because it involves "mass joinder." CAFA Pet. 8. But Section 1453(c)(1) only confers jurisdiction to consider petitions pertaining to "class actions" (including "mass actions"), not suits involving "mass joinder." And although this Court said in *Robert D. Mabe, Inc. v. OptumRX* that "mass actions

---

[4] At one point, Defendants contradict themselves and claim that their "mass joinder" argument is "quite different from the real party in interest argument" rejected in *Hood*. But they never explain how this is true, apart from claiming Atlas "steps into the shoes of more than 100 persons." CAFA Pet. 15. Whatever this metaphor may mean here, *Hood* clearly holds that courts should not "pierce the pleadings to identify unnamed persons interested in the suit." 571 U.S. at 176. Judged by the face of the pleadings, these cases involve no more than nine—and only nine—named plaintiffs.

are collective actions that utilize large-scale joinder or other consolidation mechanisms," this Court has never suggested that courts can simply disregard the particular requirements of CAFA's definition of "mass action" in any case that involves an *allegation* that a "large" number of claims were joined. 43 F.4th 307, 319 (3d Cir. 2022). CAFA uses "mass action" to single out only a specific category of collective actions involving large-scale joinder: those in which the "claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).[5] Such an argument would extend the limited jurisdiction for appeals under CAFA to any circumstance where a defendant believes the plaintiffs asserted too many claims.

Moreover, the mechanisms targeted by CAFA's "mass action" definition are methods of *party* joinder and *case* consolidation, not mechanisms of claim joinder. *Cf. Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660-61 (2022) (comparing party joinder and claim joinder in addressing statute permitting assignment of government claims); *Abraham v. St. Croix Renaissance Grp., LLLP*, 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("[A]ll plaintiffs in a mass action are named in the complaint

---

[5] Defendants absurdly claim that *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008), and *Waite v. Santa Cruz*, 184 U.S. 302 (1902), suggest "mass assignment" qualifies as a "mass action." Neither of those cases addresses CAFA, and *Waite* predates its enactment by more than a century. As discussed below, these cases address real-party-in-interest requirements, and establish that Atlas qualifies as a real party in interest in each of these cases.

and propose a joint trial of their claims."). But Atlas's assignors are not parties to this action. As the District Court held, "[t]he claims of Atlas belong to Atlas and Atlas alone. Assignees are not acting on behalf of the assignors." ECF 72 at 33.

## II.   The Diversity Petition Does Not Merit Interlocutory Review

### A.    The Court Would Have No Jurisdiction to Review The Diversity Petition

The Diversity Petition requests that the Court grant leave to appeal the District Court's ruling that diversity jurisdiction does not exist in these cases under 28 U.S.C. § 1332(a). ECF 72 at 13. As discussed below, Defendants' challenge to this portion of the Remand Order is meritless and does not warrant this Court's review. But as a threshold matter, the Court has no appellate jurisdiction to consider the merits of the Diversity Petition under Section 1453(c)(1), because the cases remanded by the Remand Order below were not "class" or "mass" actions under CAFA.

Section 1453(c)(1) only provides courts with jurisdiction to entertain interlocutory appeals from remand orders involving "class" or "mass" actions. As Defendants note, any issue "'fairly encompassed'" by such an order is reviewable under this provision. Div. Pet. 4 (quoting *BP P.L.C. v. Mayor & City of Baltimore*, 141 S.Ct. 1532, 1540 (2021)). But when the cases remanded by the challenged order do not qualify as "class" or "mass" actions within the meaning of CAFA, the Court has "no jurisdiction to hear an appeal from the remand order," at least for the purpose of examining any other merits issue. *Anderson v. Bayer Corp.*, 610 F.3d 390, 394

(7th Cir. 2010). As discussed above, the cases remanded back to state court by the Remand Order do not qualify as "mass" or "class" actions under CAFA. As such, this Court lacks appellate jurisdiction to consider the Diversity Petition. *Eagle U.S. 2, LLC v. Abraham*, 627 F. App'x 351, 353 (5th Cir. 2015) ("Because this case does not involve '100 or more persons,' it is not a 'mass action' and we have no appellate jurisdiction under § 1453(c)(1), regardless of whether that provision allows review of district court orders remanding mass actions.").

### B. The Issue Raised By Defendants In The Diversity Petition Is Settled By Existing Precedent

Setting this threshold jurisdictional issue aside, the issues raised by the Diversity Petition do not merit review because the District Court's ruling was dictated by settled law. Diversity jurisdiction under Section 1332(a) requires complete diversity: the citizenship of each plaintiff must be different from the citizenship of each defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54 (2005). As the District Court ruled, complete diversity does not exist in these cases because "Atlas is a citizen of Delaware, as is at least one defendant in all these cases." ECF 72 at 13. Defendants' arguments to the contrary are unavailing.

### 1. Atlas Qualifies As A Real Party In Interest For Purposes Of Assessing Diversity Jurisdiction

Defendants' argument that "Atlas's citizenship should be disregarded in assessing whether diversity jurisdiction exists" because Atlas's assignors "are the

real parties in interest" in these cases is foreclosed by well-established precedent. Div. Pet. 3. Unlike "mass action" jurisdiction under CAFA, diversity jurisdiction under Section 1332(a) is determined by "the citizenship of real parties to the controversy," not the citizenship of the named plaintiffs. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). "[T]he citizenship of purely 'nominal' parties may be disregarded." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). But as the District Court recognized, an assignee is "a real party in interest" for purposes of diversity jurisdiction "absent proof of collusion to destroy diversity or proof of fraudulent joinder." ECF 72 at 19.

Courts have long held that an assignee "'who holds legal title'" to a claim "'is the real party in interest even though the assignee must account to the assignor for whatever is recovered in the action.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 284 (2008) (quoting 6A Wright & Miller § 1545, at 346-48)). This makes sense, because "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law," *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016), and legal title to a claim carries rights to control the action. *See Sprint*, 554 U.S. at 285 ("[C]ourts—both before and after the founding—have always permitted the party with legal title alone to bring suit.").

For this reason, "[a]n absolute, non-collusive assignment to a diverse assignee creates diversity jurisdiction." *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011); *see also Waite*, 184 U.S. at 327 (holding "diverse citizenship" was present due to assignment of legal title to claims); *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) ("[W]hen an entity with a right to sue assigns that right to an assignee diverse from all defendants, a proper, non-collusive assignment will create diversity jurisdiction."); *VFC Partners 25 LLC v. Scranton Ctr. Holdings LP*, 541 F. App'x 206, 207 & n.3 (3d Cir. 2013) (holding that "the assignee…is the 'real party in interest'" in a diversity case).

As the District Court properly found, Atlas "has an absolute assignment of the rights of 19,000 of Atlas's users." ECF 72 at 18. Defendants do not dispute this finding, and for good reason. Ordinarily, "[t]o assign a claim effectively, the claim's owner must manifest an intention to make the assignee the owner of the claim." *Cortland Street Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418 (2d Cir. 2015). Under the terms of service, Atlas is "irrevocably assigned" the users' rights "to bring a claim and seek damages [or] other legal remedies" and has "the exclusive right to bring…civil enforcement actions." *Id.* This language does not contemplate "anything less than a complete transfer to the aggregator of the injury and resulting claim." *Sprint*, 554 U.S. at 286. Defendants' arguments to the contrary are meritless.

First, Defendants fault the District Court for relying on *Sprint* because that case concerned Article III standing, not diversity jurisdiction. Div. Pet. 9-10. But as the District Court explained, *Sprint* "treated standing to sue and the real party in interest as synonymous." ECF 72 at 18. And as the District Court further explained, many other cases have explicitly held that an absolute assignee qualifies as a real party in interest for purposes of diversity jurisdiction. *See Waite*, 184 U.S. at 327; *Slater*, 650 F.3d at 1135; *E3 Biofuels*, 781 F.3d at 975; *VFC Partners 25 LLC*, 541 F. App'x at 207 & n.3. Although Defendants assert that *Waite* only held that "an assignee historically had *Article III standing* to bring in its own name claims in federal court," Div. Pet. 10, this is false. *See Waite*, 184 U.S. at 327 (expressly holding that "diverse citizenship" was present).

Second, Defendants argue that the assignments are not absolute because the assignors recover 65% of the remaining litigation proceeds, but this misunderstands what it means for an assignment to be "absolute." Div. Pet. 12-13. An absolute assignment transfers "authority to bring th[e] suit and to allocate the proceeds," and "[i]t is not necessary that the assignors forfeit all interest in possible damages." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1282 (9th Cir. 1983); *see also Absolute Assignment*, Black's Law Dictionary (12th ed. 2024) ("An assignment that leaves the assignor no interest in the assigned property or right."). Here, the assignments fully transfer control over the assigned claims to

Atlas, with the assignors recovering "litigation proceeds" which Atlas "will simply remit" if the litigation is successful. *Sprint*, 554 U.S. at 286; *Cf. Viking River*, 596 U.S. at 655 ("[A] future interest in the penalties awarded in an action" is only "an inchoate interest in litigation proceeds" and does not confer "party" status).

Defendants also note that Atlas's assignors may play a role in the litigation as it unfolds. Div. Pet. 16-17. But even accepting Defendants' contention the assignors "have much of the information" relevant to the "validity of the assignment" and may be asked to participate as witnesses, Div. Pet. 16, that does not convert the assignors into parties with the right to carry on litigation in their own names. Instead, as the District Court concluded, the at-issue assignments qualify as absolute, so the only party with the right to prosecute the assignors' claims is Atlas itself. Accordingly, Atlas qualifies as the party in interest in these cases.

### 2. Defendants' Challenges To The District Court's Ruling Regarding The Lack Of Any Collusion Is Meritless

Because Atlas had absolute assignments to the claims asserted in these actions, Atlas is the real party in interest in these suits for purposes of diversity jurisdiction unless those assignments were "collusive." *E3 Biofuels*, 781 F.3d at 975; *see also Hood*, 571 U.S. at 174 (a party cannot "create diversity by collusively assigning his interest in an action"); *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 829 (1969) (holding that an assignment that was "improperly or collusively made" cannot be used to "'manufacture' federal jurisdiction"). "The question whether

an assignment is collusive, in the relevant sense of being motivated by the assignor's desire to obtain" or avoid "access to a federal court under the diversity jurisdiction, is one of fact," so "review is therefore deferential." *Herzog Contracting Corp. v. McGowen Corp.,* 976 F.2d 1062, 1066–67 (7th Cir. 1992); *McSparran v. Weist,* 402 F.2d 867, 876 (3d Cir.1968) ("Whether in an individual case diversity jurisdiction is 'manufactured' is, of course, a question of fact.").

The District Court correctly found there was no evidence collusion played any role in the assignments. As the Court explained, assignment is expressly authorized by Daniel's Law, but "it is highly unlikely that even a single member of the General Assembly or the Senate of New Jersey had in mind the avoidance of federal diversity jurisdiction when the votes were cast to approve assignments." ECF 72 at 22. Moreover, the assignors do not retain any control over the litigation by the assignors because "[t]he assignments to Atlas are absolute." ECF 72 at 23; *see also Kramer*, 394 U.S. at 828 n. 9 ("[W]here the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive."). And finally, any suggestion of collusion is belied by the fact that Atlas never attempted to find any way to "avoid removal to federal court of its many lawsuits where the defendants are citizens of different states." *Id.* Defendants were afforded discovery in the form

of document productions and a corporate representative deposition of Atlas's CEO, and could not adduce any evidence to support their arguments of collusion.

Defendants do not dispute the District Court's conclusion that these circumstances are inconsistent with any collusive objective to avoid federal jurisdiction. But they argue that the District Court nonetheless erred by somehow failing to apply the correct framework in analyzing collusion. Defendants' arguments, however, are based on blatant misinterpretations of the relevant caselaw, and provide no basis for overturning the District Court's ruling.

First, Defendants argue that the District Court erred in conducting an inquiry into whether the assignments were collusive under *Kramer* because that case dealt with 28 U.S.C. § 1359, which addresses "collusive joinder to *invoke* jurisdiction" rather than cases in which a party supposedly "uses an assignment to *avoid* federal jurisdiction." Div. Pet. 12-13. But as Defendants' *own cases* acknowledge, in a "destruction of diversity case," the "principles are much the same" as in "cases which refer to the creation of diversity." *Attorneys Trust v. Videotape Computer Prods., Inc.¸* 93 F.3d 593, 595 (9th Cir. 1996); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) (applying *Kramer* and examining the "overriding motive" behind the assignment). Thus, there was nothing wrong with the District Court's consideration of the principles set forth in *Kramer*.

18

Second, Defendants fault the District Court for failing to employ a five- or six-factor "test" purportedly found in *Attorneys Trust* and *Grassi*. Div. Pet. 13-16. But neither of these cases adopts a specific "test" or purports to require District Courts to march through a particular set of factors to conclude that an assignment is not collusive. *See Attorneys Trust*, 93 F.3d at 599 (examining various "elements of an assignment which does not affect jurisdiction"); *Grassi*, 894 F.2d at 186 (identifying the "factors" listed by Defendants only as considerations by which "the lower court was persuaded"). As the District Court observed, "[w]hile the cases consider various factors as an aid" in determining whether an assignment was made to destroy federal jurisdiction, "the court must ultimately decide based on the particular facts before it the underlying motive or purpose for…the assignment." ECF 72 at 22.

## III.   The Other Factors Militate Against Review Of The Petitions

Because the District Court's ruling was clearly correct, the other factors relevant under Section 1453(c)(1) likewise do not justify the Court's exercise of interlocutory jurisdiction. The only purpose of granting leave to appeal would be to affirm the District Court, which would be a waste of judicial resources except (perhaps) if the issues raised in the Petitions were "recurring" issues that should be clarified in an opinion from this Court. But as Defendants concede, whether an assignee suit can qualify as a "mass action" under CAFA has apparently never been

litigated in this (or any other) Circuit, presumably because the answer to that question is so obvious that defendants generally have not bothered to raise it. Defendants conjecture this issue *could* become a recurring question "[i]n light of the DNJ's ruling." CAFA Pet. 19. But if that occurs, the Court will have the opportunity to address this issue if that hypothetical materializes in other, future cases involving claims asserted by assignees. In such cases, if the district court erroneously refuses to remand to state court on the ground that an assignee suit qualifies as a "mass action," that ruling will be reviewable on appeal from the court's final judgment, even if no interlocutory appeal is available under Section 1453(c)(1). If warranted, these sorts of issues can also be addressed during any separate appeal. *Dart Cherokee*, 574 U.S. at 90.

The same is true of the question raised by the Diversity Petition. Under existing case law, this is not a close call. The District Court correctly ruled that complete diversity is lacking because Atlas is a real party in interest that obtained these assignments without collusion. No additional guidance is needed on this straightforward application of existing case law. And if a court in a future case rules that a similarly situated assignee is not a real party in interest for purposes of diversity jurisdiction, that order will likewise be reviewable on appeal from the final judgment. *See, e.g.*, *Attorneys Trust*, 93 F.3d at 595 (considering challenge to

assignee's status as a real party in interest "even though it was raised on appeal for the first time").

The other equitable factors militate against exercising jurisdiction over the Petitions as well. Nothing consequential to the resolution of these cases depends on whether they proceed in a federal forum. Moreover, the balance of equities clearly counsels against exercising jurisdiction. Defendants have no colorable claim to jurisdiction, so they will not suffer any legally significant harm "should an immediate appeal be refused." By contrast, Plaintiffs will endure needless delay, and the covered persons who enlisted Atlas to enforce their rights will continue to face the risks attendant to Defendants continuing to disclose their addresses and phone numbers. For these reasons, the Court should deny leave to appeal on the issues raised by the Petitions.

Dated:  December 12, 2024            Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: s/ *Adam R. Shaw*
  Adam R. Shaw
  30 South Pearl Street, 12th Floor
  Albany, NY 12207
  Tel: (518) 434-0600
  ashaw@bsfllp.com

  Mark C. Mao
  44 Montgomery St., 41st Floor
  San Francisco, CA 94104
  Tel.: (415) 293-6800

mmao@bsfllp.com

Eric M. Palmer
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 377-4250
epalmer@bsfllp.com


Samantha Parrish
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-9040
sparrish@bsfllp.com

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Tel: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis (application for
admission to be filed)
Ryan J. McGee (application for
admission to be filed)
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

*Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because this petition contains 5,185 words, excluding the part of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(a)(7)(B)(iii).

2. This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. I certify pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e) that I am a member of good standing of the Bar of this Court.

4. I certify pursuant to Third Circuit Local Appellate Rule 31.1(c) that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and that electronic versions of the brief filed on ECF were virus checked using Crowdstrike Falcon, Version 7.17.18721.0 (last update 11/20/2024 at 9:32PM PST) and no virus was detected.

Dated:  December 12, 2024                  */s/Adam R. Shaw*
                                           Adam R. Shaw

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on December 12, 2024.

I further certify that copies of the foregoing were transmitted to all counsel of record via email and commercial carrier for overnight delivery.

Dated:  12/12/2024        */s/Adam R. Shaw*
                              Adam R. Shaw